FILED
2013 APR 26 P 3:07
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LAUREN M. MICHALS, State Bar No. 184473
   lmichals@nixonpeabody.com
2  SHADY E. JOULANI, State Bar No. 287910
   sjoulani@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 18th Floor
4  San Francisco, California 94111-3600
   Tel: (415) 984-8200
5  Fax: (415) 984-8300

6  Attorneys for Plaintiff
   AMERICAN LICORICE COMPANY

7

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                        OAKLAND DIVISION
11
                                                     DMR
12                                      C 13    1929

13  AMERICAN LICORICE COMPANY,          Case No.

14                    Plaintiff,        **COMPLAINT FOR DAMAGES BASED
                                        ON:**
15      vs.                             **1. BREACH OF CONTRACT;
                                        2. BREACH OF EXPRESS
16  TOTAL SWEETENERS, INC.; BATORY      WARRANTY;
    FOODS, INC. and DOES 1 through 10   3. BREACH OF IMPLIED
17  Inclusive,                          WARRANTY OF
                                        MERCHANTABILITY; AND
18                    Defendants.       4. BREACH OF IMPLIED
                                        WARRANTY OF FITNESS**
19

20                                      **DEMAND FOR JURY TRIAL**

21

22
        Plaintiff AMERICAN LICORICE COMPANY ("American Licorice" or "Plaintiff"), for
23
    its Complaint against all Defendants, alleges as follows:
24
    **I.   INTRODUCTION**
25
        1.   This is a complaint for damages based on Defendants' breach of contract, of
26
    express warranty, implied warranty of merchantability, and implied warranty of fitness arising out
27
    of shipment of molasses to Plaintiff American Licorice in Union City, California.
28

    Complaint for Damages; Case No.
    ─────────────────                    1
    14423432.3

## II.   THE PARTIES

2.     Plaintiff American Licorice is a manufacturer and distributor of confectionary products/candy, including Red Vines® black licorice.  It receives various ingredients from suppliers, then manufacturers and distributes confectionary products/candy ("confectionary products" or "candy") to purchasers.  American Licorice is incorporated in Delaware and its principal place of business is located in Bend, Oregon.  American Licorice has a production facility in Union City, California, where it manufactures Red Vines® black licorice.  The production facility is immediately adjacent to one of Defendant Batory Foods, Inc.'s distribution centers.

3.     Defendant Total Sweeteners, Inc., is a manufacturer and distributor of sugar derived products, including molasses, for use in manufacturing food products.  Total Sweeteners, Inc., is incorporated in Illinois and identifies its principal place of business as located at 1700 Higgins Road, Suite 610, Des Plaines, Illinois 60018.

4.     Defendant Batory Foods, Inc. ("Batory Foods"), is a food ingredients distributor that also provides blending and powering services related to food ingredients.  Batory Foods distributes various ingredients, including, but not limited to, molasses that is used to manufacture candy.  Batory Foods is incorporated in Illinois and identifies its principal place of business as located at 1700 Higgins Road, Suite 300, Des Plaines, Illinois 60018.  Batory Foods operates a distribution center located at 1604 Whipple Road, Union City, California 94587, which is immediately adjacent to American Licorice's Union City, California, production facility.

5.     The true names and capacities of the defendants sued herein as Does 1 through 10 are unknown to Plaintiff, who therefore sues them by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of these defendants when they have been determined.

## III.   JURISDICTION AND VENUE

6.     Plaintiff American Licorice is incorporated under the laws of Delaware and its principal place of business is located in Bend, OR.

7.     Defendants Total Sweeteners, Inc., and Batory Foods (collectively "Defendants")

Complaint for Damages; Case No.

2

14423432.3

1   are both incorporated under the laws of Illinois and identify their principal places of business as

2   located in Des Plaines, IL.

3       8.      This court has original jurisdiction under 28 U.S.C. §1332, in that it is a civil

4   action between citizens of different states in which the matter in controversy exceeds, exclusive

5   of costs and interest, seventy-five thousand dollars ($75,000).

6       9.      This court has personal jurisdiction over Defendants pursuant to California Code

7   of Civil Procedure section 410.10, California's "long arm" statute. Each defendant conducts

8   substantial business in the state of California, and at least one of the Defendants operates a

9   distribution center in this District. Furthermore, the parties' agreement, which forms the basis of

10  this Complaint, was performed in Union City, California, and as such Defendants purposefully

11  availed themselves of the laws of the United States and California.

12      10.     Venue is proper in this District and Division, pursuant to 28 U.S.C. § 1391(a) and

13  Local Rule 3-2 subdivisions (b)-(d), because a substantial part of the events or omissions giving

14  rise to these claims occurred in Union City, California. Specifically, the contract at issue was

15  entered into in Alameda County, California, and performed in Union City, California, where the

16  goods were delivered and used to manufacture Plaintiff American Licorice's Red Vines® black

17  licorice products.

18  **IV.   GENERAL ALLEGATIONS**

19      **A. PURCHASE OF MOLASSES**

20      11.     In December 2011, Plaintiff American Licorice entered into an agreement with

21  Defendants for delivery of "Bulk Refiners syrup," also commonly referred to as "molasses," with

22  delivery to commence in 2012. A copy of that agreement is attached hereto as Exhibit A.

23      12.     The first shipment of molasses from Defendants was received by Plaintiff

24  American Licorice in Union City, California, on or about February 29, 2012, and periodic

25  shipments continued at least through August 2012. During that time, Defendants were the only

26  suppliers of molasses to American Licorice's Union City, California, manufacturing facility and

27  the only suppliers of molasses for use in the Red Vines® black licorice products at issue.

28

---

Complaint for Damages; Case No.

14423432.3

**B. RECALL**

13.    Molasses is the major constituent of Plaintiff American Licorice's Red Vines® black licorice.  Molasses is the first listed ingredient on the labels of American Licorice's Red Vines® black licorice products.

14.    On or about August 21, 2012, American Licorice was visited by the California Department of Public Health ("CDPH") and informed that at least one lot of the Red Vines® black licorice was tested and that the test results showed levels of lead (Pb) in excess of the limit of 0.1 parts per million ("ppm") set by the United States Food and Drug Administration ("FDA") and CDPH for candy frequently consumed by small children.  The CDPH and FDA both consider candy with lead content above 0.1 ppm as adulterated (see, for example, California Health and Safety Code § 110552, and http://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/ucm 172050.htm).  The State of California, as well as other jurisdictions, prohibits the sale of candy which has lead in excess of 0.1 ppm.

15.    As a result of the testing, the CDPH requested that American Licorice recall this specific contaminated lot of Red Vines® black licorice from all stores and retail customers and that American Licorice issue a press release notifying the public of the level of lead detected and of the recall.  American Licorice worked with the CDPH and recalled the lot in question and issued a press release that was outlined and approved by the CDPH.  The CDPH also issued its own press release regarding elevated levels of lead in Red Vines® black licorice.  This recall was reported by local and national news sources.

16.    The "Best Buy" date on the Red Vines® black licorice products tested by the CDPH indicates that the lot in question was manufactured in May 2012.

17.    American Licorice initiated an investigation into the scope, source and cause of the elevated level of lead detected by the CDPH.

18.    Testing of Red Vines® black licorice made in 2011, prior to the use of Defendants' molasses, including test results published by the CDPH, show that Red Vines® black licorice produced prior to May 2012 contained significantly less lead than 0.1 ppm.  Red Vines® black licorice made in May 2012 and later had lead significantly in excess of 0.1 ppm.

Complaint for Damages; Case No.                    4

14423432.3

19.     Specifically, American Licorice's investigation included testing a range of the finished products and determined that Red Vines® black licorice made using molasses supplied by Defendants on or after April 30, 2012, had lead levels that measured significantly above 0.1 ppm. Test results from CDPH showed a range of between 0.27 and 0.33 ppm of lead in the May manufactured lot, American Licorice's testing returned similar results for that same lot of black licorice. Lead levels in Red Vines® black licorice produced in July and early August 2012 had lower levels of lead but were still above 0.1 ppm of lead.

20.     Testing of all ingredients contained in Red Vines® black licorice showed that the elevated level of lead was due to the molasses received from Defendants, not other ingredients.

21.     As a result of the testing, and based on the permissible limit of 0.1 ppm of lead for candy, American Licorice was compelled to expand its recall to include all Red Vines® black licorice available for sale and in possession of consumers throughout the United States, including packaging containing mixed red and black licorice, and to halt production of Red Vines® black licorice to ensure that all relevant product was removed from commerce and not available for consumption.

22.     American Licorice incurred and continues to incur substantial costs and damage, including to its reputation and future sales, as a result of the recalls.

**C. INJURIES**

23.     Based on testing, its investigation and related information, American Licorice concludes that the molasses received from Defendants was the cause of the elevated lead and resultant need to recall the Red Vines® black licorice containing products. In particular, the investigation shows that molasses received from Defendants on or after April 30, 2012, had exceptionally high levels of lead, substantially above any level of lead in molasses received by American Licorice prior to April 2012 and any received later in 2012.

24.     As a result of the contaminated molasses supplied by Defendants and the subsequent recalls, American Licorice incurred substantial costs and lost sales in excess of $2 million.

25.     Damages include the cost related to returning the products from the retailers,

Complaint for Damages; Case No.

14423432.3

1   warehousing recalled product, lost sales from existing inventory, testing, and preparation of FDA

2   required recall-related documents, external administrative costs related to the recall, and lost

3   future sales.

4   **V.    CLAIMS AGAINST DEFENDANTS**

5                    **FIRST CLAIM:  BREACH OF CONTRACT**

6              26.    Plaintiff American Licorice incorporates each and every of the foregoing

7   paragraphs, as if set forth fully in this paragraph.

8              27.    In 2011, Plaintiff American Licorice, through personnel located in Union City,

9   California, negotiated with a representative of Defendant Batory Foods, who was located in

10  Hayward, California, for the purchase of certain goods consisting of 1,500,000 lbs. of "Bulk

11  Refiners syrup."  Refiners syrup is commonly known as molasses.  On or about December 14,

12  2011, Plaintiff American Licorice entered into a purchase agreement with Defendants, and in

13  particular with Defendant Batory Foods, for the purchase of this material (the "Contract") to be

14  used in the production of candy.  Attached hereto as Exhibit A is a true and correct copy of the

15  Contract.

16             28.    Plaintiff American Licorice has performed all conditions, covenants, and promises

17  required on its part to be performed in accordance with the terms and conditions of the Contract,

18  including timely payment of all invoices due under the Contract.

19             29.    Pursuant to the Contract, Defendants were to provide Refiners syrup/molasses to

20  Plaintiff American Licorice in conformance with the specifications agreed to under the Contract

21  and industry standards.

22             30.    Defendants breached the contract by delivering goods that did not comply with the

23  Contract's specifications, terms and warranties as the Refiners syrup/molasses contained

24  excessive levels of lead and therefore was not consistent with industry standards and

25  specifications, was not representative of the brand or grades specified, and did not comply with

26  all of the applicable provisions of the Federal Food, Drug, and Cosmetic Act and of any

27  applicable State Pure Food and Drug Act and related statutes.

28             31.    As a result of Defendants' breach of contract, Plaintiff American Licorice suffered

Complaint for Damages; Case No.

6

14423432.3

1    damages related to recalling all Red Vines® black licorice products from stores nationwide.

2    Plaintiff has also incurred costs and injuries related to returning the products from retailers,

3    warehousing recalled product, lost sales from existing inventory, testing, preparation of FDA

4    required recall-related documents, external administrative costs related to the recall, and lost

5    future sales, resulting in damages in excess of $2 million.

6                    **SECOND CLAIM: BREACH OF EXPRESS WARRANTY**

7            32.    American Licorice incorporates each and every of the foregoing paragraphs, as if

8    set forth fully in this paragraph.

9            33.    In 2011, Plaintiff American Licorice, through personnel located in Union City,

10   California, negotiated with a representative of Defendant Batory Foods, Inc., who was located in

11   Hayward, California, for the purchase of certain goods consisting of 1,500,000 lbs. of "Bulk

12   Refiners syrup." Refiners syrup is commonly known as molasses. On or about December 14,

13   2011, Plaintiff American Licorice entered into a purchase agreement with Defendants, and in

14   particular with Defendant Batory Foods (the "Contract"). In the course of the negotiations,

15   Defendants promised in writing that the Bulk Refiners syrup would "be representative of the

16   brand or grades specified...and comply with all of the applicable provisions of the Federal Food,

17   Drug, and Cosmetic Act and of any applicable State Pure Food and Drug Act." That promise

18   became part of the basis of the bargain between the parties and thus constituted an express

19   warranty.

20           34.    Thereafter, pursuant to the Contract, shipments commenced on or about February

21   29, 2012, to American Licorice's Union City, California, facility where Defendants sold Refiners

22   syrup/molasses to American Licorice, and American Licorice bought these goods from

23   Defendants. A true copy of the contract of sale between the parties is attached as Exhibit A and

24   incorporated by reference.

25           35.    Defendants breached the express warranty in that the Refiners syrup/molasses was

26   not representative of the brand or grade specified and did not comply with all of the applicable

27   provisions of the Federal Food, Drug, and Cosmetic Act and of applicable State Pure Food and

28   Drug Acts. As a result of this breach American Licorice did not receive goods as warranted by

Complaint for Damages; Case No.
                                              7

14423432.3

1   Defendants.

2       36.    Plaintiff American Licorice discovered the defect in the Refiners syrup/molasses

3   and potential breach of warranty on or after August 30, 2012, after receiving test results

4   indicating a spike in lead content for candy produced in May 2012, and after conducting an

5   internal investigation.  Thereafter, and on or about September 6, 2012, Plaintiff American

6   Licorice notified Defendants of this breach in writing.

7       37.    As a proximate result of this breach of warranty by Defendants, Plaintiff American

8   Licorice has incurred, and continues to incur, damages in excess of $2 million.

9       38.    Plaintiff American Licorice continues to suffer ongoing incidental damages as a

10  result of lost sales.

11  **THIRD CLAIM:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

12      39.    American Licorice incorporates each and every of the foregoing paragraphs, as if

13  set forth fully in this paragraph.

14      40.    Pursuant to the Contract between Plaintiff American Licorice and Defendants,

15  shipments commenced on or about February 29, 2012, at Union City, California, where

16  Defendants sold to Plaintiff American Licorice Refiners syrup/molasses, and American Licorice

17  bought those goods from Defendants for the amount of $.3575 per pound.  A true copy of the

18  contract of sale between the parties is attached as Exhibit A and incorporated by reference.

19      41.    Defendants are merchants with respect to goods of the kind which were sold to

20  Plaintiff American Licorice under the Contract.  Specifically, Defendants sell sweeteners,

21  including molasses, to be used in the production of candy and other foods, and there was in the

22  sale to American Licorice an implied warranty that those goods were of good and merchantable

23  quality and fit for their intended use.

24      42.    The ordinary purpose of Refiners syrup/molasses is for use in foods, including

25  candy such as black licorice.

26      43.    Defendants breached the warranty implied in the contract for the sale of goods in

27  that the Refiners syrup/molasses that was delivered to American Licorice was not fit for its

28  ordinary purposes, specifically the manufacture of foods, including candy.  Further, because of

Complaint for Damages; Case No.

8

1   elevated levels of lead, the Refiners syrup/molasses supplied by Defendants was not of the same

2   quality as is generally accepted in the same trade and it did not conform to the quality established

3   in prior dealings and by usage of trade.

4       44.   Defendants were aware that American Licorice would use the molasses they

5   supplied for production of candy, specifically for the production of Red Vines® black licorice.

6       45.   As a result, Plaintiff American Licorice did not receive goods as impliedly

7   warranted by Defendants to be of good and merchantable quality at the time of sale since the

8   molasses delivered to Plaintiff American Licorice contained excessive levels of lead, and

9   therefore was not fit for their intended use or otherwise merchantable.

10       46.   Plaintiff American Licorice discovered the defect in the Refiners syrup/molasses

11   and potential breach of warranty on or after August 30, 2012, after conducting an internal

12   investigation. Thereafter, and on or about September 6, 2012, Plaintiff American Licorice

13   notified Defendants, in writing, of the defect in the product.

14       47.   As a proximate result of this breach of warranty by Defendants, Plaintiff American

15   Licorice has incurred, and continues to incur, damages in excess of $2 million.

16       48.   Plaintiff American Licorice continues to suffer ongoing incidental damages as a

17   result of lost sales.

18   **FOURTH CLAIM:  BREACH OF IMPLIED WARRANTY OF FITNESS**

19       49.   American Licorice incorporates each and every of the foregoing paragraphs, as if

20   set forth fully in this paragraph.

21       50.   On or about December 14, 2011, Plaintiff American Licorice and Defendants

22   entered into a contract for the sale to American Licorice of "Bulk Refiners syrup" (the

23   "Contract"). A true and correct copy of the Contract between the parties is attached as Exhibit A

24   and incorporated by reference.

25       51.   Pursuant to the Contract, on or about February 29, 2012, Defendants commenced

26   shipped to Plaintiff American Licorice Refiners syrup/molasses to be used for the particular

27   purpose of manufacturing black licorice candy. Prior to the sale, Defendants knew that the

28   Refiners syrup/molasses was going to be used for the production of candy.

52.    Plaintiff American Licorice relied on Defendants' skill and judgment to furnish suitable goods for candy production.  American Licorice bought Refiners syrup/molasses from Defendants, in reliance of Defendants' skill and judgment, for the amount of $.3575 per pound. A true copy of the Contract between the parties is attached as Exhibit A and incorporated by reference.

53.    At the time of contracting for sale of the goods and during subsequent delivery, Defendants had reason to know the particular purpose for which the goods were required – the production of candy – because Plaintiff American Licorice is a confectionary/candy manufacturer with a facility located directly adjacent to Defendant Batory Foods' distribution center. Defendants knew or should have known that Plaintiff American Licorice was relying on Defendants' skill and judgment to furnish suitable goods.  As a result, there was an implied warranty that the goods sold by Defendants were fit for this purpose.

54.    However, Defendants breached the warranty implied at the time of sale and delivery of the Refiners syrup/molasses in that Plaintiff American Licorice did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required because the Refiners syrup/molasses contained excess lead levels which made it unsuitable for production of foods, including black licorice.

55.    Plaintiff American Licorice discovered the defect in the Refiners syrup/molasses and potential breach of warranty on or after August 30, 2012, after conducting an internal investigation.  Thereafter, and on or about September 6, 2012, Plaintiff American Licorice notified Defendants, in writing, of the defect in the product.

56.    As a proximate result of this breach of warranty by Defendants, Plaintiff American Licorice has incurred, and continues to incur, damages in excess of $2 million.

57.    Plaintiff American Licorice continues to suffer ongoing incidental damages as a result of lost sales.

//

//

Complaint for Damages; Case No.

10

14423432.3

1

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff American Licorice prays:

1.     That the Court enter judgment in favor of Plaintiff American Licorice against Defendants on all counts;

2.     That the Court award Plaintiff American Licorice all of its damages associated with each cause of action asserted in the complaint, including incidental and consequential damages flowing from Defendants' conduct, including money damages and lost profits.

3.     For costs of suit herein incurred, including attorney's fees, if appropriate; and

4.     For such other and further relief as the court may deem proper.

## VII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38(d), American Licorice demands a trial by jury for all issues so triable.

Dated: April 26, 2013

NIXON PEABODY LLP

By:

Lauren M. Michals
Shady E. Joulani
Attorneys for Plaintiff
AMERICAN LICORICE COMPANY

# EXHIBIT A

## BATORY FOODS

CHICAGO SWEETENERS
SUGAR INCENTIVES
TOTAL SWEETENERS
LSI/INGREDIENTS INTERNATIONAL
LSI TEXAS
QUALITY INGREDIENTS
INDUSTRIAL INGREDIENTS                          (Seller)

**SALES CONTRACT**

AGREES TO SELL TO BUYER and BUYER to buy from
SELLER the following products on the terms and conditions
and subject to the agreements stated below and/or on the
TERMS AND CONDITIONS statement.

**SALES REP:** 201 Marion Saroni
**Sold To (Buyer):** Dennie Carff
**Customer No.** 44226
**Name:** American Licorice

   2477 Liston Way
   Union City, Ca
   94587

Customer No. 44226                    Contract Date 12/01/2011
                                      Contract No.

**MODE OF SHIPMENT**  Bulk Truck
(Specify whether truck, bulk truck,intermodal, rail or bulk railroad car.)

**FREIGHT**          ☐ F.O.B.              ☑ DELIVERED
                     (Specify whether plant or warehouse)
**SHIPPING TERMS**   ☑ PREPAID            ☐ COLLECT

**CONTRACT PERIOD \***           | **TERMS OF PAYMENT**
**BEGIN:** 01/01/2012            | net 30 days
**END:**   12/31/2012            |

*Ship To: (if different)*
**Customer No.**  same
**Name:**

**CONTRACT VALUE:** $536,250.00

| QUANTITY | PRODUCT NUMBER | PRODUCT DESCRIPTION | PRICE |
|----------|----------------|---------------------|-------|
| 1,500,00lbs | 3B915 | Bulk Refiners syrup | $.3575 per pound |
|  |  | Two truckload per order please |  |

\* Even draws across contract period required unless otherwise specified.

Seller and Buyer acknowledge that this Contract relates to a food or fine ingredient, the Market Price for which changes regularly. Seller and Buyer understand that while the Market Price reflects the prevailing market price for this ingredient, there may be times during the Contract Period when the then Market Price is above or below the Contract Price. Seller and Buyer each acknowledge that this Contract will remain in full force and effect independent of the prevailing Market Price during the Contract Period, and that Seller agrees to sell the total quantity of product(s) specified in this Contract and that Buyer agrees to buy the total quantity of products(s) specified in this Contract at the price(s) specified in this Contract without regard to the prevailing Market Price for the ingredient during or after the Contract Period.

Dennie V. Carff                 12-14-11
Buyer                           Date

_____       _____
Product Manager                 Date

Please sign, copy, and return to:
Batory Foods
1700 Higgins Road, Suite 300
Des Plaines, IL 60018-5615
(847) 299-1999

CONTRACT MUST BE SIGNED AND RECEIVED BY BATORY FOODS WITHIN 14 DAYS OF DATE OF CONTRACT DATE OR PRICING IS SUBJECT TO CONFIRMATION

## TERMS AND CONDITIONS

CHANGES; ADJUSTMENTS; LIMITATIONS: BUYER may direct shipment of all or any part of said product in containers of a different size or kind than specified above column headed "Size/Pack", if any are therein specified, or in containers if "bulk" is specified in said column, in either which case the price shall be adjusted in accordance with SELLER'S differential schedule in effect at date hereof. If "bulk" is specified in said column, SELLER nevertheless shall not be obligated to ship in bulk unless specified under the caption "MODE OF SHIPMENT" below and then only as therein specified.

DIFFERENTIALS: Where BUYER orders out of the product in packages of a different size or kind than specified herein, the price thereof shall be determined in accordance with Seller's package differential schedule in effect at the date of this contract.

NET WEIGHTS: The commodities covered by this contract are sold on the basis of net weights when packed, or if shipped in bulk, net weights when loaded.

COLLECTIONS: Where BUYER designates the collecting bank he shall be responsible to SELLER for any loss or damage to SELLER by reason of any failure or default on the part of said bank in connection with payment by BUYER under this contract.

TAXES: The prices set forth in the within contract include any and all taxes, impositions, exactions, or charges of every nature in effect on the date of the execution hereof. Any and all taxes, impositions, or charges, or any increase therein whether for revenue or for regulation of commerce, or for any other purpose not in effect on the date of this contract, which may, prior to the completion of deliveries hereunder, be levied, imposed, required or increased by the United States or any State thereof or other Governmental agency on or measured in terms of any of the finished products remaining unshipped and which are to be delivered hereunder, or on or measured in terms of any commodity used in the manufacture of such finished products or the containers therefore or commodities used in the manufacture of such containers, or in the processing, purchase, sale, holding for sale, distribution, dealing in, transportation, use or handling of any such products, commodities or containers, if paid or borne by SELLER directly or indirectly shall be billed separately to BUYER, where not prohibited by law, and where the determination of the amount of the tax, imposition, charge or increase per cwt or other unit of measure is subject to calculation by the application of any official published conversion rate or otherwise and shall be paid buy BUYER to SELLER. Any such taxes, impositions, exactions, charge or increases, which the SELLER shall be finally relieved from paying or which shall be later refunded to SELLER at any time and for any cause shall be refunded or credited to BUYER as promptly as possible after deduction by SELLER of any reasonable expenses incurred in preventing collection of such taxes, impositions, exactions, charges or increases or in obtaining or securing such refunds or returns and in making such reimbursement to BUYER, and after paying and discharging all tax liabilities to which SELLER may be subjected in reason of its having been relieved from paying such taxes, impositions, exactions, charges or increases or having secured such refunds or returns. SELLER shall be under no obligation to contest the validity of any such tax, impositions, exaction, charge or increase or to prosecute any such claims for refunds or returns, but in the event SELLER does not elect to contest such taxes, impositions, exactions, charges or increases or to prosecute any such claims for refunds, BUYER shall be entitled to an assignment on mutually acceptable conditions of all of SELLER'S rights and causes of action in the premises.

SHIPMENT: Where the basis of shipment is F.O.B. delivery of goods by SELLER to the carrier at point of shipment shall constitute delivery to BUYER, subject to the lien of SELLER for the unpaid purchase price. BUYER shall furnish SELLER complete shipping instructions (and when required, the necessary containers) at least ten (10) days before the time of shipment.

If there is more than one installment of goods shipped or stipulated herein to be shipped this contract shall be construed to be severable as to each installment, except where such construction would be in direct conflict with the provisions hereinafter set forth under "RIGHTS OF BUYER" and "RIGHTS OF SELLER", and breach or default of either BUYER or SELLER as to any installment or installments shall not give the other party a right to cancel this contract, except as herein otherwise expressly provided.

INSPECTION AND APPROVAL: All goods received shall be deemed accepted by BUYER unless rejection is made in writing within three (3) days of delivery, with such rejection of the defective goods only and specifying the reason for the rejection. BUYER will segregate and store in a safe place the rejected goods awaiting dispose from SELLER or shipping instructions from SELLER. Payment of any invoice shall constitute acceptance of the goods covered by this invoice.

WARRANTY: SELLER expressly warrants that any goods contracted herein will be representative of the brand or grade specified herein to be sold, and will comply with all of the applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act. Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within ten (10) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) after receipt of notice of arrival of said commodities at destination, BUYER sends SELLER at SELLER'S main office a letter by registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER'S said office a five (5) pound sample of the goods alleged to be defective or inferior, provided that compliance by BUYER with the above enumerated steps shall not constitute an admission by SELLER of the merits or amount of BUYER'S said claim or defense.

Except as expressly set forth herein, SELLER states that no warranties, express or implied, contained in the uniform commercial code or otherwise (including, without limitation, the implied warranty of fitness for a particular purpose) shall apply to the products sold hereunder and BUYER acknowledges that except as expressly set forth in the first sentence of this section, it is purchasing the goods, "as is" and "where is". SELLER is not responsible for any misuse, reconfiguration or alternation of the goods by purchaser or others. SELLER shall in no event be liable for consequential, special or punitive damages hereunder.

RIGHTS OF BUYER: In case of default by SELLER (provided that SELLER shall, without

limitation, be in "default" if SELLER becomes insolvent or is adjudged bankrupt or if at any time the property and assets of SELLER are in liquidation) or if SELLER'S FINANCIAL RESPONSIBILITY becomes impaired; but that SELLER shall not be in default for non-performance due to fire, flood, earthquake, tornado, labor difficulties, riot, Federal or State laws or regulations, acts or defaults of common carriers/shortage of necessary bulk trucks, railroad cars. SELLER shall not be in default for late shipments or deliveries caused by independent freight carrier, or by its own actions after ten (10) day grace period. BUYER may (within thirty (30) days after he has acknowledged thereof) by written notice sent by registered mail to SELLER at SELLER'S main office.

1)cancel the contract; or

2)terminate the contract as to the portion thereof in default and purchase within said thirty (30) days an equal quantity of goods of the same kind and grade and recover from SELLER the excess of the price so paid over the purchase price named herein, plus any incidental loss or expense, and in addition thereto, recover a sum equal to one percent (1%) of the contract price named therein.

PROVIDED: That if the default consists of a failure by SELLER to ship a the time required, BUYER may cancel or terminate the contract as above provided only after giving SELLER preliminary written notice of intention to cancel or terminate, by registered mail addressed to SELLER'S main office. If SELLER does not ship within eight (8) days after mailing such notice, then BUYER may, within thirty (30) days after expiration of said eight (8) days, cancel un terminate the contract as provided.

RIGHTS OF SELLER: In case of default by BUYER (provided that BUYER shall without limitation, be in "default" if BUYER becomes insolvent or is adjudged bankrupt, or if BUYER shall fail to make any payment to SELLER when due under this or any other contract between BUYER and SELLER, or if at any time the property and assets of BUYER are in liquidation, or if BUYER'S financial responsibility becomes impaired), SELLER may (within thirty (30) days after he has knowledge thereof) by written notice sent by registered mail to BUYER and BUYER'S main office:

1) cancel the contract; or

2) terminate the contract as to the portion thereof in default or as to any unshipped balance, or both, and

A) resell, within said thirty (30) days, any of the above goods which have been shipped and which BUYER has wrongfully failed or refused to accept, and recover from BUYER difference between the above purchase price thereof and the price obtained on resale, if latter to be less than former, also any incident loss and expense and all demurrage (resale anywhere in the usual course of SELLER'S business or at any terminal market or at or near destination shall be proper and conclusive in the absence of bad faith), and

B) if SELLER terminates as to unshipped balance, recover form BUYER as liquidated damages a sum to be computed by the following formula: (a) one-sixth (1/6¢ cent per day for each day from date of contract to date of termination for each cwt remaining unshipped, plus (b) ten (10¢) cents for each cwt remaining unshipped as the cost of selling plus (c) amount of decline, if any, in the market value of quantity remaining.

PROVIDED: That if the default consists of a failure by BUYER to provide shipping instructions as required under "SHIPMENTS", SELLER may cancel or terminate the contract as above provided only after giving BUYER preliminary written notice of intention to cancel or terminate by registered mail addressed to BUYER'S main office. If BUYER does not provide within eight (8) days after giving shipping instructions for immediate deliver, of all past due shipments, then SELLER may within thirty (30) days after the expiration of said eight (8) days cancel or terminate the contract as above provided. Where SELLER furnished within said eight (8) days period such shipping instructions for immediate delivery, SELLER shall have at least ten (10) days after receipt thereof within which to ship and shall have such additional time as may be in SELLER'S sole discretion be reasonably necessary, having in mind the SELLER'S then operating and requirements.

LIMITATION OF ACTIONS: No action at law or equity shall be maintained by BUYER against SELLER or any of SELLER'S other vendors to recover damages for alleged violation by SELLER or said vendors of any law, Federal or State, now in effect or hereafter enacted, pertaining discrimination in price, services or facilities including the Clayton Act (U.S.C. Title 15 secs. 12 to 27 inclusive) as amended by Act of Congress approved June 19, 1936, or any further amendment therein, as respects any products delivered by SELLER pursuant to this contract unless (1) written notice of the particular deliveries on which the claim for such damages is based shall be given by BUYER to SELLER at SELLER'S main office by registered mail within six (6) months after delivery thereof to BUYER with a full statement of the particulars of such claim then known to BUYER, and (2) action shall be commenced within one (1) year after delivery of such products to BUYER.

LATE PAYMENT AND ATTORNEYS FEES: The time within which the BUYER is to make the payments is an essential term of this invoice. A service charge of one and a half percent (1-1/2%) per month (18% per annum) will be charged as of the first day of the thirty (30) day period following billing on all balances which are not paid by the end of such thirty (30) day period. All court costs and reasonable attorneys' fees incurred by SELLER in enforcing this Purchase Order shall be paid promptly by BUYER, in addition to all of the BUYER'S other obligations hereunder.

ASSIGNMENT: BUYER agrees not to assign or encumber any of its rights or duties hereunder without the prior written consent of SELLER which consent may be unreasonably withheld.

GOVERNING LAW: This contract shall be construed in accordance with and governed by the laws of the State of Illinois and the rights given to the parties hereunder are cumulative and are in addition in every remedy herein given or now or hereafter existing at law, in equity or by statute.