1  MORDECAI D. BOONE  (SBN:  196811)
   mboone@gordonrees.com
2  KARA PERSSON (SBN: 210582)
   kpersson@gordonrees.com
3  GORDON & REES LLP
   275 Battery Street, Suite 2000
4  San Francisco, CA  94111
   Telephone:  (415) 986-5900
5  Facsimile:  (415) 986-8054

6  Attorneys for Defendant
   TOTAL SWEETENERS, INC.; individually
7  and doing business as BATORY FOODS
   (dba incorrectly identified herein as Batory Foods, Inc.)
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 AMERICAN LICORICE COMPANY          )   CASE NO.  2013-cv-01929 EMC
                                      )
                     Plaintiff,       )   **NOTICE OF MOTION AND**
13                                    )   **MOTION TO DISMISS**
                                      )   **PLAINTIFF'S FIRST AMENDED**
14        vs.                         )   **COMPLAINT FOR FAILURE TO**
                                      )   **STATE A CLAIM, FEDERAL**
15                                    )   **RULE OF CIVIL PROCEDURE**
                                      )   **12(B)(6)**
16                                    )
17 TOTAL SWEETENERS, INC.; individually and )
   doing business as BATORY FOODS, INC., and )  Date:         August 1, 2013
   DOES 1 through 10 Inclusive        )   Time:         1:30 p.m.
18                                    )   Courtroom:    5
                     Defendant.       )   Floor:        17
19                                    )
                                      )
20                                    )
                                      )
21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ....................................................................................................1

II.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND ..................................3

    A.    Plaintiff's Original Complaint ..................................................................3

    B.    Plaintiff's First Amended Complaint ........................................................4

        1.    Pertinent Terms of the December 2011 Contract (FAC, Exhibit A)...........5

        2.    Pertinent Terms of the Purchase Order (Exhibit B) ...............................6

        3.    Factual Allegations in Support of Claims in FAC....................................6

III.    LEGAL STANDARD ..............................................................................................7

IV.    CHOICE OF LAW .................................................................................................8

V.    ARGUMENT .........................................................................................................9

    A.    All of Plaintiff's Claims in the FAC Fail to the Extent They Rely on Terms in the February 2012 Purchase Order, Because Plaintiff Has Failed to Allege Facts Sufficient to Establish that the Purchase Order Created an Enforceable Contract With Defendant .....................................................9

        1.    The Purchase Order Was Not a Valid Modification of the Contract.........10

            a.    The Purchase Order Does Not Satisfy the Statute of Frauds.........10

            b.    The Purchase Order Does Not Reflect Nor Confirm a Prior, Valid Contract Modification .................................................................13

            c.    Even if the FAC Alleged Facts Sufficient to Construe the Purchase Order as a Modification of the Contract—and It Does Not—the FAC Fails to Allege Facts Demonstrating the Modification Was in Good Faith ...............................................14

            d.    Plaintiff's Course of Conduct is Inconsistent With the Conclusion that the Purchase Order Was Intended to Modify the Contract ..................................................................................15

    B.    Plaintiff's Claims in the FAC Fail Under the Terms of the December 2011 Contract ..............................................................................................16

        1.    All of Plaintiff's Claims Fail Because Plaintiff Did Not Comply with the Contract's Express Claims Notice Requirements.......................16

        2.    Plaintiff's Claims for Breach of Contract and Breach of Express Warranty Fail ..........................................................................................18

        3.    Plaintiff's Third Claim for Breach of the Implied Warranty of Merchantability and Fourth Claim for Breach of the Implied Warranty of Fitness Fail Because the Contract Attached to the Complaint Disclaims All Implied Warranties ...........................................21

i

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO
STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)                2013-cv-01929 EMC

**TABLE OF CONTENTS**

**PAGE**

C. Plaintiff's Claim for Consequential Damages Must Be Stricken .......................... 22

VI. CONCLUSION ........................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO
STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)   2013-cv-01929 EMC

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Ardus Med., Inc. v. Emanuel County Hosp. Auth.,*
558 F. Supp. 2d 1301 (D. Ga. 2008) ...............................................................12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................................................7

*Assoc. Gen. Contractors of Calif. v. Calif. State Council of Carpenters,*
459 U.S. 519 (1983) .........................................................................................8

*Automotive Spares Corp. v. Archer Bearings Co.,*
382 F.Supp. 513 (N.D. Ill. 1973)....................................................................12

*Balistreri v. Pacifica Police Dept.,*
901 F.2d 696 (9th Cir. 1999) ...........................................................................1

*Banks v. Warner,*
1995 WL465773 (9th Cir. Aug. 7, 1995) .......................................................21

*Beliveau v. Caras,*
873 F. Supp. 1393 (C.D. Cal. 1995) ................................................................7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .........................................................................................7

*Bell Fuels, Inc. v. Lockheed Electronics Co., Inc.,*
130 Ill. App. 3d 940 (1985)..................................................................17, 21, 22

*Coto Settlement v. Eisenberg,*
593 F.3d 1031 (9th Cir. 2010) ..........................................................................8

*Dallas Aerospace, Inc. v. CIS Air Corp.,*
352 F.3d 775 (2d Cir. 2003)................................................10, 12, 13, 14, 15

*Derson Group, Ltd. v. Right Management Consultants, Inc.,*
683 F.Supp. 1224 (N.D. Ill. 1988) .................................................................19

*Essen Nutrition v. Electronic Liquid Fillers, Inc.,*
1996 U.S. Dist. LEXIS 13746  (N.D. Ill. 1996) ............................................11

*Haley v. City of Boston,*
657 F.3d 39 (1st Cir. 2011) ..............................................................................8

*In re Colonial Mortgage Bankers Corp.,*
324 F.3d 12 (1st Cir. 2003) ..............................................................................7

*In re Delorean Motor Co.,*
991 F.2d 1236 (6th Cir. 1993) ..........................................................................7

*Ipec Inc. v. Int'l Lithographing Corp.,*
869 F.2d 1080 (7th Cir. 1989)....................................................................11, 15

Gordon & Rees LLP
275 Battery Street, Suite 2000

## TABLE OF AUTHORITIES

**PAGE**

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) ...................................................................................8

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
379 F.Supp.2d 968 (N.D. Ill. 2005).........................................................19

*Martin-Trigona v. Bloomington Fed. Sav. & Loan Ass'n*,
101 Ill. App. 3d 943 (1981).......................................................................17

*Metzger v. DaRosa*,
209 Ill. 2d 30 (Ill. 2004) ...........................................................................20

*Miron v. Herbalife Int'l, Inc.*,
11 Fed. Appx. 927 (9th Cir. 2001) ..........................................................19

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal. 4th 459 (1992)..................................................................................8

*Patton v. Cox*,
276 F.3d 493 (9th Cir. 2002)......................................................................8

*Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*,
686 F. Supp. 1319 (N.D. Ill 1988)...........................................................10

*R.O.W. Window Co. v. Allmetal, Inc.*,
367 Ill. App. 3d 749 (2006).......................................................................22

*Ray Dancer, Inc. v. DMC Corp.*,
175 Ill. App. 3d 997 (1988).......................................................................14

*Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*,
226 Ill. App. 3d 507, 589 N.E.2d 1034 (1992)........................................23

*Redfield v. Continental Casualty Corp.*,
818 F.2d 596 (7th Cir. 1987).....................................................................17

*Reuben H. Donnelley Corp. v. Krasny Supply Co. Inc.*,
227 Ill. App. 3d 414, 592 N.E.2d 8 (1991)..............................................23

*Servpro Indus. v. Schmidt*,
1996 U.S. Dist. LEXIS 9857 (N.D. Ill. 1996) ........................................19

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)......................................................................8

*Stepan Co. v. Winter Panel Corp.*,
1996 U.S. Dist. LEXIS 9633 (N.D. Ill. 1996) ........................................23

*Susmano v. Assoc. Internists*,
97 Ill. App. 3d 215 (1981).........................................................................17

*Thompson v. Illinois Dept. of Prof. Reg.*,
300 F.3d 750 (7th Cir. 2002)......................................................................8

Gordon & Rees LLP
275 Battery Street, Suite 2000

iv

# TABLE OF AUTHORITIES

**PAGE**

*Topping v. Fry*,
    147 F.2d 715 (7th Cir. 1945)...................................................................................17

*Trade Ctr. v. Dominick's Finer Foods*,
    304 Ill. App. 3d 931 (1999)......................................................................................9

*Wilbur v. Potpora*,
    123 Ill.App.3d 166 (1984).......................................................................................16

**Statutes**

28 U.S.C. section 1332 ..................................................................................................8

810 ILCS 5/1-201 ........................................................................................................15

810 ILCS 5/1-201(10) ..................................................................................................22

810 ILCS 5/1-304 ........................................................................................................15

810 ILCS 5/2-103(b) ...................................................................................................15

810 ILCS 5/2-20 ..........................................................................................................10

810 ILCS 5/2-201 ..............................................................................................11, 12, 13

810 ILCS 5/2-209 ....................................................................................................10, 15

810 ILCS 5/2-209(3) ...................................................................................................11

810 ILCS 5/2-316(2) ...................................................................................................21

810 Ill. Comp. Stat. Ann. 316 ......................................................................................9

California Commercial code section 2316(2) ...............................................................9

Oregon Revised Statute section 72.2090 .....................................................................10

Uniform Commercial Code section 201(3)(c) ..............................................................13

Uniform Commercial Code section 2-103(b) ..............................................................15

Uniform Commercial Code section 2-201 ...........................................................11, 13, 14

Uniform Commercial Code section 2-201(2) ...............................................................12

Uniform Commercial Code section 2-201(3)(c) ..........................................................12

Uniform Commercial Code section 2-209 ...................................................................10

Uniform Commercial Code section 2-316 ...................................................................21

**Other Authorities**

Gordon & Rees LLP
275 Battery Street, Suite 2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO
STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)                     2013-cv-01929 EMC

# TABLE OF AUTHORITIES

**PAGE**

"Frequently Asked Questions (FAQ) about Lead and Lead-Contaminated Products," (Cal. Dep't Public Health), available online at *http://www.cdph.ca.gov/programs/Pages/LeadFAQ.aspx.* (accessed May 16, 2013) ............21

199 Cal. Jur. Contracts § 199 (West, 2013)...................................................9

82 Amer. Law Reports 4th 709 § 2a (2013) ...............................................12

Chemical Contaminants, Metals, Natural Toxins & Pesticides Guidance Documents & Regulations" (FDA), available online at *http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ChemicalContaminantsMetalsNaturalToxinsPesticides/default.htm* (accessed May 16, 2013) ........................................................21

Restatement section 187 ....................................................................8

**Rules**

Federal Rules of Civil Procedure rule 12(b)(6) ..............................1, 2, 3, 7, 8

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 1, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5, Seventeenth Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Total Sweeteners, Inc. dba Batory Foods ("Defendant") will and hereby does move the Court for an order dismissing the First Amended Complaint of Plaintiff American Licorice Company ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is made on the ground that Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may make a motion to dismiss for "failure to state a claim upon which relief can be granted." Further, a dismissal pursuant to Rule 12(b)(6) is proper where there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1999). The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, and the pleadings and papers filed herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff American Licorice Company ("Plaintiff"), has sued Defendant, Total Sweeteners, Inc., individually and doing business as Batory Foods, Inc.[1] ("Defendant"), for breach of contract, breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness. Each of the claims arises out of Defendant's sale of molasses which Plaintiff used to make, among other products, black licorice candy. Plaintiff alleges that in August 2012, its black licorice candy was found to contain excessive levels of lead, and that the high lead content is allegedly due to the lead levels in one shipment of Defendant's molasses.

Plaintiff's original complaint was filed on April 29, 2013. It based its claims entirely on its December 2011 purchase agreement with Defendant, a copy of which was attached to Plaintiff's complaint and incorporated into each of Plaintiff's claims. Because that contract did

Gordon & Rees LLP
275 Battery Street, Suite 2000

---

[1]   Defendant's dba is simply Batory Foods, not "Batory Foods, Inc." as alleged in the FAC.

Gordon & Rees LLP
275 Battery Street, Suite 2000

1   not support any of the claims in the original complaint, Defendant filed a motion to dismiss

2   under Federal Rule of Civil Procedure 12(b)(6).

3          Rather than oppose the motion, Plaintiff responded by filing a First Amended Complaint

4   ("FAC").  Apparently recognizing its claims fail under the purchase agreement, Plaintiff now

5   alleges the existence of a new agreement, a purchase order that contains terms and conditions

6   that conflict with the purchase agreement, and which Plaintiff obviously regards as favorable.

7   Plaintiff now relies on both the original purchase agreement and the subsequent, conflicting

8   purchase order in support of its claims, and it attaches copies of both documents as exhibits to

9   the FAC.

10          Despite Plaintiff's effort to address the obvious deficiencies in its original complaint, the

11   FAC still fails to state a claim on which relief can be granted.  The purchase order simply does

12   not constitute a valid, enforceable modification of the original purchase agreement.  As such, all

13   of the FAC's claims fail to the extent they rely on terms of the purchase order.

14          That leaves the original contract as the only agreement on which the FAC can rely.  Yet

15   as Defendant asserted in its first motion to dismiss, the FAC must be dismissed because Plaintiff

16   fails to allege that Defendant breached any of the terms of the parties' contract attached to the

17   FAC.  To the contrary, Plaintiff admits that Defendant shipped all of the molasses contracted for,

18   which Plaintiff incorporated into its candy product.  Plaintiff  has also failed to comply with the

19   contract's conditions precedent to filing suit.  Plaintiff nonetheless seeks to hold Defendant

20   responsible for its recall costs eight months after receiving the last shipment.

21          Plaintiff cannot do so based upon the plain and unambiguous terms of the contract.  To

22   begin with, Defendant warranted only delivery of goods specified by Plaintiff that complied with

23   any applicable federal and state food safety provisions.  Defendant delivered the product as

24   promised and the complaint does not identify *any* law or regulation applicable to molasses that

25   Defendant can be said to have violated.  While Plaintiff cites standards applicable to its own

26   candy product, the FAC is silent as to how Plaintiff's molasses violated that entirely separate

27   standard.  Even if the Court found a plausible basis to apply an inapplicable lead standard to

28   Defendant, Plaintiff waived any claims based upon the quality of the product by failing to

provide timely notice and product sample within 45 days of receipt.  Finally, Plaintiff cannot

recover damages for its recall costs irrespective of the quality of the product because it expressly

waived any claim to consequential damages.  Therefore, the FAC fails to state any claim upon

which relief may be granted, and should be dismissed.

## II.   PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Original Complaint

On April 29, 2013, Plaintiff filed this action against Defendant[2] stating claims for breach

of contract, breach of express warranty, breach of the implied warranty of merchantability, and

breach of the implied warranty of fitness, all based on Plaintiff's contention that excessive lead

levels in the licorice it manufactured were caused by molasses sold by Defendant that allegedly

contained excessive levels of lead.  Compl. ¶¶ 26-57 [Docket No. 1].

Plaintiff's original complaint attached one exhibit, a copy of the December 1, 2011

contract between the parties for the sale of the molasses at issue.  *See* Compl., Exh. A.   Plaintiff

defined Exhibit A to its complaint as the pertinent "Contract" that set the terms for its purchase

of molasses from Defendant.  *See* Compl., ¶¶ 27, 33, 40, 50.  Plaintiff alleged in that Defendant's

shipments of molasses to Plaintiff, which began in February 2012, were all "pursuant to [the]

Contract."  Compl., ¶¶ 34, 40, 51.  Plaintiff incorporated the Contract into the allegations

supporting each of its four claims (*see* Complaint,  ¶¶ 27, 33, 40, 50) and based each of its claims

on the breach of duties Defendant allegedly owed it pursuant to the Contract.  Compl., ¶¶ 29- 30,

33-35, 40-41, 50-54.

Defendant responded to Plaintiff's original complaint with a motion to dismiss for failure

to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket Nos. 11, 15.]  In

that motion, Defendant argued that all of Plaintiff's claims failed because it had failed to comply

with express notice provisions in the Contract that are a condition precedent to filing suit under

the Contract.  *See* Am. Mot. to Dismiss at pp. 8-10 [Docket No. 15.].  Defendant also argued that

Gordon & Rees LLP
275 Battery Street, Suite 2000

---

[2]  In the original complaint, Plaintiff misidentified Defendant as two separate corporations, Total Sweeteners, Inc. and Batory Foods, Inc.  Defendant made clear in its responsive pleading that Batory Foods (not "Batory Foods, Inc.") is a dba of Total Sweeteners, Inc. and not a separate corporate entity.  Plaintiff's FAC corrects this error and refers to Defendant as "Total Sweeteners, Inc., individually and doing business as Batory Foods."  *See* FAC. Because there is no separate entity known as Batory Foods, Inc., the originally-named defendant entities are collectively referred to in the singular as "Defendant."

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929 EMC

1  Plaintiff had failed to make a claim for breach of the Contract or its express warranty provisions,

2  since the allegations regarding elevated lead levels in a shipment or shipments of molasses did

3  not violate any term of the Contract.  *See id.* at pp. 10-15.  Furthermore, Defendant asserted,

4  Plaintiff's claims for breach of implied warranty failed because the Contract disclaimed all

5  implied warranties.  *See id.* at pp. 15-17.  Finally, Plaintiff's claim for consequential damages

6  had to be stricken since such damages were also disclaimed by the Contract.  *See id.* at pp. 17-18.

7  **B.    Plaintiff's First Amended Complaint**

8        Rather than oppose the motion, Plaintiff responded to Defendant's motion to dismiss by

9  filing the FAC on May 31, 2013.  [Docket No. 19.]  The FAC makes several changes to the

10 original complaint, the most significant of which is that it asserts the existence of a new

11 agreement that was not mentioned in the original complaint—a February 27, 2012 "purchase

12 order" attached to the FAC as Exhibit B (the "Purchase Order").  *See* FAC, Exh. B.  The FAC

13 still also attaches as Exhibit A the same Contract Plaintiff relied on in support of its claims in the

14 original complaint.  *See* FAC, Exh. A.[3]

15       The Purchase Order contains numerous terms and conditions that conflict with the terms

16 and conditions of the Contract.  Compare FAC, Exh. A, p. 2, with Exh. B, p. 2. The FAC ignores

17 the conflicts and simply treats both the Contract and the Purchase Order as valid agreements; the

18 FAC even implies that the Contract and Purchase Order constitute a single "contract."   See, e.g.,

19 FAC ¶¶ 14, 15, 18, 36-40.

20       The Purchase Order was not signed by Defendant.  (*See* FAC, Exh. B.)  Plaintiff never

21 explains in the FAC whether, how or why the Purchase Order formed a valid contract between

22 the parties.  (*See* FAC ¶¶ 12-20.)  Plaintiff never addresses the effect of the Purchase Order on

23 the original December 2011 Contract—whether it was a novation, a modification, or something

24 else.  (*See, e.g., id.*)  Indeed, Plaintiff never alleges the parties had any mutual intent to modify

25 any of the terms of the original Contract.   Plaintiff simply alleges the existence of the Contract

26 and the Purchase Order, and then relies without explanation on terms of the Purchase Order to

27

28 [3]   Exhibit A being the Contract that was the original basis for suit and the agreement that Defendant contends is the only valid and controlling contract between the parties, Defendant will continue to refer to it herein as the "Contract" or "Exhibit A."

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929-EMC

*(left margin)* Gordon & Rees LLP
275 Battery Street, Suite 2000

support its claims.  (FAC ¶¶ 40, 44, 51, 62.)

      **1.**      **Pertinent Terms of the December 2011 Contract (FAC, Exhibit A)**

      The December 2011 Contract is titled a "sales contract" and sets forth a contract period of January 1, 2012 through December 31, 2012.  FAC, Exh. A.  It provides that Defendant, the "Seller," "AGREES TO SELL TO BUYER and BUYER to buy from SELLER the following products on the terms and conditions and subject to the agreements stated below and/or on the TERMS AND CONDITIONS statement."  *Id.*  The "Buyer" is identified as American Licorice, 2477 Liston Way, Union City, Ca 94587.  *Id.*  The Contract provides for the sale of 1,500,00 [sic—150,000] pounds of Bulk Refiners syrup at $.3575 per pound, "Two truckloads per order please."  *Id.*  The total contract value is $536,250.00 (150,000 times $.3575 per pound).  *Id.*  The Contract was executed by Dennie Carff for American Licorice on December 14, 2011.  *Id.*

      The terms and conditions in the Contract that govern the terms of the sale, and which the FAC now ignores are the same provisions on which Defendant based its motion to dismiss. Those terms are:

> WARRANTY:  SELLER expressly warrants that any goods contracted  herein will be representative of the brand or grade specified herein to be sold, and will comply with all applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act.  Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within ten (1) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) after receipt of notice of arrival of said commodities at destination, BUYER sends SELLER at SELLER'S main office a letter by registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER's said office a five (5) pound sample of the goods alleged to be defective or inferior, provided that compliance by BUYER with the above enumerated steps shall not constitute an admission by SELLER of the merits or amount of BUYER's said claim or defense.
>
>       Except as expressly set forth herein, SELLER states that no warranties, express or implied, contained in the uniform commercial code or otherwise (including, without limitation, the implied warranty of fitness for a particular purpose) shall apply to the products sold hereunder and BUYER acknowledges that except as expressly set forth in the first sentence of this section, it is purchasing the goods, "as is" and "where is".  SELLER is not responsible for any misuse, reconfiguration or alteration of the goods by purchaser or others. SELLER shall in no event be liable for consequential, special or punitive damages hereunder.
>
> ***
>
> GOVERNING  LAW:  This contract shall be construed in accordance with and governed by the laws of the State of Illinois….

Gordon & Rees LLP
275 Battery Street, Suite 2000

5

FAC, Exh. A, p. 2, "Terms and Conditions."

The Contract provides that it is to remain in full force and effect for the duration of the Contract Period notwithstanding fluctuations in the product's prevailing market price.  FAC, Exh. A, p. 1.  It allows American Licorice to receive shipment of the Bulk Refiners syrup by installments, in which case "this contract shall be construed to be severable as to each installment."  FAC, Exh. A, p. 2 "SHIPMENT."

### 2.    Pertinent Terms of the Purchase Order (Exhibit B)

The February 27, 2012 Purchase Order requests two quantities of Refiners syrup, 48,000 pounds each, at $.3575 per pound.  FAC, Exh. B.  Unlike the Contract, the Purchase Order does not identify a shipment method.  *See id.*  The Purchase Order includes a signature by the "Purchasing Agent" but was not executed by an agent  of Defendant.  *See id.*

The second page of the Purchase Order contains the following pertinent provisions:

3.  INSPECTION.  Payment for Goods and Services delivered shall not constitute acceptance.  Purchaser shall have the right to inspect such Goods and Services and to reject any or all Goods and Services which are, in Purchaser's sole reasonable discretion, defective or nonconforming to the agreed quantity, quality or specifications.  Rejected Goods may be returned to Supplier at Supplier's expense.  Failure to give notice of defects to Supplier shall not constitute a waiver of breach of warranty or any other condition.

\*\*\*

5.  WARRANTY. Supplier warrants that:  [...] (c) if any Goods are foods, or ingredients for use in food products, Supplier guarantees that such articles or materials are produced, manufactured, processed, labeled, marked and shipped in accordance with all applicable federal, state and local laws and are not adulterated, contaminated by foreign materials, misbranded, mislabeled or falsely invoiced within the meaning of the Federal Food, Drug and Commerce Act ....

FAC, Exh. B, p. 2.  The terms "Goods" and "Services" are not defined by the Purchase Order. *See* FAC, Exh. B.

### 3.    Factual Allegations in Support of Claims in FAC

Like the original complaint, the FAC asserts claims for breach of contract, breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness.  Like the original complaint, the gravamen of the FAC is that "on and after April 30, 2012," Defendant sold Plaintiff molasses that "had exceptionally high levels of lead,

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

1  substantially above any level of lead in molasses received by American Licorice prior to 2012

2  and received later in 2012."  FAC ¶ 31.

3  Unlike the original complaint, and in apparent recognition by Plaintiff that its claims

4  would fail if they only relied on the Contract, the FAC now alleges that the April 2012 shipment

5  of molasses breached duties arising from the Purchase Order as well as the Contract.  *See* FAC

6  ¶¶ 39, 40, 44. Plaintiff still seeks consequential damages, which include claims for "costs and

7  lost sales in excess of $2 million," "the cost related to returning the products from the retailers,

8  warehousing recalled product, lost sales from existing inventory, testing, and preparation of FDA

9  required recall-related documents, external administrative costs related to the recall, and lost

10  future sales." FAC ¶¶ 32, 33.

11  ### III.   LEGAL STANDARD

12  Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may make a motion to

13  dismiss for "failure to state a claim upon which relief can be granted."  In its landmark break

14  from *Conley v. Gibson*, the Supreme Court announced that: "To survive a motion to dismiss, a

15  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

16  plausible on its face…. [W]here the well-pleaded facts do not permit the court to infer more than

17  the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

18  pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

19  Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal punctuation omitted).  Moreover, although the

20  Court must construe the facts in the light most favorable to the non-moving party, the Court need

21  not accept as true conclusory allegations, legal characterizations, unreasonable inferences, or

22  unwarranted deductions of fact.  *Beliveau v. Caras*, 873 F. Supp. 1393, 1395-1396 (C.D. Cal.

23  1995); *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

24  Documents attached to the complaint and incorporated therein by reference are treated as

25  part of the complaint for purposes of a Rule 12(b)(6) motion.  *In re Colonial Mortgage Bankers

26  Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).  And "when a written instrument contradicts allegations

27  in a complaint to which it is attached, the exhibit trumps the allegations." *Thompson v. Illinois

28  Dept. of Prof. Reg.,* 300 F.3d 750, 754 (7th Cir. 2002); *Sprewell v. Golden State Warriors*, 266

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)    2013-cv-01929-EMC

1  F.3d 979, 988 (9th Cir. 2001). For purposes of a Rule 12(b)(6) motion, moreover, the court may

2  'augment' the facts and inferences from the body of the complaint with "data points gleaned

3  from documents incorporated by reference into the complaint, matters of public record, and facts

4  susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *Coto*

5  *Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010). Finally, a court need not assume

6  that a plaintiff can prove facts different from those it has alleged. *Assoc. Gen. Contractors of*

7  *Calif. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## IV.   CHOICE OF LAW

9  The Contract contains a choice of law provision which states as follows:

10  "GOVERNING LAW:  This contract shall be construed in accordance with and governed by the

11  laws of the State of Illinois …." FAC, Exh. A, p. 2. Thus, as an initial matter, this case presents

12  the issue whether Illinois or California law applies to Plaintiff's claims.[4]

13  This is a diversity action under 28 U.S.C. § 1332.  "When a federal court sits in diversity,

14  it must look to the forum state's choice of law rules to determine the controlling substantive

15  law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002), citing *Klaxon Co. v. Stentor Elec. Mfg.*

16  *Co.*, 313 U.S. 487, 496 (1941).  Therefore, California's choice of law rules apply to this Court's

17  determination of which state's laws will govern interpretation of the Contract.

18  "In determining the enforceability of arm's length contractual choice-of-law provisions,

19  California courts shall apply the principles set forth in Restatement section 187, which reflects a

20  strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3

21  Cal. 4th 459, 464 (1992).  The Restatement section 187 test is as follows:

22  > [T]he proper approach under Restatement section 187, subdivision (2) is for the
> court first to determine either: (a) whether the chosen state has a substantial

23  > relationship to the parties or their transaction, or (b) whether there is any other
> reasonable basis for the parties' choice of law. If, however, either test is met, the

24  > court must next determine whether the chosen state's law is contrary to a
> fundamental policy of California. If there is no such conflict, the court shall

25  > enforce the parties' choice of law. If, however, there is a fundamental conflict with
> California law, the court must then determine whether California has a 'materially

26  > greater interest than the chosen state in the determination of the particular issue ...

27  ---

[4]  The Purchase Order provides that it is to be interpreted in accordance with Oregon law.  FAC, Exh. B, p. 2,
28  "MISCELLANEOUS."  However, since Plaintiff has failed to allege facts sufficient to show the Purchase Order
formed a valid and binding agreement, and since Plaintiff does not allege that the Purchase Order's choice of law
provision trumps the conflicting provision in the Contract, there is no basis for construing the Purchase Order's
choice of law provision as binding nor for regarding Oregon law as a viable choice of law alternative.

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)    2013-cv-01929-EMC

' If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id.* at 466. Here, Defendant is incorporated under the laws of Illinois, and its principal place of business is in Illinois. Illinois therefore has a substantial relationship to the parties for purposes of the Restatement section 187 test. *See id.* at 467 (finding that Hong Kong had a substantial relationship with the parties since two of them were incorporated under the laws of Hong Kong). Moreover, "[i]f one of the parties resides in the chosen state, the parties have a reasonable basis for their [contractual] choice [of law]." Thus, pursuant to California's choice of law analysis, Illinois laws should be applied to this action unless they are contrary to a fundamental policy of California.

Here, Defendant is not aware of any inconsistencies between the laws of Illinois and California with regard to the claims at issue in this action. California and Illinois both apply the same standards with regard to contracting parties' ability to disclaim liability for breach of implied warranties. Each state interprets contracts in accordance with the parties' intent as revealed in the contract. *Compare* 199 Cal. Jur. Contracts § 199 (West, 2013) *with*, *e.g.*, *Trade Ctr. v. Dominick's Finer Foods*, 304 Ill. App. 3d 931, 934 (1999) (discussing principles of contract interpretation under Illinois law). In each state, the implied warranties of merchantability and fitness for a particular purpose can be disclaimed by a conspicuous writing. *Compare* Cal. Comm. Code § 2316, subd. (2) *with* 810 Ill. Comp. Stat. Ann. 316. There are no conflicts of which Defendant is aware between the applicable contract laws of Illinois and California pertinent to Plaintiff's claims. Thus, Illinois laws are not contrary to a fundamental policy of California, and Illinois law should apply to Plaintiff's claims.

## V.     ARGUMENT

### A.     All of Plaintiff's Claims in the FAC Fail to the Extent They Rely on Terms in the February 2012 Purchase Order, Because Plaintiff Has Failed to Allege Facts Sufficient to Establish that the Purchase Order Created an Enforceable Contract With Defendant

Plaintiff has modified the FAC so that its claims rely, in part, on terms in the February 2012 Purchase Order (and subsequent purchase orders). While the Purchase Order contains

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)     2013-cv-01929-EMC

terms that plainly conflict with the terms and conditions set forth in the December 2011 Contract, Plaintiff fails to allege how the Purchase Order governs this transaction. Plaintiff never alleges that the Contract was replaced or modified by the Purchase Order. Instead, Plaintiff simply appears to regard both the Contract and the Purchase Order as operative agreements. Any reliance on new or conflicting terms that appear in the Purchase Order, fails, however, because Plaintiff has not alleged facts showing that the Purchase Order formed a valid and enforceable agreement.

### 1. The Purchase Order Was Not a Valid Modification of the Contract

Like California, Illinois has adopted the Uniform Commercial Code (UCC).[5] UCC § 2-209, codified in Illinois as 810 Illinois Compiled Statutes ("ILCS") 5/2-209, governs modification and rescission of contracts. It provides in pertinent part that "The requirements of the statute of frauds section of this Article (Section 2-201) must be satisfied if the contract as modified is within its provisions." 810 ILCS 5/2-209. Even if the statutory requirements are met, to be enforceable under UCC § 2-209, "the purported modification must still be based on an agreement to modify…" *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003).[6] Finally, a purported modification of a contract is not valid if it is not negotiated in good faith. 810 ILCS 5/2-209, Comment (2); *Ipec Inc. v. Int'l Lithographing Corp.*, 869 F.2d 1080, 1084 (7th Cir. 1989) (failure to negotiate a modification in good faith invalidates the purported agreement under California and Illinois law); *Essen Nutrition v. Electronic Liquid Fillers, Inc.*, 1996 U.S. Dist. LEXIS 13746, *8 (N.D. Ill. 1996) (addressing good faith requirement under Illinois UCC in context of motion to dismiss).

### a. *The Purchase Order Does Not Satisfy the Statute of Frauds*

Here, the Purchase Order is not a valid modification of the Contract. First, it does not satisfy the requirements of the statute of frauds, UCC § 2-201. 810 ILCS 5/2-209(3), 810 ILCS

---

[5] Oregon also follows the UCC. *See, e.g.*, Oregon Revised Statute § 72.2090 (modification, rescission, waiver) (identical to UCC § 2-209). Defendant is not aware of any differences in the pertinent provisions of Oregon's UCC that would lead to a different result than the one Defendant advocates here.

[6] Courts (including Illinois courts) analyzing contract disputes under the UCC frequently "cite[] freely to a variety of jurisdictions, and this Court has generally done the same in search of useful or persuasive authority" such that reliance on out-of-jurisdiction opinions is common, particularly where, as here, another court has dealt with a factually similar circumstance. *See Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 686 F. Supp. 1319, 1326 (N.D. Ill 1988) (discussing appropriateness of relying on opinions from other jurisdictions in cases under the UCC).

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)     2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

5/2-201.  The UCC statute of frauds applies because the Purchase Order involves a sale of goods

for $500 or more.  *See* 810 ILCS 5/2-201.  UCC § 2-201 provides, in pertinent part, that:

> (1) Except as otherwise provided in this Section a contract for the sale of
> goods for the price of $ 500 or more is not enforceable by way of action or
> defense unless there is some writing sufficient to indicate that a contract
> for sale has been made between the parties and signed by the party against
> whom enforcement is sought or by his authorized agent or broker. A
> writing is not insufficient because it omits or incorrectly states a term
> agreed upon but the contract is not enforceable under this paragraph
> beyond the quantity of goods shown in such writing.
>
> (2) Between merchants if within a reasonable time a writing in
> confirmation of the contract and sufficient against the sender is received
> and the party receiving it has reason to know its contents, it satisfies the
> requirements of subsection (1) against such party unless written notice of
> objection to its contents is given within 10 days after it is received.
>
> (3) A contract which does not satisfy the requirements of subsection (1)
> but which is valid in other respects is enforceable:
>
> > […]
>
> >  (c) with respect to goods for which payment has been made and
> > accepted or which have been received and accepted (Section 2-606
> > [810 ILCS 5/2-606]).

810 ILCS 5/2-201.

The Purchase Order fails to meet these requirements.  Subsection (1) is not met, because

the Purchase Order was not signed by Defendant, the party against whom enforcement is sought.

Subsection (2) is also not met because that subsection deals with *written confirmation* of

otherwise valid *oral* contracts between merchants.  In order to satisfy the Statute of Frauds, such

confirmation must be delivered in writing "within a reasonable time" following negotiation of

the contract.  *See, e.g., Automotive Spares Corp. v. Archer Bearings Co.*, 382 F.Supp. 513, 515

(N.D. Ill. 1973) (UCC § 2-201(2) addresses written confirmation of an otherwise valid oral.

*Ardus Med., Inc. v. Emanuel County Hosp. Auth.*, 558 F. Supp. 2d 1301, 1307 (D. Ga. 2008) (the

confirmation contemplated by UCC § 2-201(2) must reflect a valid, post-negotiations

agreement).  Put another way, "the principle generally accepted by the courts" is that UCC § 2-

201(2) requires that "a writing, in order to be a 'writing in confirmation' of an agreement under

the merchant's exception, "must follow a prior oral agreement in order to be a confirmation of

that agreement."  82 Amer. Law Reports 4th 709 § 2a (2013); see also 810 ILCS 5/2-201,

11

Comment (3) (plaintiff must prove existence of a prior oral agreement).  Thus, because the Purchase Order is not "a writing in confirmation" of a prior oral agreement, it does not satisfy UCC § 2-201(2).[7]

Third, UCC § 2-201(3)(c) is not met because any payment tendered was entirely consistent with Defendant's rights and obligations under the Contract.  *See Dallas Aerospace*, 352 F.3d 775, 783.  In *Dallas Aerospace*, CIS Air Corporation (CIS), the seller, contracted with Dallas Aerospace, Inc. (Dallas) for the purchase of a jet engine.  *Id.* at 779.  CIS' contract with Dallas (like the Contract here) specified that the engine was sold "as-is, where-is."  *Id.*  Like the Contract here, the contract between CIS and Dallas contained a warranty clause that specified that "no warranties, representations or undertakings have been made by either party except as expressly set forth herein."  *Id.*  Like the Contract here, the contract between CIS and Dallas was signed by Dallas, the purchaser.  *Id.* At the time Dallas paid for the engine, it also delivered to CIS a purchase order that "purported to modify the contract by requiring CIS to deliver a serviceable and airworthy engine that had 'not been subjected to extreme stress or heat as in a major engine failure....'"  *Id.* at 780.  Like the FAC here, Dallas' suit relied in part on the claim that CIS had breached this latter term of the purchase order by delivering a defective engine.  *Id.* at 780-781.

The trial court granted summary judgment, finding the purchase order did not constitute an enforceable modification of the original sales contract.  *Id.*  The Court of Appeals affirmed.  On appeal, Dallas argued that its purchase order was a valid modification that satisfied the statute of frauds, UCC § 2-201, despite the fact that the purchase order was not signed by CIS.  *See id.* at 782.  In particular, Dallas argued that UCC § 201(3)(c) was satisfied because CIS had accepted payment after receiving the purchase order.  *Id.*

The Second Circuit rejected that argument.  "The rationale underlying the [partial performance] exception is that 'receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists.'"  *Id.*, citing N.Y. UCC § 2-201, Comment (2); *compare* 810 ILCS 5/2-201, Comment (2) (identical to the rationale

---

[7]  Of course, there is also no allegation that Defendant failed to object to the Purchase Order, so even if it were a "confirmation" of a prior oral agreement, UCC § 2-201(2) would still not be met.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)     2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

underlying New York's UCC). "Accordingly, particle performance of contractual obligations validates a contract, but only to the extent of such partial performance." *Id.* However, "because [CIS'] acceptance of payment for the engine was entirely consistent with CIS's pre-existing rights and obligations under the unmodified Agreement, it cannot be said that CIS's performance 'constituted an unambiguous overt admission' that the contract had been modified." *Id.* at 782-783.

The same logic applies here. As in *Dallas Aerospace*, the key terms, including the sales price, goods, quantity, and shipping information, were all set forth in the original Contract and were not changed by the Purchase Order.   The Contract provided for delivery of "two truckload[s] per order please," and it allowed delivery by installments and as directed by Plaintiff, so the shipment of two quantities of molasses in response to Defendant's order is also consistent with the terms of the original Contract. *See* Exh. A at p. 1, and at p. 2, "SHIPMENT." The only terms of the Purchase Order that differ from the original Contract are the terms and conditions on its reverse side, which include, just as in *Dallas Aerospace*, a new warranty provision that Plaintiff now seeks to enforce. As in *Dallas Aerospace*, Defendant's delivery of molasses and acceptance of payment was entirely consistent with its initial Contract obligations. Thus, just as in *Dallas Aerospace*, to the extent the FAC alleges that Defendant provided molasses to Plaintiff, or accepted payment for a delivery, such acts do not constitute "an unambiguous overt admission" that the Contract was modified by the Purchase Order. Accordingly, just as in *Dallas Aerospace*, the Purchase Order does not satisfy the statute of frauds, UCC § 2-201.

### b. *The Purchase Order Does Not Reflect Nor Confirm a Prior, Valid Contract Modification*

Even if the statute of frauds were met by the Purchase Order—and it is not—that does not mean that the Purchase Order represents an enforceable agreement to modify the December 2011 Contract.  To constitute a contract "modification," a purported agreement must reflect a mutual intent to modify the existing contract. *Dallas Aerospace, Inc.*, 352 F.3d at 783.  A purchase order that is pursuant to the original agreement, and which does not reflect an indent to modify

Gordon & Rees LLP
275 Battery Street, Suite 2000

13

the original sales agreement, does not constitute a valid contract modification.  *Ray Dancer, Inc. v. DMC Corp.*, 175 Ill. App. 3d 997, 1003-1004 (1988)

Here, there are no allegations in the FAC that would support construing the Purchase Order as a valid contract modification.  Plaintiff does not allege the Purchase Order reflects a mutual intent to modify terms of the original Contract.  Plaintiff does not say what the Purchase Order is at all.  In fact, Plaintiff simply relies on both the Contract and the Purchase Order in support of its claims, without any allegation explaining the relationship between the Purchase Order and the Contract, and without addressing the slew of new conflicting terms in the Purchase Order.   Plaintiff does not allege the Purchase Order modified the Contract at all.  Instead, Plaintiff's FAC assumes that the Contract and the Purchase Order are valid and binding, and appears to allege that the Contract and Purchase Order together constitute a single "contract." See FAC ¶¶ 37 (alleging existence of Purchase Order), 39 (referring to "the contract" but not specifying whether "the contract" means Exhibit A, Exhibit B, or both)  Under *Dallas Aerospace* and *Ray Dancer*, such allegations are insufficient to support treating the Purchase Order as a valid modification of the Contract.  *Dallas Aerospace, Inc.*, 352 F.3d at 783; *Ray Dancer, Inc.*, 175 Ill. App. 3d at 1003-1004.

          **c.**    ***Even if the FAC Alleged Facts Sufficient to Construe the Purchase Order as a Modification of the Contract—and It Does Not—the FAC Fails to Allege Facts Demonstrating the Modification Was in Good Faith***

Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement.  *See* 810 ILCS 5/1-304.  Any modification of a contract must "meet the test of good faith" imposed by the UCC.  *Ipec Inc.*, 869 F.2d at 1084. Good faith is defined in the UCC as honesty in fact in the conduct or transaction concerned. 810 ILCS 5/1-201 and Comment (20).  Under UCC § 2-103(b), "good faith" in the case of a merchant means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."  810 ILCS 5/2-103(b).  In the context of a purported contract modification, the good faith requirement "may in some situations require an objectively demonstrable reason for seeking a modification."  810 ILCS 5/2-209, Comment (2).  A "market shift" is an objective

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)          2013-cv-01929-EMC

1    reason that may provide a good-faith basis for requesting a modification. *Id.*

2         Here, Plaintiff fails to allege that the Purchase Order was a modification of the Contract;

3    even if it had done so, there are no allegations of "an objectively demonstrable reason for

4    seeking a modification" that show any such modification was sought in good faith.  Instead, the

5    FAC merely alleges that Plaintiff issued the Purchase Order, which set forth new and conflicting

6    terms, without providing any good faith basis for any of those modifications to the original

7    Contract.  As such, the FAC does not allege the Purchase Order was a good faith modification of

8    the Contract between the parties.

9              **d.    *Plaintiff's Course of Conduct is Inconsistent With the Conclusion that***

10                     ***the Purchase Order Was Intended to Modify the Contract***

11        Plaintiff's course of conduct in this action is relevant to interpreting the parties'

12   understanding of the effect of the Purchase Order, and whether it constituted an effective, mutual

13   modification of the Contract.  *See Dallas Aerospace*, 352 F.3d at 784.  In *Dallas Aerospace*,

14   Dallas, the Plaintiff, originally sued based only on the parties' original sales agreement.  It was

15   not until CIS, the Defendant, filed a summary judgment motion that Dallas asserted the original

16   agreement had been modified.  *Id.*  In addition, Dallas' complaint admitted that the original

17   agreement was the contract between the parties.  *Id.*  The Court of Appeals found that this pattern

18   of conduct "reinforces our conclusion here that the asserted modification was ineffective."  *Id.*

19        Similarly, here, Plaintiff originally sued based only on the terms and conditions of the

20   Contract.  *See* Compl.  It was not until Defendant moved to dismiss the original complaint that

21   Plaintiff amended it to allege the existence of the Purchase Order.  *See* FAC.  Even so, Plaintiff's

22   FAC still regards the Contract as a valid agreement.  FAC ¶¶ 14, 35, 43.  Plaintiff does not allege

23   that the Contract was modified or superseded by the Purchase Order; the FAC simply regards

24   both documents as enforceable.  *See id.*  In fact, Plaintiff expressly alleges that it attempted to

25   follow the warranty claim procedure under the Contract by providing written notification and a

26   sample of the product.  FAC ¶¶ 47, 66.  As in *Dallas Aerospace*, Plaintiff's course of conduct is

27   inconsistent with the conclusion that the Purchase Order was intended as a modification of the

28   Contract.

Gordon & Rees LLP
275 Battery Street, Suite 2000

15

**B.**     **Plaintiff's Claims in the FAC Fail Under the Terms of the December 2011 Contract**

Because the Purchase Order did not effect a valid, enforceable modification of the

Contract, Plaintiff's FAC cannot rely on the terms of the Purchase Order to state a claim.  That

leaves the December 2011 Contract as the only agreement on which Plaintiff can rely.  However,

and as Defendant argued in its original motion to dismiss, Plaintiff's claims fail under the terms

of the Contract.

       **1.**     **All of Plaintiff's Claims Fail Because Plaintiff Did Not Comply with the Contract's Express Claims Notice Requirements**

The Contract contains a condition precedent to filing any claim based on the quality of

the commodities.  Pursuant to that provision,

> Buyer [i.e., Plaintiff] hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within ten (10) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) after receipt of notice of arrival of said commodities at destination, BUYER sends SELLER [i.e., Defendant] at SELLER'S main office a letter by registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER's said office a five (5) pound sample of the goods alleged to be defective or inferior….

FAC, Exh. A, p. 2, "WARRANTY" [bracketed information added].

An essential allegation of a complaint based upon a breach of contract is that the plaintiff

performed all contractual conditions required of him. *Wilbur v. Potpora*, 123 Ill.App.3d 166,

169-170 (1984); *Martin-Trigona v. Bloomington Fed. Sav. & Loan Ass'n*, 101 Ill. App. 3d 943,

946 (1981); *Topping v. Fry*, 147 F.2d 715, 718 (7th Cir. 1945).  Dismissal is the appropriate

remedy for a plaintiff's failure to allege compliance with a contract's conditions precedent.

*Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 610 (7th Cir. 1987).

Here, the warranty required Plaintiff to provide written notice and sample within 45 days

of receiving the molasses shipment.  Plaintiff admits that it received shipments of molasses from

February 2012 through August 2012.  FAC ¶ 19.  Plaintfif further admits it did not provide

Defendant with notice of the alleged defect until September 6, 2012.  Id at ¶ 47.  Therefore, as a

matter of law, Plaintiff cannot establish that it provided timely notice for any shipment that was

received 45 days prior to September 6, 2012, which is July 23, 2012.  Accordingly, any claims

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)     2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

1   based upon shipments received prior to July 23, 2012 should be dismissed with prejudice.

2          Plaintiff cannot avoid the 45-day notice requirement by claiming it provided notice

3   within 45 days of its discovery of the defect.  Under Illinois law, the terms and conditions

4   included in an express warranty are interpreted in accordance with their plain meaning.  *Bell*

5   *Fuels, Inc. v. Lockheed Electronics Co.*, 130 Ill. App. 3d 940, 945 (1985), quoting *Susmano v.*

6   *Assoc. Internists*, 97 Ill. App. 3d 215, 219 (1981).  Here, the Contract states that notwithstanding

7   the 10-day deadline for providing notice of defect following discovery of the defect, that any

8   notice of defect must be provided to Defendant "in any event within forty-five (45) after receipt

9   of notice of arrival of said commodities at destination."  *See* Exh. A, p. 2, "WARRANTY."  The

10  45-day notice provision is triggered by notice of arrival of the molasses, not by the date Plaintiff

11  learns of the defect.  Thus, while Plaintiff alleges it first learned of the high levels of lead in its

12  black licorice product on August 21, 2012, and that on August 30, 2012 it discovered allegedly

13  high levels of lead in the molasses shipment received on approximately April 30, 2012, the date

14  of receipt controls under the Contract.

15         Moreover, Plaintiff fails to allege facts showing that it complied with the other pre-claim

16  conditions in the Contract.  The Contract specifies the manner in which notice must be provided

17  to preserve the right to bring claims based on the quality of commodities.  It states that the notice

18  to be provided is that "BUYER [must] send[] SELLER at SELLER'S main office a letter by

19  registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days

20  sends by parcel post or express prepaid to SELLER's said office a five (5) pound sample of the

21  goods alleged to be defective or inferior."  Compl., Exh. A, p. 2, "WARRANTY."  Here,

22  Plaintiff merely alleges that it "notified Defendant of th[e] breach in writing," but it does not

23  allege even in general terms that it complied with the other pre-claims requirement that it send a

24  5-pound sample of the allegedly defective goods to Defendant within 45 days.  *See* FAC at¶ 47.

25         Therefore, Plaintiff's claims fail because it did not comply with the 45-day claim notice

26  requirements set forth in the Contract, and because Plaintiff does not allege it complied with the

27  requirement regarding providing a sample of the allegedly defective material within 45 days.

28  / / /

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

### 2.    Plaintiff's Claims for Breach of Contract and Breach of Express Warranty Fail

Plaintiff's breach of contract claim cannot stand because Plaintiff does not allege conduct that breached any of the express terms of the Contract.  The essential allegations of Plaintiff's breach of contract claim are as follows:

> [¶39]  Pursuant to the Contract between Plaintiff and Defendant, Defendant was to provide Refiners syrup to Plaintiff American Licorice in conformance with the specifications agreed to, of merchantable quality, that was to be free of all latent or patent defects, to be safe for its intended use as a key ingredient in the manufacture of black licorice candy, not adulterated and not contaminated by foreign materials.
>
> [¶ 40]  Defendants breached the contract by delivering goods that did not comply with the agreed to specifications, terms and warranties as the Refiners syrup contained excessive levels of lead and therefore, among other things, was not representative of the brand or grades specified, was adulterated and contaminated with lead especially at levels which indicates it was a foreign material, and did not comply with all of the applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act and related statutes.

FAC  ¶¶ 39, 40.  These allegations fail to state a claim upon which relief can be granted when viewed in conjunction with the Contract.  Plaintiff's breach of express warranty claim is based on the same basic allegations of breach, and it fails for the same reasons.  *See* FAC ¶ 46.

Four elements must be pleaded in order to state a claim for breach of contract: the existence of a contract between the parties; performance of contractual duties by the claimant; breach by the other party; and damages suffered by claimant resulting from the breach.  *Derson Group, Ltd. v. Right Management Consultants, Inc.*, 683 F.Supp. 1224, 1230 (N.D. Ill. 1988).  To state a claim for breach of contract based on a written agreement, it is essential that the provision allegedly breached appear in the contract and that the allegedly wrongful conduct, if true, would constitute a breach of the written agreement.  *See, e.g.*, *Miron v. Herbalife Int'l, Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001) (dismissing breach of contract claim "in order for a breach of contract action to be based on an instrument in writing, the writing must express the obligation sued upon"); *see Servpro Indus. v. Schmidt*, 1996 U.S. Dist. LEXIS 9857, *9-*15 (N.D. Ill. 1996) (dismissing breach of contract claim where Plaintiff attached written agreement to complaint but could not specify term of the contract that was allegedly breached).  Similarly,

18

1   Pursuant to a claim for breach of express warranty, the language of the warranty itself dictates

2   the obligations of the parties.  *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 379 F.Supp.2d

3   968, 983-84 (N.D. Ill. 2005).

4          Here, the Court should dismiss Plaintiff's claims for breach of contract and breach of

5   express warranty, because the FAC alleges breach of obligations that do not appear in the

6   Contract.  First, the FAC relies on terms of the Purchase Order to the extent it alleges Defendant

7   was obliged to provide goods that are "free from latent and patent defects" and "not adulterated

8   and not contaminated by foreign materials."  FAC ¶ 39, 46, Exh. B.  Because the Purchase Order

9   is not an enforceable modification of the Contract, those allegations do not state a claim for

10  breach of contract.

11         Second, to the extent Plaintiff alleges that Defendant was required to be "safe for its

12  intended use as a key ingredient in the manufacture of black licorice candy," there is no such

13  Contract term.  *Compare* FAC ¶ 39 *with* Exh. A. This allegation cannot support Plaintiff's claim.

14  Third, Plaintiff also alleges that Defendant owed a duty to provide Refiners syrup "in

15  conformance with specifications" and that Defendant's molasses "did not comply with agreed to

16  specifications" or "was not representative of the brand or grade specified" because it allegedly

17  "contained excessive levels of lead."  FAC ¶¶ 40, 46.  These allegations appear to refer to the

18  Contract's provision that Defendant "expressly warrants that any goods contracted herein will be

19  representative of the brand or grade specified herein to be sold."  FAC, Exh. A, p. 2,

20  "WARRANTY."  This warranty refers to "the brand or grade specified *herein* to be sold"; thus,

21  to the extent the goods are to be representative of any particular brand or grade, that brand or

22  grade is to be specified "herein"—i.e., within the Contract.   Yet the only such specification in

23  the Contract is found under Product Description, where Defendant agrees to sell "Bulk Refiners

24  syrup" to Plaintiff.  *See* FAC, Exh. A, p. 1.  There is no other specification within the Contract

25  regarding the brand or grade of goods, and there is no requirement or representation anywhere in

26  the Contract regarding the lead content of molasses.  *See* FAC, Exh. A.  Therefore, this provision

27  did not create a duty in Defendant to supply molasses with a particular lead content; it simply

28  obliged Defendant to sell Plaintiff "Bulk Refiners syrup."  Defendant complied with this

Gordon & Rees LLP
275 Battery Street, Suite 2000

19

Gordon & Rees LLP
275 Battery Street, Suite 2000

provision; it did not breach it.

Fourth, Plaintiff alleges Defendant's molasses did not "comply with all applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act" because it "contained excessive levels of lead." FAC ¶ 40, 46.  According to Plaintiff, "excessive levels of lead" means anything over "the limit of 0.1 parts per million ('ppm') set by the United States Food and Drug Administration ('FDA') and CDPH for *candy frequently consumed by small children*." FAC ¶ 22 (emphasis added).

There is no plausible way to construe standards applicable to "candy frequently consumed by small children" as including molasses.  The inclusion of specific food items excludes items not listed.  "The familiar maxim *expressio unius est exclusio alterius* … expresses the learning of common experience that when people say one thing they do not mean something else." *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (Ill. 2004).  Plaintiff does identify any regulatory standard applicable to Defendant's product.

Indeed, there are no cited provisions in the Federal Food, Drug and Cosmetic Act (the "Act") that regulate or address the amount of lead in molasses.  Rather, it regulates only particular consumable items, like wine and candy consumed by small children, and some items that may leach lead into food, like ceramics.  *See, e.g.*, "Chemical Contaminants, Metals, Natural Toxins & Pesticides Guidance Documents & Regulations" (FDA), available online at *http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ChemicalContaminantsMetalsNaturalToxinsPesticides/default.htm* (accessed May 16, 2013).[8] Likewise, the California provisions (California's regulations would be the applicable provisions here since the molasses was delivered to California) regulate lead in candy consumed by small children, but do not address lead content in molasses.  *See, e.g.*, "Frequently Asked Questions (FAQ) about Lead and Lead-Contaminated Products," (Cal. Dep't Public Health), available online at *http://www.cdph.ca.gov/programs/Pages/LeadFAQ.aspx.*  (accessed May 16, 2013).

/ / /

---

[8] The Court may take judicial notice of administrative materials.  "It is entirely proper for a court to take judicial notice of records and reports of administrative agencies." *Banks v. Warner*, 1995 WL465773, at *1 (9th Cir. Aug. 7, 1995).

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929-EMC

1    Therefore, even if Plaintiff's allegations regarding the content of lead in Defendant's

2    molasses were true, that conduct did not violate any "applicable provision" of the Act or of

3    California's Pure Food and Drug Act, and thus it did not violate the Contract.

4        **3.**      **Plaintiff's Third Claim for Breach of the Implied Warranty of
     Merchantability and Fourth Claim for Breach of the Implied Warranty of**

5                 **Fitness Fail Because the Contract Attached to the Complaint Disclaims All
     Implied Warranties**

6

7        The Third and Fourth Claims in Plaintiff's FAC are for Breach of the Implied Warranty

8    of Merchantability and Breach of the Implied Warranty of Fitness.  Both claims fail pursuant to

9    the Contract's valid disclaimer of implied warranties, which reads as follows:

10       Except as expressly set forth herein, SELLER states that no warranties, express or
     implied, contained in the uniform commercial code or otherwise (including,

11       without limitation, the implied warranty of fitness for a particular purpose) shall
     apply to the products sold hereunder and BUYER acknowledges that except as

12       expressly set forth in the first sentence of this section, it is purchasing the goods,
     "as is" and "where is".

13

14   FAC, Exh. A, p. 2, "WARRANTY."

15       Section 2-316 of the UCC allows a contracting party to validly disclaim the implied

16   warranties of merchantability or fitness provided that the disclaimer is conspicuous.  810 ILCS

17   5/2-316(2).  "The purpose of this rule is to protect the buyer from surprise."  *Bell Fuels, Inc. v.*

18   *Lockheed Electronics Co., Inc.*, 130 Ill. App. 3d 940, 944-945 (1985).  The UCC defines

19   "conspicuous" as follows:  "A term or clause is conspicuous when it is so written that a

20   reasonable person against whom it is to operate ought to have noticed it. A printed heading in

21   capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body

22   of a form is 'conspicuous' if it is in larger or other contrasting type or color."  810 ILCS 5/1-

23   201(10).  Under Illinois law, the determination of whether a particular term or clause is

24   conspicuous is to be made by the court.  810 ILCS 5/1-201(10).  The court should make that

25   determination by asking if attention can reasonably by expected to be called to the term or

26   clause.  *Bell Fuels, Inc.*, 130 Ill. App. 3d at 946; *R.O.W. Window Co. v. Allmetal, Inc.*, 367 Ill.

27   App. 3d 749, 753 (2006).

28   / / /

Gordon & Rees LLP
275 Battery Street, Suite 2000

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)   2013-cv-01929-EMC

In *R.O.W.*, the court found that the waiver of the implied warranties was conspicuous because it was included in seller's terms and conditions, was in all caps, used clear language, and was set off from other text. *Id.* The court placed particular emphasis on the fact that plaintiff was a merchant: "courts are less reluctant to hold businessmen to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers. *Id.* at 754.

Here, as in *R.O.W.*, the Court should find the Contract's disclaimer of implied warranties to be conspicuous. As in *R.O.W.*, the disclaimer is between merchants, it is included in the Contract signed by Plaintiff, it uses clear language under the heading "WARRANTY" in all capital letters, and it is set off in a separate paragraph. While the entire disclaimer is not written in capital letters, "whether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract." *Id.* Given the totality of the circumstances, the Court should find the disclaimer sufficiently conspicuous to be enforceable. Therefore, because the Contract validly disclaims all implied warranties, Plaintiff's claims for breach of implied warranties should be dismissed.

## C.   Plaintiff's Claim for Consequential Damages Must Be Stricken

In the event the Court does not dismiss Plaintiff's FAC in its entirety, Plaintiff's claim for consequential damages should be stricken because the Contract disclaims consequential damages. The pertinent disclaimer states that "SELLER shall in no event be liable for consequential, special or punitive damages hereunder." FAC, Exh. A, p. 2, "WARRANTY."

Under Illinois law, private parties to a contract may allocate the risk of loss, and exculpatory clauses do not violate public policy as a matter of law. *Reuben H. Donnelley Corp. v. Krasny Supply Co. Inc.*, 227 Ill. App. 3d 414, 592 N.E.2d 8, 11 (1991). "In fact, there is a strong public policy supporting freedom of contract." *Stepan Co. v. Winter Panel Corp.*, 1996 U.S. Dist. LEXIS 9633, *11 (N.D. Ill. 1996), citing *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 589 N.E.2d 1034, 1037 (1992). In *Stepan Co.*, the district court addressed the validity of a contractual provision limiting the damages the buyer could seek for breach of contract. Relying on the Seventh Circuit rule governing such provisions, pursuant to which the bargaining power of the parties and the intent of the parties

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)      2013-cv-01929-EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000

1   based on the provisions in the contract are relevant to the validity of limited remedy provisions,

2   the court found that the contractual limitation was valid. *Id.* at \*11-\*12. Here, the Court should

3   similarly find that Plaintiff's claim for consequential damages is foreclosed by the contract; the

4   limitation on remedies is not unconscionable, Plaintiff is a sophisticated merchant. The Court

5   should therefore strike Plaintiff's claim for consequential damages from the FAC.

6                           **VI.    CONCLUSION**

7          For the foregoing reasons, Defendant respectfully request that this Court dismiss

8   Plaintiff's FAC in its entirety for failure to state a claim upon which relief can be granted and

9   without leave to amend. All of Plaintiff's claims, and its prayer for consequential damages, are

10  barred by its failure to comply with the Contract's conditions precedent to suit. Plaintiff's

11  claims for breach of contract and breach of express warranty fail because Plaintiff has not

12  identified any conduct that amounts to a breach of the terms of its written agreement with

13  Defendant. Finally, Plaintiff's claims for breach of implied warranty are barred by the valid and

14  conspicuous disclaimer in the Contract's Warranty provision.

15  Dated:  June 14, 2013                           GORDON & REES LLP

16                                           By:    */s/ Kara Persson*

17                                                  MORDECAI D. BOONE
                                                    KARA PERSSON
18                                                  Attorneys for Defendant
                                                    TOTAL SWEETENERS, INC. dba
19                                                  BATORY FOODS

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000

CGIC/1083731/15851556v.1

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM, FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)    2013-cv-01929-EMC