United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN LICORICE COMPANY, | No. C-13-1929 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| TOTAL SWEETENERS, INC., *individually and doing business as* BATORY FOODS, INC.,| **(Docket No. 22)** |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant's[1] motion to dismiss Plaintiff's first amended complaint for failure to state a claim. Docket No. 22. Plaintiff is a manufacturer of candy that makes black licorice. Defendant contracted to sell to Plaintiff bulk refiner's syrup (a grade of molasses) used in the licorice. In 2012, Plaintiff was compelled to recall its black licorice because of an unacceptably high lead level in the candy. It subsequently traced the source of the lead contamination to Defendant's molasses. Plaintiff brought the instant suit alleging breach of contract and other related claims in connection with Defendant's sale of the lead-contaminated molasses.

Plaintiff filed an amended complaint on May 31, 2013. Defendant moved to dismiss the first amended complaint. Defendant argues that though Plaintiff's amended complaint brings claims

---

[1] Plaintiff's complaint names "Total Sweeteners, Inc., individually and doing business as Batory Foods, Inc.," and refers to "Defendants." Defendant clarifies in its motion, however, that Total Sweeteners and Batory Foods are not separate corporate entities, so this memo refers to Defendant in the singular. Def.'s Mot. at 3 n.2.

based in part on terms found in a February 2012 purchase order prepared by Plaintiff, this purchase order was never adopted as part of the contract between the parties. Absent legal effect of the purchase order, Defendant argues that the terms of the parties' earlier December 2011 agreement governs. Defendant asserts that Plaintiff's claims must be dismissed under that agreement because: (1) Plaintiff did not comply with the notice prerequisites for bringing suit; (2) Plaintiff has failed to identify the contractual term breached; (3) the contract disclaims all implied warranties; and (4) the contract does not permit consequential damages.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff is a manufacturer and distributor of candy, and has a production facility in Union City, California, where it makes black licorice. First Amended Complaint ("FAC") ¶ 2 (Docket No. 19). Defendant is a manufacturer and distributor of sugar-derived products for use in food products, including molasses. FAC ¶ 3. Prior to February 2012, Plaintiff occasionally purchased refiner's syrup, a grade of molasses, from Defendant. FAC ¶ 12. This purchase was accomplished through the issuance of a purchase order issued from Plaintiff to Defendant that set out the specific terms and conditions for the purchase of the molasses, including warranty information. *Id.* Prior to February 2012, Defendant was not Plaintiff's primary molasses supplier. FAC ¶ 13.

In December 2011, the parties entered into an agreement for the delivery of bulk refiner's syrup. FAC ¶ 14. This agreement, titled "Sales Contract," appears to have been prepared by Defendant, and covers the period from January 1, 2012 to December 31, 2012.[2] FAC ¶ 14; FAC Ex. A. The contract provides a per pound price for the molasses, and specifies a total quantity of 1,500,000 pounds. FAC Ex. A. It does not specify a delivery schedule, though there is a note stating "Two truckload per order please," and another indicating "[e]ven draws across contract period required unless otherwise specified." *Id.*

The second page of the contract contains a number of terms and conditions in small print. *Id.* In relevant part, these terms include:

---

[2] Plaintiff refers to this document throughout its opposition as "Defendant's purchase order." This memorandum, however, refers to the document as the "Sales Contract" because that is how the document is titled.

2

> **WARRANTY:** SELLER expressly warrants that any goods contracted herein will be representative of the brand or grade specified herein to be sold, and will comply with all of the applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act. Buyer hereby waives any claim of defense based on the quality of the commodities specified herein, unless (1) within ten (10) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) dafter receipt of notice of arrival of said commodities at destination, BUYER sends SELLER at SELLER'S main office a letter by registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER'S said office a five (5) point sample of the goods alleged to be defective or inferior, provided that compliance by BUYER with the above enumerated steps shall not constitute an admission by SELLER of the merits or amount of BUYER'S said claim or defense.
>
> Except as expressly set forth herein, SELLER states that no warranties, express or implied, contained in the uniform commercial code or otherwise (including, without limitation, the implied warranty of fitness for a particular purpose) shall apply to the products sold hereunder and BUYER acknowledges that except as expressly set forth in the first sentence of this section, it is purchasing the goods, "as is" and "where is". SELLER is not responsible for any misuse, reconfiguration or alteration of the goods by purchaser or others. SELLER shall in no event be liable for consequential, special or punitive damages hereunder.

*Id.* The Sales Contract also provides that it shall be construed in accordance with the laws of the state of Illinois. *Id.* The Sales Contract is signed by a Dennie V. Carff, who appears to be a representative of Plaintiff. The version submitted with the complaint does not appear to have been signed by one of Defendant's representatives although the contracts bears Defendant's printed name and appears to be on Defendant's letterhead. *Id.*

Prior to the first shipment of molasses, Plaintiff sent a form titled "Purchase Order" to Defendant on February 27, 2012. FAC ¶ 15; FAC Ex. B. The Purchase Order requests that 48,000 pounds of molasses be delivered on February 29, 2012, and another 48,000 pounds on March 2, 2012, both at the price specified in the Sales Contract. *Id.* The Purchase Order appears to have been signed by Mr. Carff, but not by any representative of Defendant. *Id.*

Similar to the Sales Contract, the Purchase Order has a second page laying out various terms and conditions. *Id.* Perhaps unsurprisingly, as the Purchase Order was prepared by Plaintiff, the terms and conditions vary in a number of ways. Of relevance to the instant motion, the Purchase Order contains the following terms:

3

> These Terms and Conditions and any additional terms and documents referred to herein constitute the entire agreement between Purchaser and the supplier (Supplier) that supplies or provides the goods or services ordered by Purchaser . . . .
>
> ACCEPTANCE. Supplier's commencement of Services or delivery of Goods or any other event that constitutes acceptance under applicable law, shall be deemed unconditional acceptance of this Purchase Order and as Supplier's waiver of any additional terms of any confirmation, invoice or other writing issued by Supplier
>
> INSPECTION. Payment for Goods and Services delivered shall not constitute acceptance. Purchaser shall have the right to inspect such Goods and Services and to reject any and all Goods and Services which are, in Purchaser's sole reasonable discretion, defective or nonconforming to the agreed quantity, quality or specifications. Rejected Goods may be returned to Supplier at Supplier's expense. Failure to give notice of defects to Supplier shall not constitute a waiver of breach of warranty or any other condition.
>
> . . .
>
> WARRANTY. Supplier warrants that: . . . (b) all Goods and Services shall be of merchantable quality, free from all latent or patent defects, shall conform to Purchaser's specifications or samples, and shall be safe for their intended use . . . ; (c) if any Goods are foods, or ingredients for use in food products, Supplier guarantees that such articles or materials are produced , manufactured, processed, labeled, marked and shipped in accordance with all applicable federal, state and local laws and are not adulterated, contaminated by foreign materials, misbranded, mislabeled or falsely invoiced within the meaning of the Federal Food, Drug and Commerce Act and are not goods which may not, under the provisions of Section 404 or 505 of the Act, be introduced into interstate commerce and are not in violation of the Food Additives Amendments of 1958 . . .
>
> . . .
>
> REMEDIES, LIMITATION OF LIABILITY AND INDEMNITY. . . . If Supplier breaches this Purchase Order, Purchaser shall have all remedies available at law and equity. Supplier agrees to indemnify and hold Purchaser, its parent, subsidiaries, officers, directors, employees and agents harmless from and against all claims, liabilities, expenses, losses or damages (including reasonable attorneys' fees) to which Purchaser may become subject insofar as such claims, liabilities, expenses, losses or damages arise out of or are based upon (a) Services ordered or Goods purchased from Supplier . . . ; (b) a breach by Supplier of any of the warranties contained herein; or (c) negligent acts or omissions of Supplier's officers, directors, employees or agents.

*Id.* The Purchase Order provides that it shall be construed in accordance with the laws of the state of Oregon. *Id.*

4

After Plaintiff sent the Purchase Order, Defendant delivered molasses to Plaintiff's facility in Union City, California in accordance with the quantity, shipment, and price terms in that order, and thereafter billed Plaintiff. FAC ¶ 18. Plaintiff subsequently sent Defendant additional orders using the same form purchase order, and Defendant continued to provide periodic shipment of molasses through at least August 2012. FAC ¶ 19. From February through August 2012, Defendant was the only molasses supplier to Plaintiff's Union City location, and the only supplier of molasses for the black licorice products that are the subject of this suit. FAC ¶ 20. Molasses is the major constituent and first listed ingredient in Plaintiff's black licorice. FAC ¶ 21.

On or about August 21, 2012, Plaintiff was visited by the California Department of Public Health ("CDPH") and informed that at least one lot of its black licorice was tested and found to contain levels of lead in excess of the 0.1 parts per million (ppm) limit set by the United States Food and Drug Administration ("FDA") for candy frequently consumed by small children. FAC ¶ 22. Both the FDA and the CDPH consider candy with lead content above this level to be adulterated. *Id.* California and various other jurisdictions prohibit the sale of candy which contains lead in excess of 0.1 ppm. *Id.* As a result of the testing, the CDPH requested that Plaintiff recall the affected lot of black licorice from all stores and retail customers. FAC ¶ 23. Plaintiff worked with CDPH to implement the recall, and issued a press release that was outlined and approved by the CDPH regarding the recall. *Id.* The CDPH additionally issued its own press release on the recall. *Id.* The recall was covered by various local and national news outlets. *Id.*

The "Best Buy" date on the affected lot indicates that it was manufactured in May 2012. FAC ¶ 24. Plaintiff launched an investigation into the contamination and determined that lots manufactured in 2011 prior to the shipment of Defendant's molasses contained significantly less lead than 0.1 ppm, while the lots made in May 2012 and later had lead levels significantly in excess of 0.1 ppm. FAC ¶¶ 25-26. Black licorice from the May 2012 lot had lead levels around 0.27 to 0.33 ppm. FAC ¶ 27. Black licorice produced in July and early August 2012 had levels of lead that were lower than that found in the May lot, but still in excess of 0.1 ppm. *Id.* Testing of all the ingredients used in making the black licorice showed that the elevated lead levels was due to the molasses supplied by Defendant rather than to the other ingredients. FAC ¶ 28.

5

After the internal investigation and testing, Plaintiff was compelled to expand the recall to include all of its black licorice available for sale and in possession of consumers throughout the United States, including packages containing mixed red and black licorice, and to temporarily halt production of black licorice. FAC ¶ 29. As a result of the recalls, Plaintiff incurred and continues to incur substantial costs and damage, including to its reputation and future sales. FAC ¶ 30.

Plaintiff brings suit against Defendant alleging four causes of action: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness. The original complaint, filed on April 26, 2013, included these four claims, but relied solely on the December 2011 Sales Contract, without reference to the February 2012 Purchase Order or other subsequent purchase orders. Docket No. 1 ¶¶ 11-12, Ex. A. Defendant filed a motion to dismiss on May 20, 2013, arguing that Plaintiff's claims failed under the terms of the December 2011 Sales Contract for reasons that they raise again in this motion. Docket No. 11. Rather than respond to the motion, Plaintiff filed the first amended complaint on May 31, 2013 which added allegations about the February 2012 and subsequent Purchase Orders. Docket No. 19.

Defendant filed the instant motion to dismiss on June 14, 2013, arguing that the Purchase Orders were not valid modifications of the December 2011 Sales Contract. Defendant also renews its argument that Plaintiff's claims fail under the terms of the Sales Contract. Specifically, Defendant argues that: (1) Plaintiff has failed to comply with the pre-suit notice requirements in the December 2011 Sales Contract; (2) Plaintiff's breach of contract and breach of express warranty claims fail because Plaintiff cannot identify a contractual term that Defendant breached; (3) Plaintiff's implied warranty claims fail because the Sales Contract disclaims all implied warranties; and (4) Plaintiff cannot recover consequential damages under the terms of the Sales Contract.

### III. DISCUSSION

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of

material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In ruling on a motion to dismiss, a court may look to documents whose contents are specifically alleged as part of a complaint, regardless of whether the plaintiff attached them to the complaint. Although generally "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," "material which is properly submitted as part of the complaint may be considered" on such a motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990). A "document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002) (citing *Townsend v. Columbia Operations*, 667 F.2d 844, 848–49 (9th Cir.1982)). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.* at 454.

A.  Choice of Law

As the Sales Contract specifies that it is governed by Illinois law and the Purchase Order states that it is governed by Oregon law, this motion would seem to present a preliminary choice of law issue. The parties agree, however, that the issues in this motion are governed by the Uniform Commercial Code, which has been adopted by Illinois, Oregon, and California, without any modifications that are relevant to the issues here. *See* Def.'s Mot. at 8-9, 10 n.5; Pl.'s Opp. at 6;

7

1  U.C.C. §§ 2-201 *et seq.*; Cal. Com. Code §§ 2201 *et seq.*; 810 ILCS 5/2-201 *et seq.*; Or. Rev. Stat. §§ 72.2010 *et seq.* The parties likewise indicate that they are unaware of any relevant difference in how these jurisdictions apply these provisions.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012). Under California law, a contractual choice of law provision is generally enforceable. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). As the parties dispute whether the Sales Contract and Purchase Order were valid and binding contracts, however, this Court cannot as an initial matter rely on the choice of law provisions in either document until it determines the legal effect of the documents.

Absent a binding choice of law provision, this Court defaults to the application of California law. *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41 (2005). The proponent of the other forum's law bears the burden of establishing that the other forum's law differs materially from California's, and demonstrate how applying that law will further the interest of that jurisdiction. *Id.* "The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001). If there are no material differences in the laws of the different jurisdictions, the trial court may apply California law. *Id.* Since no party has pointed to a relevant difference between the law of California and the law of either Illinois or Oregon, the Court applies California law as an initial matter.[3]

B.   Effect of Purchase Order

As an initial matter, the parties dispute which section of the U.C.C. governs the analysis of the Purchase Order.[4] Plaintiff argues that the governing provision is § 2-207, the "battle of the forms" provision, which determines which terms are included in the contract where the terms of an

---

[3] As discussed below, however, the Court determines that the Sales Contract is a binding contract. This order thus provides parallel citations to Illinois law, which does not differ in any material respect from California law.

[4] Though the complaint alleges that Plaintiff sent multiple purchase orders to Defendant, these forms included identical terms and conditions. For simplicity's sake, the analysis here will just refer to "the Purchase Order."

offer and an acceptance conflict. Defendant argues, on the other hand, that the Purchase Order should be analyzed as an attempt to modify the Sales Contract and thus § 2-209, governing modifications, applies. This dispute underlying this question is whether the December 2011 "Sales Contract" constituted a binding contract prior to Plaintiff's issuance of the Purchase Order.

1. December 2011 Sales Contract

Section 2-207 provides, in part, that "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." U.C.C. § 2-207; Cal. Com. Code § 2207. Courts have recognized that this section is inapplicable where a contract has already been formed and additional terms are contained in a subsequent communication. *See Besicorp Grp., Inc. v. Thermo Electron Corp.*, 981 F. Supp. 86, 98 (N.D.N.Y. 1997) ("§ 2-207 is inapplicable because that section only applies to the formation of a contract and is irrelevant once the parties have reached an agreement").

Plaintiff's argument that § 2-207 applies hinges on whether the December 2011 Sales Contract was not a binding contract. However, Plaintiff's argument as to why the Sales Contract is not binding is not entirely clear. To the degree that Plaintiff is arguing that the Sales Contract was simply an offer by Defendant that Plaintiff did not accept prior to sending the February 2012 Purchase Order, this argument is unconvincing because the Sales Contract bears the signature of a Dennie V. Carff, apparently a representative of Plaintiff's, on the "Buyer" signature line. FAC Ex. A. This indicates Plaintiff's assent to the terms of the Sales Contract. Plaintiff also seems to suggest that even though it signed the Sales Contract, it was agreeing only to the price terms set out in the Sales Contract, and was not actually indicating assent to the terms and conditions printed on the second page of that document. *See* Pl.'s Opp. at 11, 21. This argument is unconvincing, as there is no indication on the face of the contract that Plaintiff objected to any of the terms, nor does Plaintiff allege that it otherwise objected in December 2011. Significantly, the Sales Contract contained all the terms essential to constitute a contract between the parties (*i.e.*, subject, quantity, price, time frame). FAC Ex. A.

9

Plaintiff also seems to argue that the fact that the signature line designated for Defendant was left blank indicates that the Sales Contract was merely an offer by Plaintiff to purchase goods at a certain specified price, and that Defendant never accepted this offer. Under this interpretation, the Sales Contract is not an offer by Defendant, but merely an invitation to negotiate. As an initial matter, this interpretation is in tension with the allegations in the original complaint – which relied solely on the Sales Contract and did not mention the Purchase Order at all – and the FAC, which alleges that in December 2011 the parties "entered into an agreement." Compl. ¶¶ 11-12, Ex. A; FAC ¶ 14. Additionally Plaintiff's argument is unconvincing under the law governing what constitutes an "offer."

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) ("In Illinois, the test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender.") (internal citations omitted). The determination of whether a communication is an offer or merely a non-binding preliminary step in negotiations depends on all of the surrounding circumstances. *Donovan*, 26 Cal. 4th at 271; *Wigod*, 673 F.3d at 561. "The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." *Donovan*, 26 Cal. 4th at 271. *See also* Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."). When a question of contract interpretation is based on the words of a document alone, and where there is no conflicting extrinsic evidence, the interpretation is a question of law for the court. *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008).

Looking at the Sales Contract form as a whole suggests that it was an offer, and not merely a preliminary communication. First, the document is titled "Sales Contract," as opposed to something less definite like "quote." *4Wall Las Vegas, Inc. v. Triebwasser*, 2:12-CV-2746-KJN, 2013 WL

930620 (E.D. Cal. Mar. 8, 2013) (finding a document was not an offer in part because it was titled a "quote"). The form, which bears Defendant's name, address, and logo in the upper lefthand corner, identifies Defendant as the seller, and states that the seller,

> AGREES TO SELL TO BUYER and BUYER to buy from SELLER the following products on the terms and conditions and subject to the agreements stated below and/or on the TERMS AND CONDITIONS statement.

FAC Ex. A. The document appears to have been prepared specifically for the transaction between the parties, and as noted above, identifies the quantity, product number, and cost of the product to be sold, as well as the contract period and shipping terms. The bottom of the form contains two signature lines, one for "Buyer" and one for "Product Manager," and directs the buyer to "Please sign, copy, and return to" Defendant's Illinois office. It further states that "contract must be signed and received by [Defendant] within 14 days of contract date or pricing is subject to confirmation." *Id.* Plaintiff signed the contract. While it is true that the "Product Manager" signature line (for Defendant) is blank, the fact that the Sales Contract is other quite definite in detail suggests that it was intended as an offer that Plaintiff then accepted by signing.

Additionally, sending a document on letterhead may under certain circumstances constitute a "signature" within the meaning of the U.C.C. The U.C.C. defines "signed" to include "using any symbol executed or adopted with present intention to adopt or accept a writing." U.C.C. § 1-201. This section also includes a comment which provides:

> This provision also makes it clear that, as the term "signed" is used in the Uniform Commercial Code, a complete signature is not necessary. The symbol may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and *in appropriate cases may be found in a billhead or letterhead.* No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to adopt or accept the writing.

*Id.* cmt. 37 (emphasis added). This definition, and the associated comment, has been adopted by both California and Illinois. Cal. Com. Code § 1201(37), cmt. 37; 810 ILCS 5/1-201(37), cmt. 39. The California Supreme Court has quoted the above section of the comments with approval. *See*

*Donovan v. RRL Corp.*, 26 Cal. 4th 261, 277 (2001).  Additionally, an Illinois court has found that an unsigned document on the sender's letterhead can be considered "signed" within the meaning of the U.C.C.:

> The facts show that Archer sent the document bearing its letterhead containing the essential terms.  This conduct is more convincing than the fact that the document does not contain a formal signature.  An invoice containing a letterhead, quantity designations, and price terms has been heretofore found sufficient under the UCC.

*Auto. Spares Corp. v. Archer Bearings Co.*, 382 F. Supp. 513, 515 (N.D. Ill. 1974).  *See also Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 744 (1978) ("Intermountain's business name, which is printed in the heading of the form, may satisfy the signature requirement.").  Under the circumstances here, where the document is titled a "Sales Contract" and contains all relevant terms necessary for a contract, this Court is satisfied that Defendant's letterhead may be considered a "signature" for the purposes of the U.C.C.[5]

As this Court finds the December 2011 Sales Contract constituted a binding contract between the parties, the effect of the Purchase Order must be analyzed under the U.C.C. provision that governs the modification of existing contracts, § 2-209.

2.  <u>Attempt to Modify Under § 2-209</u>

Section 2-209 of the U.C.C. is codified at Cal. Com. Code § 2209 and 810 ILCS 5/2-209.  Under that section, a modification does not require consideration to be binding, but must satisfy the statute of frauds where the contract as modified comes within its provisions.  The Purchase Order here clearly falls within the statute of frauds as it orders $34,320.00 worth of molasses.  FAC Ex. B; U.C.C. § 2-201 (statute of frauds applies to contracts for the sale of goods for the price of $500 or

---

[5] Plaintiff does cite to one case wherein the court found that a document prepared by the seller but signed only by the buyer was found not to be an offer, *Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 995 (5th Cir. 1976).  In that case, the document in question identified the products to be sold, the price, a schedule of payments, and the place of delivery.  *Id.* at 995.  The seller sent the form to the buyer, who signed it.  *Id.*  The seller never signed the form.  *Id.*  The court found that "the fact that the document had a signature block for a representative of [the seller] which was unsigned at the time it was submitted to [the buyer], in the absence of other evidence, negates any interpretation that [the seller] intended this to be an offer to [the buyer], without any further acts necessary on the part of [the seller]."  *Id.* at 996.  This case applies Texas law, though it is not clear from the analysis whether Texas' law differs from California or Illinois' on this point in any material way.  This Court could find no case with a similar ruling in California or Illinois.  For the reasons discussed above, this Court declines to follow this ruling here.

more). The statute of frauds requires that a contract falling within its provisions "is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties *and signed by the party against whom enforcement is sought or by his or her authorized agent or broker*." U.C.C. § 2201(1). Here, there is no allegation that the purchase order was signed by any representative of Defendant.

The statute of frauds includes two exceptions that are potentially applicable here: one where "a writing in confirmation of the contract and sufficient against the sender" is exchanged between merchants, and one with respect to goods for which payment has been made or accepted. These provisions provide as follows:

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subdivision (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
>
> (3) A contract which does not satisfy the requirements of subdivision (1) but which is valid in other respects is enforceable:
>
>     (a) [exception for specially manufactured goods]
>
>     (b) [exception for where party admits the existence of the contract]
>
>     (c) With respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2606).

U.C.C. § 2-201(2)-(3); Cal. Com. Code § 2201(2)-(3); 810 ILCS 5/2-201(2)-(3). Section 2-201(2) is not applicable here, as it concerns a written confirmation of an oral contract, which Plaintiff does not allege here. Plaintiff argues that § 2-201(3)(c) applies here because Defendant delivered the molasses after receiving the Purchase Order, thus agreeing to the terms therein. Pl.'s Opp. at 23. Defendant disputes this, arguing that the molasses was delivered pursuant to the terms of the original contract rather than the Purchase Order, and that § 2-201(3)(c) is thus inapplicable.

The comment on § 2-201(3)(c) further explains the rationale and scope of this exception:

> . . . Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment, therefore,

> the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an apportionable part of the goods. The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment. This is true even though the actions of the parties are not in themselves inconsistent with a different transaction such as a consignment for resale or a mere loan of money.

Cal. Com. Code § 2201, cmt. 2; 810 ILCS 5/2-201, cmt. 2. The parties point to no California case interpreting or applying this section of the comment.

One Illinois court, however, cited this comment in holding that a acceptance of goods could bring a contract out of the statute of frauds even where said acceptance was also consistent with other dealings between the parties. *Andersen v. Koss*, 173 Ill. App. 3d 872, 875, 527 N.E.2d 1098, 1100 (1988). At issue in *Andersen* was a transaction between two dog breeders in which the defendant had paid the plaintiff $500 and taken possession of a show dog. *Id.* at 874. The defendant claimed that the plaintiff had sold him the dog outright, while the plaintiff claimed she had simply sold him a co-ownership interest. *Id.* at 874-75. The court found that the trial court's entry of summary judgment for the plaintiff had been improper because the parties had provided conflicting testimony about the nature of their agreement. *Id.* at 875-76. The court noted that "[a] triable issue precluding summary judgment exists where there is a dispute as to material facts *or where, the material facts being undisputed, reasonable persons might draw different inferences from those facts*." *Id.* at 875 (emphasis added). The plaintiff additionally argued that any contract was unenforceable under the statute of frauds, as the parties had not had a written agreement. *Id.* at 876. The court rejected this argument, holding that in order for § 2-201(3)(c) to apply, "it is not necessary that the conduct of the parties be 'exclusively referable' to the oral contract," and that the plaintiff's shipment of the dog and acceptance of payment was consistent with a contract of sale. *Id.* at 877. The court thus held, "[u]pon our review of the record, we are unable to conclude that the oral contract on which defendant relied to resist plaintiff's motion for summary judgment was unenforceable as a matter of law." *Id.*

Though the *Andersen* court was not entirely explicit on this point, it cited to a case holding that the applicability of this exception to the statute of frauds may be a question of fact for the jury under certain circumstances. *Id.* (citing *West Central Packing Inc. v. A. F. Murch Co.*, 109 Mich.

1 App. 493, 503, 311 N.W.2d 404, 409 (1981)). In that case, there was a dispute whether the party
2 who accepted a shipment of apples was a "buyer" such that its acceptance triggered the partial
3 performance acceptance to the statute of frauds, or whether it simply accepted delivery to its
4 warehouse on behalf of a third party buyer, such that its acceptance did not indicate a contract
5 between the plaintiff and defendant. *West Central Packing Inc.*, 109 Mich. App. at 503. As there
6 was contradictory evidence, the court found that the issue was one for the jury, which should be
7 instructed on the applicable provisions of the statute of frauds and exceptions. *Id.*

8 While both *Andersen* and *West Central Packaging* were cases where the underlying facts
9 related to the applicability of § 2-201(3)(c) were disputed, the above quoted language in *Anderson*
10 suggests even where facts are undisputed, conflicting inferences can give rise to a question of fact,
11 and at least one other court has found the applicability of this section to be a factual question for the
12 jury where the underlying facts were undisputed but could give rise to conflicting inferences about
13 the parties' intentions. In *Joseph Heiting & Sons v. Jacks Bean Co.*, 236 Neb. 765, 770-74, 463
14 N.W.2d 817, 823 (1990), there was ambiguity about whether the purchaser had accepted the goods
15 in question for the purposes of sale, or merely for storage, and the court thus found that summary
16 judgment on the applicability of the statute of frauds was inappropriate. The underlying facts were
17 largely undisputed, but the court found that the "issue as to whether or not the receipt and
18 acceptance of the goods were sufficient to bar the application of the statute of frauds" was one for
19 the jury. *Id.* at 772.

20 In the case at bar, the parties' actions and intent were ambiguous, and a jury could
21 reasonably infer that there was an intent that the Purchase Order modify the contract, but a jury
22 could also reach the contrary conclusion. The Court thus finds that this issue is properly resolved by
23 the jury, and that it is thus not a proper subject of this motion to dismiss.

24 In the alternative, the Court finds that even if it were to conclude that § 2-201(3)(c) were
25 applicable, the fact that the statute of frauds was not a bar to finding modification does not
26 necessarily resolve the question of the Purchase Order's effect. Courts have recognized that
27 "[t]aking the contract out of the Statute of Frauds does not establish the terms of the contract; it
28 merely removes the Statute as a bar to enforcement of the contract by way of action or defense."

*Allied Wire Products, Inc. v. Mktg. Techniques, Inc.*, 99 Ill. App. 3d 29, 37, 424 N.E.2d 1288, 1294 (1981); *First Nonprofit Ins. Co. v. MiraLink Corp.*, 05 C 7164, 2006 WL 1156393 (N.D. Ill. Apr. 27, 2006) ("Defeating the statute of frauds does not establish the terms of the agreement."); *Sterling v. Taylor*, 40 Cal. 4th 757, 766, 152 P.3d 420, 425 (2007) ("This court recently observed that the writing requirement of the statute of frauds serves only to prevent the contract from being unenforceable; it does not necessarily establish the terms of the parties' contract.") (internal citations omitted). Even if the statute of frauds does not bar a finding that the Purchase Order modified the terms of the Sales Contract, there is still a disputed question as to whether Defendant, by shipping the molasses, intended to assent to the terms in the Purchase Order, or whether it sent the shipment intending that the terms of the Sales Contract would govern.

As with for the initial formation of a contract, a modification requires the mutual assent of the parties. Generally, under California law, "[m]utual assent is a question of fact." *Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc.*, 188 Cal. App. 4th 401, 422 (2010); *see also Duff-Brown v. City & Cnty. of San Francisco*, C11-3917 TEH, 2013 WL 163530 (N.D. Cal. Jan. 15, 2013) (denying summary judgment where "from the totality of the circumstances . . . a jury could reasonably infer" that the parties' actions had indicated an intent to agree to a contract term waiving certain overtime requirements). Similarly, under Illinois law, "[w]hether a contract exists, its terms and the intent of the parties are questions of fact to be determined by the trier of fact." *Hedlund & Hanley, LLC v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 376 Ill. App. 3d 200, 205, 876 N.E.2d 1, 6 (2007). Additionally, when parties allege that certain terms have become part of their contract through the course of performing a multi-part contract, this generally presents an issue for the trier of fact. *Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1113 (9th Cir. 2000) ("An inference of the parties' common understanding that is based upon a prior course of dealing is a question of fact."); *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 764 (N.D. Ill. 1994) ("Whether a course of dealing exists between parties to a transaction is a question of fact."). The question as to whether Defendant assented to the terms of the Purchase Order when it shipped the molasses in response to the Purchase Orders sent by Plaintiff over the spring and summer of 2012 is thus properly one for resolution by the jury.

1    Each of the parties cites to a case in support of their position with respect to the status of the
2 Purchase Order, but both are factually distinguishable from the case at bar. Defendant points to
3 *Dallas Aerospace, Inc. v. CIS Air Corp.*, in which the court found that an invoice had not modified
4 an earlier written contract. 352 F.3d 775, 779 (2d Cir. 2003). In that case, however, the invoice in
5 question had been sent to the seller with payment *after* the goods in question (an engine) had already
6 been delivered. *Id.* at 780. The shipment and delivery of the engine did not clearly signify
7 acceptance of terms with an invoice received thereafter. Here, in contrast, the Purchase Order was
8 sent to Defendant *before* Defendant delivered the first shipment of molasses. This sequence gives
9 rise to an inference that Defendant's shipment of the molasses after receipt of the Purchase Order
10 was an implicit acceptance of the terms in the Purchase Order. Although there is language in *Dallas
11 Aerospace* which suggests that performance does not constitute modification unless the performance
12 "'constitute[s] an unambiguous overt admission' that the contract had been modified," the facts of
13 the case are materially distinguishable for the reasons stated above. *Id.* at 782-83 (quoting U.C.C. §
14 2-201 cmt. 2).
15    Plaintiff's case, *Comerica Bank v. Whitehall Specialties, Inc.*, is also distinguishable from the
16 facts at issue here. In that case, the court found that a choice of venue term contained within an
17 invoice exchanged after the original agreement had been incorporated into the contract. 352 F.
18 Supp. 2d 1077, 1082 (C.D. Cal. 2004). There, however, the original contract had been oral, and had
19 apparently contained no agreement as to choice of venue. *Id.* at 1079. The court found the choice of
20 venue term in subsequent invoices to be part of the contract between the parties' contract because
21 the invoices were a written expression of the oral agreement, and because the party against whom
22 the contract was being enforced had performed its contractual obligations without objecting to the
23 venue clause in the invoices. *Id.* at 1082. In this case, on the other hand, the original contract was
24 written, and explicit terms of the Purchase Order *conflicted* with those in Sales Contract. Unlike in
25 *Comerica*, therefore, the Purchase Order cannot be said to be simply fill interstitial detail into an oral
26 contract which omitted a relevant term. Arguably, where the putative modification contradicts an
27 earlier agreement, greater proof should be required before giving effect to that claimed modification.
28 *Comerica* is thus distinguishable.

Though the underlying facts in this case appear to be largely undisputed, the Court finds the parties' course of conduct ambiguous as to whether Defendant's shipment of molasses was simply pursuant to the original Sales Contract, or whether it was in response to Plaintiff's Purchase Order and implicitly indicated assent to the terms contained therein. Particularly given that the terms in the Purchase Order in many places directly contradict the terms of the Sales Order, this Court declines to find, as a matter of law, that Defendant's action in shipping the molasses evinces a clear intent to modify the contract by adopting the terms in the Purchase Order. Since conflicting inferences as to the parties' intent could reasonably be drawn from the parties' course of conduct, the Court therefore finds this to be a question of fact appropriate for resolution by the jury. As such, it is not a proper issue for resolution on a motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED.**

This order disposes of Docket No. 22.

IT IS SO ORDERED.

Dated: August 13, 2013

_____
EDWARD M. CHEN
United States District Judge