MORDECAI D. BOONE  (SBN:  196811)
mboone@gordonrees.com
KARA PERSSON (SBN: 210582)
kpersson@gordonrees.com
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054

Attorneys for Defendant
TOTAL SWEETENERS, INC.; individually
and doing business as BATORY FOODS
(dba incorrectly identified herein as Batory Foods, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN LICORICE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>TOTAL SWEETENERS, INC.; individually and doing business as BATORY FOODS, INC., and DOES 1 through 10 Inclusive<br><br>Defendant.<br><br>TOTAL SWEETENERS, INC., individually and doing business as BATORY FOODS,<br><br>Third-party Plaintiff,<br><br>vs.<br><br>SAVANNAH SUGAR REFINERY, a subsidiary of IMPERIAL SUGAR COMPANY; IMPERIAL SUGAR COMPANY; IMPERIAL DISTRIBUTING, INC.; DOMINO FOODS, INC.; and ROES 1 through 10, inclusive,<br><br>Third-Party Defendants | CASE NO.  2013-cv-01929 EMC<br><br>**TOTAL SWEETENERS, INC.'S OPPOSITION TO DOMINO, INC.'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**<br><br>Date:       December 12, 2013<br>Time:       1:30 p.m.<br>Judge:      Hon. Edward M. Chen<br>Courtroom:  5 |

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................... 1

II.     PERTINENT BACKGROUND .............................................................................. 2

III.    DOMINO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF
        CIVIL PROCEDURE 12(B)(6) MUST BE DENIED AS GROUNDLESS, OR
        ALTERNATIVELY, BECAUSE AMENDMENT WILL CURE ANY
        PERCEIVED DEFECTS IN THE PLEADINGS .................................................... 3

        A.    Contrary to Domino's Contentions, Total Sweeteners' Third Party
              Complaint is Supported by Continuing Guarantee and Indemnification
              Agreements In Existence at All Relevant Times ......................................... 3

              1.    Domino Mischaracterizes the Scope of the First Amended
                    Complaint ......................................................................................... 3

              2.    Domino Provided Total Sweeteners with Continuing Guaranty and
                    Indemnification Agreements in 2010 and 2011 ............................... 5

        B.    Domino's Argument Regarding the Allegations "On Information and
              Belief" are Specious ................................................................................... 5

        C.    Domino's Motion to Dismiss the Fifth, Sixth, and Seventh Claims Must
              Fail ........................................................................................................... 10

        D.    To the Extent the Court Finds it Necessary, Total Sweeteners Requests
              Leave to Amend ........................................................................................ 10

IV.     DOMINO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF
        CIVIL PROCEDURE 12(B)(3) MUST BE DENIED .......................................... 11

        A.    The Evidence Submitted by Domino in Support of Its Motion is
              Inadmissible ............................................................................................. 13

              1.    Paragraphs 1 Through 7, Inclusive, and Exhibits A through E,
                    Inclusive, of the Declaration, and Each of Them, Should be
                    Stricken for Lack of Personal Knowledge (Fed. R. Evid. 602) ...... 14

              2.    Paragraphs 1 Through 7 of the Declaration and Exhibits A through
                    E, and Each of Them, Should be Stricken for Failure to Comply
                    with Federal Rule of Evidence 603 (Oath or Affirmation) ............ 16

        B.    Total Sweeteners' Claims Are Based on the Continuing Guaranty and
              Indemnification Agreement, an Independent, Binding, and Enforceable
              Contract Which Does Not Have a Forum Selection Clause ....................... 17

        C.    Domino's Evidence, Even if it Were Admissible (and It Is Not), Fails to
              Establish that the Forum Selection Clause Was Part of a Binding Contract ........ 18

        D.    The Forum Selection Clause Fails Under UCC 2-207 Because It Was a
              Material Modification ............................................................................... 19

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT          2013-cv-01929 EMC

# TABLE OF CONTENTS

PAGE

E.   Even if Domino's Evidence Regarding the Alleged Forum Selection Clause Sufficed (and It Does Not), the Continuing Guaranty and Indemnification Agreement Materially Alters It Under UCC 2-209 ...................20

F.   Alternatively, the Forum Selection Clause is Unenforceable Because There Was No Meeting of the Minds Regarding the Forum for Claims Under the Continuing Guaranty and Indemnification Agreements.....................21

G.   The Website Terms and Conditions Containing the Forum Selection Clause Were Not Reasonably Communicated to Total Sweeteners....................22

H.   In the Event the Court Does Not Deny Domino's Motion, It Should Defer Resolution of the Issues it Raises Until Trial .......................................23

V.   CONCLUSION .................................................................................24

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## TABLE OF AUTHORITIES

PAGE

**Cases**

*ABCKO Music, Inc. v. Beverly Glen Music, Inc.,*
    554 F. Supp. 410 (S.D.N.Y. 1983) .........................................................................13

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) ...................................................6, 7, 8, 9, 10

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .........................................................................................7, 9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................3, 7, 8, 9

*Bright v. Evonik Cyro, LLC,*
    2012 WL 811221 (E.D. Ark. Mar. 12, 2012) .........................................................8

*Cinetic Dyag Corp. v. Forte Automation Systems, Inc.,*
    2008 U.S. Dist. LEXIS 90968 (E.D. Mich. 2008)................................................19

*Dallman Supply Co. v. Smith-Blair, Inc.,*
    103 Cal. App. 2d 129 (1951) ................................................................................17

*Data Disc, Inc. v. Systems Technology Assocs., Inc.,*
    557 F.2d 1280 (9th Cir. 1977) .............................................................................24

*Fteja v. Facebook, Inc.,*
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................23

*Gundle Lining Constr. Corp. v. Adams County Asphalt,*
    85 F.3d 201 (5th Cir. 1996) ...........................................................................13, 21

*Harman v. Unisys Corp.,*
    356 Fed. Appx. 638 (4th Cir. 2009) .......................................................................8

*Keegan v. Am. Honda Motor Co.,*
    838 F.Supp.2d 929 (C.D. Cal. 2012) .....................................................................8

*Laxmi Invs., L.L.C. v. Golf USA,*
    193 F.3d 1095 (9th Cir. 1999) ...............................................................18, 21, 22

*M.K.C. Equipment Co., Inc. v. M.A.I.L. Code, Inc.,*
    843 F. Supp. 679 (D. Kan. 1994) .........................................................................19

*Medzilla, Inc. v. Scistaff Servs. LLC,*
    2007 U.S. Dist. LEXIS 44601 (W.D. Wash. 2007).............................................13

*Murphy v. Schneider Nat'l, Inc.,*
    362 F.3d 1133 (9th Cir. 2004) .......................................................................12, 24

*New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG,*
    121 F.3d 23 (2d Cir. 1997) ...................................................................................12

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

*Product Components, Inc. v. Regency Door and Hardware, Inc.*,
   568 F. Supp. 651 (S.D. Ind. 1983)..................................................................19

*Sheppard v. David Evans & Assocs.*,
   694 F.3d 1045 (9th Cir. 2012)........................................................................10

*Solis v. City of Fresno*,
   2012 WL 868681 (E.D. Cal. Mar 13, 2012).....................................................8

*Steiner v. Mobil Oil Corp.*
   20 Cal. 3d 90 (1977).......................................................................................20

*Stuart v. UNUM Life Ins. Co. of Am.*,
   217 F.3d 1145 (9th Cir. 2000)...................................................................15, 16

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) .........................................................................................7

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007)...........................................................23

*Ticor Title Ins. Co. v. Employers Ins. Of Wasau*,
   40 Cal. App. 4th 1699 (1995)..........................................................................18

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011)...........................................................................11

*United States v. Thompson*,
   559 F.2d 552 (9th Cir. 1977)...........................................................................15

*White v. Autozone, Inc.*,
   213 Fed. Appx. 628, 2006 U.S. App. LEXIS 32168 (9th Cir. 2006)................17

**Statutes**

28 U.S.C. section 1391(a)(2) ..............................................................................12

28 U.S.C. section 1746 ......................................................................................16

California Commercial Code section 2201 ..........................................................20

California Commercial Code section 2204(1)......................................................18

California Commercial Code section 2207 ..........................................................19

California Commercial Code section 2209 ..........................................................20

Uniform Commercial Code section 2-201(1).......................................................20

Uniform Commercial Code section 2-204(3).......................................................20

Uniform Commercial Code section 2-207......................................................19, 20

Uniform Commercial Code section 2-207(2)(b) ..................................................19

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-iv-

# TABLE OF AUTHORITIES

**PAGE**

Uniform Commercial Code section 2-209.................................................................20

Uniform Commercial Code section 2-209(2)...........................................................20

Uniform Commerical Code section 2-204(1)............................................................18

**Other Authorities**

3-14 Moore's Federal Practice - Civil § 14.42  (Matthew Bender and Co., 2013).................12, 13

**Rules**

Civil Local Rule 7-3(a)..........................................................................................13

Federal Rules of Civil Procedure rule 12(b)(3)........................................1, 11, 12, 23, 24

Federal Rules of Civil Procedure rule 12(b)(6)..............................................1, 3, 10

Federal Rules of Civil Procedure rule 14.................................................................12

Federal Rules of Civil Procedure rule 14(a).............................................................12

Federal Rules of Civil Procedure rule 15(a)..........................................................6, 11

Federal Rules of Civil Procedure rule 8 ....................................................................3

Federal Rules of Civil Procedure rule 8(a)(2).........................................................3, 7

Federal Rules of Evidence rule 602...............................................................14, 15, 16

Federal Rules of Evidence rule 603..........................................................................16

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

## I.   **INTRODUCTION**

This third-party action arises out of the First Amended Complaint ("FAC") of American Licorice, Inc. ("American Licorice"), which contends that in 2012, it received shipments of molasses purchased from Total Sweeteners, Inc., dba Batory Foods ("Total Sweeteners") which allegedly contained elevated lead levels.  Total Sweeteners, in turn, sues its upstream molasses suppliers, including Third-Party Defendant Domino, Inc. ("Domino"), for indemnity, breach of warranty, contribution, and declaratory relief.

Domino now moves to dismiss the Third-Party Complaint ("TPC") under Federal Rule of Civil Procedure 12(b)(6), arguing, first, that it fails to sufficiently allege the existence of express indemnity and warranty agreements at the time of the alleged sales.  This argument is groundless; Domino incorrectly asserts that the earliest such agreement was issued to Total Sweeteners in June 2012, when in fact there were prior, substantively identical agreements issued by Domino in 2010 and 2011.  Second, Domino argues that the TPC insufficiently alleges Domino's culpability because it alleges "on information and belief" that the molasses shipments that are the subject of American Licorice's FAC originated with Domino.  This argument fails, too, because it is entirely appropriate for a party to plead on information and belief facts that are outside its possession and control—and information regarding the particular molasses deliveries that American Licorice contends to be at issue in this case is still largely unknown.

Domino also moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), arguing that a forum selection clause on its website applies to this action.  This argument fails for almost a dozen reasons, including that the evidence Domino submits in support of its motion is inadmissible.  Even if the evidence were admissible, the clause on which Domino relies appears on its website, which is incorporated by reference into an extraneous sales confirmation form, not in the stand-alone indemnity contract that is the basis for Total Sweeteners' claims.  The forum selection clause is unenforceable as it never became part of any valid agreement between the parties.  Moreover, venue in this district is otherwise proper.  Therefore, there is no basis for dismissing this action on grounds of improper venue.

///

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                    2013-cv-01929 EMC

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

## II.     PERTINENT BACKGROUND

American Licorice filed its complaint against Total Sweeteners in this Court on April 26, 2013.  *See* Compl. [Doc. No. 1].  Thereafter, Total Sweeteners filed a motion to dismiss, which resulted in American Licorice filing its FAC.  Total Sweeteners thereafter moved to dismiss American Licorice's FAC, which motion the Court denied.  *See* Order Denying Mot. to Dismiss [Doc. No. 31].

In the FAC, American Licorice alleges that molasses it received from Total Sweeteners "on and after April 30, 2012" contained elevated levels of lead, although it does not identify the precise lead levels in the molasses it received (other than to say the candy made from the molasses had in excess of 0.1 ppm lead).  FAC ¶ 27.  American Licorice contends that the excess levels of lead in the molasses it received caused its candy to have excess lead, leading to a recall and other alleged consequences for which it seeks damages from Total Sweeteners.  *See* FAC.  However, American Licorice does not identify all of the precise shipments at issue, nor does it state what levels of lead in the molasses it purchased it considers excessive.  *See id.*

Total Sweeteners has now, in turn, brought a third-party action against its upstream molasses suppliers, including Domino, from which Total Sweeteners purchased molasses during the time frame at issue in American Licorice's FAC.  In support of its claims TPC alleges, inter alia, that "On information and belief, Total Sweeteners purchased the molasses that it sold to American Licorice, and which is the basis of American Licorice's claims, from Imperial, Domino, and ROES 1 through 10, without altering the lead content of said molasses."  TPC, ¶ 16.  The TPC seeks indemnity, contribution, and defense costs as a result of the claims American Licorice asserts against Total Sweeteners.  TPC at pp. 16-17.  Domino's motion to dismiss is its first response to the TPC.

/ / /

/ / /

/ / /

/ / /

/ / /

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

**III.    DOMINO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) MUST BE DENIED AS GROUNDLESS, OR ALTERNATIVELY, BECAUSE AMENDMENT WILL CURE ANY PERCEIVED DEFECTS IN THE PLEADINGS**

Domino first moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on grounds that certain claims in the TPC are insufficiently pled.  The legal sufficiency of a complaint is measured by whether it meets the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure ("Rule 8").  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Under Rule 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to state a claim.  Fed. R. Civ. P. 8(a)(2). The TPC more than suffices to meet this standard, and Domino's motion should be denied.

**A.    Contrary to Domino's Contentions, Total Sweeteners' Third Party Complaint is Supported by Continuing Guarantee and Indemnification Agreements In Existence at All Relevant Times**

Domino first argues that Total Sweeteners' second claim for express indemnification and fourth claim for breach of express warranty fail because there was no indemnification or warranty agreement in place at the time of the relevant sales of molasses.  (Domino's Mot. at pp. 1, 8-9.)   Domino's argument must be rejected, because it is based on a mischaracterization of American Licorice's claims, and because, in any event, and contrary to Domino's contentions, there were written indemnification agreements between Domino and Batory that predate the ones referenced in Domino's motion.

*1.    Domino Mischaracterizes the Scope of the First Amended Complaint*

First, Domino's argument is based on the notion that American Licorice's First Amended Complaint ("FAC") complains of only a single sale of molasses that took place in May 2012. (Domino's Mot. at p. 8, lines 17-19.)  That characterization is incorrect.  Domino cites a single paragraph of the FAC for its contention, a paragraph that discusses the manufacture date of the black licorice originally discovered to have high levels of lead, not the date of molasses sales that are the subject of American Licorice's claims.  (*See id.* at p. 8, citing FAC at ¶ 24.)  The rest of the FAC includes allegations that indicate later sales of molasses are also at issue.  Specifically, the FAC alleges:

- "Periodic shipments of Refiners syrup continued *at least through August 2012*, as needed by Plaintiff American Licorice."  (FAC ¶ 19 (emphasis added).)

- "From *February 2012 through August 2012*, Defendant was the only suppliers [*sic*] of molasses to American Licorice's Union City, California manufacturing facility and the only supplier of molasses for use in the Red Vines ® black licorice products at issue."  (FAC ¶ 20 (emphasis added).)

- "Red Vines ® black licorice made *in May 2012 and later* had lead significantly in excess of 0.1 ppm."  (FAC ¶ 26 (emphasis added).)

- "Red Vines ® black licorice made using molasses Defendant supplied *on and after April 30, 2012* had lead levels that measured significantly above 0.1 ppm." (FAC ¶ 27 (emphasis added).)

- "Lead levels in Red Vines ® black licorice produced *in July and early August 2012* had lower levels of lead but were still above 0.1 ppm of lead."  (FAC ¶ 27 (emphasis added).)

- "[T]he investigation shows that molasses received from Defendant *on and after April 30, 2012*, had exceptionally high levels of lead…."  (FAC ¶ 31 (emphasis added).)

- "Periodic shipments of Refiners syrup continued *at least through August 2012* as needed by Plaintiff American Licorice."  (FAC ¶ 37 (emphasis added).)

- "[T]he Refiners syrup [aka molasses] provided to American Licorice *in 2012* … did not comply with all of the applicable provisions of the Federal Food, Drug, and Cosmetic Act …." (FAC ¶ 46 (emphasis added).)

Thus, based on the allegations of the FAC, and contrary to Domino's contentions, American Licorice does not complain of a single sale of molasses in May 2012.  Rather, its claims are based on allegedly elevated levels of lead in molasses it received on *and after* April 30, 2012.  So even if Domino were correct and the earliest Continuing Guaranty and Indemnification agreement that it provided Total Sweeteners was dated June 18, 2012 (and it is not; see below), that agreement would have been in place during at least part of the relevant time frame and would cover molasses re-sold to American Licorice thereafter.

/ / /

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                    2013-cv-01929 EMC

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

2.   *Domino Provided Total Sweeteners with Continuing Guaranty and Indemnification Agreements in 2010 and 2011*

However, Domino is incorrect in stating that the earliest Continuing Guaranty and Indemnification agreement it provided Total Sweeteners was the one dated June 18, 2012.   (See Domino's Mot. at pp. 8-9; Decl. Michael A. DeLuca at ¶ 5 & Exhs. A, B, C.)  Domino issued at least two earlier agreements that in all pertinent respects are identical to the ones attached to Domino's Declaration of Michael A. Deluca: one dated June 18, 2010, and one dated June 17, 2011.  Kessler Decl. Exhs. 2, 3.  All of the agreements apply to sales "now or hereafter made…." Either of these agreements would therefore apply to the sales at issue.

**B.   Domino's Argument Regarding the Allegations "On Information and Belief" are Specious**

Next, Domino moves to dismiss the second claim for breach of express warranty, and the fourth claim for express indemnity, on the grounds that the Third Party Complaint ("TPC") fails to "allege facts showing that Domino molasses ended up in the recalled licorice."  (Domino's Mot. at p. 9 at lines 4-25.)

Domino's argument is groundless.  First, the issue is not so precise as whether Total Sweeteners has alleged facts "showing that Domino's molasses ended up in the recalled licorice," which in any event are facts entirely within American Licorice's control, since American Licorice manufactured the licorice, not Total Sweeteners.  Total Sweeteners' TPC is based on, and arises out of, the claims asserted by American Licorice.  American Licorice complains that molasses it received from Total Sweeteners contained elevated levels of lead; some of its claimed damages relate to the 2012 recall, but among other requests, it also seeks compensation because it allegedly "did not receive the goods bargained for."  *See* FAC ¶ 41. Therefore, American Licorice's true complaint is that it received shipments of molasses from Total Sweeteners that allegedly contained elevated levels of lead, which American Licorice contends led to, among other consequences, the recall of black licorice it manufactured.  FAC ¶¶ 21-33.  The issue here, therefore, is whether any of the molasses shipments that allegedly contained elevated levels of lead, and which are the basis of American Licorice's claims against

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-5-

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Total Sweeteners, originated with Domino.

2         And Total Sweeteners does allege exactly that.  Specifically, the Third Party Complaint

3    states:  "On information and belief, Total Sweeteners purchased the molasses that it sold to

4    American Licorice, and which is the basis of American Licorice's claims, from Imperial,

5    Domino, and ROES 1 through 10, without altering the lead content of said molasses."  TPC, ¶

6    16.  The second, fourth, fifth, sixth, and seventh claims incorporate this paragraph by reference.

7    (*See* TPC at ¶¶ 29, 48, 59, 63, 66.)

8         The TPC also states:

9    •    "If any of that molasses contained elevated levels of lead when Total Sweeteners sold it

10        to American Licorice, as alleged in American Licorice's First Amended Complaint, then

11        Domino sold and shipped said molasses to Total Sweeteners with the same elevated lead

12        content."  (TPC ¶ 32.)  Subsequent claims incorporate this allegation by reference.

13   •    "On information and belief, some of the molasses that Total Sweeteners shipped to

14        American Licorice in 2012 and which is the basis for American Licorice's claims against

15        Total Sweeteners was molasses that Total Sweeteners had previously purchased from

16        Domino."  (TPC ¶ 48.)[1]  Subsequent claims incorporate this allegation by reference.

17        Domino's real dispute seems to be that some of Total Sweeteners' allegations are based

18   on "information and belief."  (*See* Domino's Mot. at p. 9, lines 9-25.)  Domino argues that this is

19   impermissible, because the facts giving rise to liability here are not "peculiarly within the

20   possession and control of the defendant" nor  "based on factual information that makes the

21   inference of culpability plausible."  (*Id.*, quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110,

22   120 (2d Cir. 2010).)

23        Contrary to Domino's contentions, Total Sweeteners' allegations "on information and

24   belief" are entirely appropriate since the TPC is based on American Licorice's FAC, which does

25   not specify the dates of every molasses shipment at issue.  (*See* Section III.A.1., above.)  The

26   _____

27   [1]  To the extent the second claim omits the language "and which is the basis for American Licorice's claims against Total Sweeteners" from paragraph 30, that omission was entirely inadvertent.  (*See* TPC ¶ 30.)  While the omission is immaterial in light of paragraphs 16 and 32 of the TPC (quoted on this page), which paragraphs are incorporated by reference into the second claim, to the extent the Court finds it necessary, Total Sweeteners requests the
28   opportunity to amend any defects in paragraph 30 (or any other portion of the TPC).  Fed. R. Civ. P. 15(a).

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    FAC only alleges that molasses it received "*on and after April 30, 2012*" contained elevated

2    levels of lead.  (FAC ¶ 27, 31.)  It does not specify which shipments after April 30, 2012 also

3    allegedly contained elevated lead levels.  The FAC also fails to allege the precise levels of lead

4    that it contends were excessive (other than to say the candy made from the molasses had lead

5    levels above 0.1 ppm).  Thus, Total Sweeteners does not know which specific shipments may

6    have been problematic from American Licorice's perspective.

7            Total Sweeteners therefore does not have in hand all facts regarding the precise

8    shipments on which American Licorice bases its claims, and it cannot guess at them since

9    American Licorice is the party in control of that information.  This is a third-party liability

10   complaint, necessarily dependent on the claims from which it arose and which have been

11   asserted *against* Total Sweeteners (not by it), which claims are also necessarily peculiarly

12   outside Total Sweeteners' control.  Pleading on "information and belief" under these

13   circumstances is entirely appropriate, and is supported by *Arista Records, LLC v. Doe 3*, *supra*,

14   604 F.3d 110 ("*Arista Records*"), a case on which Domino relies.  *See* Domino's Mot. at 9.

15   *Arista Records* addressed the effect of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

16   ("*Twombly*"), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"), on federal pleadings

17   standards.  *Arista Records* upheld, under *Twombly/Iqbal* pleadings standards, a complaint replete

18   with allegations "on information and belief."  *See Arista Records*, 604 F.3d at 120-123.  The

19   Court noted that even after *Twombly*, Federal Rule of Civil Procedure 8(a)(2) continues to apply,

20   and requires only "'a short and plain statement of the claim showing that the pleader is entitled to

21   relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon

22   which it rests.'"  *Id.* at 119, quoting *Twombly*, 550 U.S. at 555, citing *Swierkiewicz v. Sorema*

23   *N.A.*, 534 U.S. 506, 508, 512 (2002) (holding an employment discrimination plaintiff who

24   alleges facts that provide fair notice of his claim need not also allege "specific facts establishing

25   a prima facie case," for such a "heightened pleading standard . . . conflicts with Federal Rule of

26   Civil Procedure 8(a)(2)").  The *Arista Records* explained:

27           The *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*,
             129 S. Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon
28           information and belief'" where the facts are peculiarly within the possession and

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT          2013-cv-01929 EMC

1  control of the defendant, *see, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir.
2  2008), or where the belief is based on factual information that makes the inference
   of culpability plausible, see Iqbal, 129 S. Ct. at 1949 ("A claim has facial
3  plausibility when the plaintiff pleads factual content that allows the court to draw
   the reasonable inference that the defendant is liable for the misconduct alleged.").
4  The *Twombly* Court stated that " [a]sking for plausible grounds to infer an
   agreement does not impose a probability requirement at the pleading stage; it
5  simply calls for enough fact to raise a reasonable expectation that discovery will
   reveal evidence of illegal[ity]." 550 U.S. at 556.

6  *Arista Records*, 604 F.3d at 120; followed by *Keegan v. Am. Honda Motor Co.*, 838 F.Supp.2d

7  929 (C.D. Cal. 2012) (pleading on information and belief sufficient where supporting facts

8  outside plaintiffs' possession and control).

9  Aside from *Arista Records*, the remaining cases cited by Domino as support for its

10  argument are unpublished and factually inapposite.  *See* Domino's Mot. at 9, citing *Solis v. City*

11  *of Fresno*, 2012 WL 868681 (E.D. Cal. Mar 13, 2012) (equal protection claim by putative single-

12  person class member);  *Harman v. Unisys Corp.*, 356 Fed. Appx. 638 (4th Cir. 2009) (equal

13  protection claim); *Bright v. Evonik Cyro, LLC*, 2012 WL 811221 (E.D. Ark. Mar. 12, 2012)

14  (claim under the Rehabilitation Act of 1973).  None of those unpublished cases involve the

15  situation here, a third-party complaint for indemnity which relies on an underlying complaint

16  based on alleged issues with particular sales, where not all of the sales have been identified in the

17  pleading out of which the third-party complaint arises, and where a precise description of the

18  defect (that is, the allegedly excessive lead levels) have not yet been described by the party

19  bringing the claim.

20  Instead, this case is far more like *Arista Records*.  In *Arista Records*, plaintiff's complaint

21  contained numerous allegations on information and belief.  *Arista Records*, 604 F.3d at 121.

22  Many of those allegations were supported by an attached exhibit.  *See id.*  "The principal

23  assertion made only on information-and-belief is that defendants' copying and/or distribution of

24  plaintiffs' music were without permission. *But no more definitive assertion as to lack of*

25  *permission seems possible when the users remain anonymous*." *Id.* (emphasis added).  Thus, the

26  pleading passed *Twombly* muster notwithstanding that an element was pleaded on information

27  and belief, because the necessary information was outside plaintiff's control.

28  / / /

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-8-
OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                    2013-cv-01929 EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Here, as in *Arista*, the FAC does not identify every specific shipment of molasses that is

2   the basis for American Licorice's claims, apart from the shipment dated April 30, 2012.  For this

3   reason, Total Sweeteners had to make its allegations against Domino on information and belief.

4   Total Sweeteners lacks possession or control over the information regarding which specific

5   shipments American Licorice contends are at issue.  Since American Licorice has not identified

6   within the FAC the level of lead it contends was "elevated" or "excessive," Total Sweeteners

7   cannot determine which shipments were allegedly problematic from American Licorice's

8   perspective.  To this extent, the facts supporting American Licorice's claims, and which are

9   equally the basis for Total Sweeteners' third party claims against Domino, are as unknown to

10   Total Sweeteners at this stage of the litigation as the identity of the anonymous users were to the

11   plaintiff in *Arista Records*.  Therefore, as in *Arista Records*, since this information is outside

12   Total Sweeteners' possession and control, the allegations "on information and belief" are entirely

13   appropriate.

14    Moreover, contrary to Domino's contentions, the allegations are sufficient to make

15   Domino's liability plausible.  "A claim has facial plausibility when the plaintiff pleads factual

16   content that allows the court to draw the reasonable inference that the defendant is liable for the

17   misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  As long as a plausible claim is pled, the

18   complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is

19   improbable," and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.  Each

20   of the allegations quoted from the TPC earlier in this section, if true, render Domino liable.  For

21   example, the allegation that "On information and belief, some of the molasses that Total

22   Sweeteners shipped to American Licorice in 2012 and which is the basis for American Licorice's

23   claims against Total Sweeteners was molasses that Total Sweeteners had previously purchased

24   from Domino", TPC ¶ 48, in combination with the surrounding allegations of the fourth claim

25   for relief, would result in Domino's liability under its indemnity agreement.  Likewise, the

26   allegation that "If any of that molasses contained elevated levels of lead when Total Sweeteners

27   sold it to American Licorice, as alleged in American Licorice's First Amended Complaint, then

28   Domino sold and shipped said molasses to Total Sweeteners with the same elevated lead

content", TPC ¶ 32, in combination with the surrounding allegations of the second claim, would result in Domino's liability under its express warranty.  Thus, unlike the pleadings at issue in *Twombly* which were problematic because they were equally consistent with lawful conduct, the TPC alleges conduct which, if true, demonstrates Domino's liability.  *See Twombly*, 550 U.S. at 556-57, 564-66; *see also Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1048-1049 (9th Cir. 2012) (two-and-a-half page claim consisting of 17 alleging paragraphs stated 'plausible' claims for both employment discrimination under the Age Discrimination in Employment Act and wrongful discharge under Oregon law).[2]  Therefore, the TPC is sufficiently pled.

**C.     Domino's Motion to Dismiss the Fifth, Sixth, and Seventh Claims Must Fail**

Domino moves to dismiss the fifth claim for equitable indemnity, the sixth claim for contribution, and seventh claim for contribution on the same grounds already addressed above— namely, that Total Sweeteners has failed to sufficiently allege that molasses with allegedly elevated lead levels it sold to American Licorice originated with Domino.  *See* Domino's Mot. at pp. 10, 11.  As already discussed above, this argument is groundless, because the TPC is sufficiently pled.  With regard to Domino's argument that the equitable indemnity and contribution claims are barred, *see id.*, those arguments depend on the presence of an enforceable express agreement.  The extent to which the Court finds there is an enforceable agreement is more appropriately deferred until further discovery has been completed.  Furthermore, California courts routinely exercise jurisdiction over third-party contribution claims that arise out of a pending for reasons of efficiency.

**D.     To the Extent the Court Finds it Necessary, Total Sweeteners Requests Leave to Amend**

If the Court finds the TPC in any way deficient under Rule 12(b)(6) on the grounds raised in Domino's motion, then Total Sweeteners requests leave to amend.  "The court should freely

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

---

[2]   Moreover, although declarations reciting facts are unnecessary to uphold a complaint, *see Arista Records*, 604 F.3d at 119-120, it is notable that Domino's motion itself provides support for Total Sweeteners' claims against it. The Declaration of Michael DeLuca attaches an April 16, 2012 Contract Confirmation regarding a delivery of molasses from Domino to Total Sweeteners.  DeLuca Decl., Exh. D.  This document provides support for Total Sweetener's allegation that it received molasses from Domino in 2012, at a time frame consistent with the time frame at issue in American Licorice's FAC and the TPC.

-10-

give leave [to amend] when justice so requires." (Fed. R. Civ. P. 15(a).) The standard for granting leave to amend is "generous." *United States v. Corinthian College,s* 655 F.3d 984, 995 (9th Cir. 2011).

First, to the extent Total Sweeteners inadvertently quoted from one of the 2013 Continuing Guaranty and Indemnification agreements provided by Domino, it requests the opportunity to amend. Domino notes that the language in the Third Party Complaint is taken from the 2013 version of the agreement. *See* Domino's Mot. at p. 2, 8. The difference is in the first sentence, where the agreement defines Domino as the seller, and in certain other grammatical differences that do not affect the substance of the agreement.[3] While the substance of the agreements is identical, to the extent the Court believes it necessary, Total Sweeteners requests leave to amend so that the allegations of the Third Party Complaint conform to the language of the operative Continuing Guaranty and Indemnification agreements.

Second, to the extent the Court finds it necessary, Total Sweeteners likewise requests leave to amend to cure any defects the Court finds in its pleadings "on information and belief" with regard to its purchase of molasses from Domino and resale to American Licorice. While Total Sweeteners asserts its TPC is sufficiently pled, Total Sweeteners requests and must be granted the opportunity to cure any defects the Court finds in its pleadings, including by adding any additional information regarding the shipments, to the extent the Court finds such information is required to be in the TPC (despite not being included in American Licorice's FAC), and to the extent such information is within Total Sweeteners' possession and control.

## IV.   DOMINO'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) MUST BE DENIED

Next, Domino moves to dismiss Total Sweeteners' Third Party Complaint under Federal Rule of Civil Procedure 12(b)(3) (hereafter "Rule 12(b)(3)"), arguing for enforcement of a forum selection clause on Domino's website that was allegedly referenced in an extraneous sales

---

[3]   Specifically, the 2013 versions of the agreement state the Products "will, at the time of each shipment or delivery, (1) not be adulterated …; and (2), not be an article which may not … be introduced or delivered for introduction into interstate commerce"; earlier versions state the Products "will not at the time of each shipment or delivery be adulterated...; nor will any such Product be an article which may not… be introduced or delivered for introduction into interstate commerce." (Compare DeLuca Decl., Exhs. A & B, with ___ Decl., Exhs. 1 & 2.)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

confirmation form.  *See* Domino's Mot. at 4-7.

Rule 12(b)(3) allows the defense of improper venue to be raised by motion.  Fed. R. Civ. P. 12(b)(3).  In ruling on such motions, "the trial court must draw all reasonable inferences in favor of the non-moving part and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-1139 (9th Cir. 2004).  A motion pursuant to Rule 12(b)(3) has "dramatic effect" because it "forecloses suit in the jurisdiction of [third-party] plaintiff's choice." *Id.* at 1139 (internal quotes omitted), quoting *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 23, 29 (2d Cir. 1997).  "This dramatic effect on the plaintiff's forum choice justifies that 'a party seeking to avoid enforcement of [a forum selection clause] is . . . entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has the opportunity to be heard.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d at 1139, quoting *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d at 29.  Thus, "in many cases the non-moving party will survive the Rule 12(b)(3) motion." *Id.*

As a preliminary matter, this Court is the proper venue in which to bring Total Sweeteners' claims against Domino.  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  Here, a substantial part of the underlying sales and delivery of molasses that is the subject of American Licorice's claims in the FAC, and therefore of Total Sweeteners' Third-Party Complaint which arises out of the FAC, took place in Union City, California, which is within this judicial district. *See* FAC ¶¶ 11; DeLuca Decl. Exh. D (showing delivery of molasses in Carpenter, California, which is also within this judicial district).

Moreover, venue in this district need not be independently established here, because Domino was added to this action as a third-party defendant pursuant to Rule 14 of the Federal Rules of Civil Procedure based on the same common core of facts as those asserted in the underlying FAC.  "[A]n impleader claim [i.e., a claim bringing a third party into a lawsuit] and subsequent Rule 14(a) claims should not have to satisfy the provisions of the venue statutes." 3-14 Moore's Federal Practice - Civil § 14.42  (Matthew Bender and Co., 2013).  "[F]ederal courts

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                    2013-cv-01929 EMC

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   have never seriously doubted that they may employ a concept of 'ancillary venue' over

2   impleader claims." *Id.* "[U]nder ancillary venue, the impleader claim simply need not satisfy

3   the venue provisions that would apply were the claim asserted as an original action. Stated

4   another way, *the third-party defendant may not object to its impleader on venue grounds*." *Id.*

5   (emphasis added); *ABCKO Music, Inc. v. Beverly Glen Music, Inc.*, 554 F. Supp. 410, 412

6   (S.D.N.Y. 1983) ("Where valid subject matter jurisdiction exists between the plaintiff and

7   defendant, a third-party claim between the defendant and a third-party defendant is cognizable by

8   the court under its ancillary jurisdiction if the third-party claim arises from the same core of

9   facts, even absent an independent basis for federal subject matter jurisdiction"); *see Medzilla,*

10  *Inc. v. Scistaff Servs. LLC*, 2007 U.S. Dist. LEXIS 44601 (W.D. Wash. 2007); *see also Gundle*

11  *Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 209-210 (5th Cir. 1996). "This

12  result reflects the fact that impleader claims are intimately related to the underlying action, and is

13  consistent with the laudable goal of avoiding overlapping or duplicative litigation." 3-14 Moore's

14  Federal Practice - Civil § 14.42.  Thus, Domino cannot complain that venue is proper here.

15        Domino nevertheless seeks to dismiss the TPC on grounds of improper venue on the

16  basis that a forum selection clause was published on a website allegedly referenced in a Contract

17  Confirmation form sent to Total Sweeteners.  The motion must be denied, because Domino has

18  failed to provide sufficient evidence that the alleged contract on which it relies, which

19  purportedly contains the forum selection clause on which it relies, applies to Total Sweeteners'

20  action.

21        **A.**     **The Evidence Submitted by Domino in Support of Its Motion is Inadmissible**

22        As a preliminary matter, the Declaration of Michael A. DeLuca (the "DeLuca

23  Declaration"), which is the only evidence Domino submits in support of its motion, is not

24  admissible evidence.  Pursuant to Civil Local Rule 7-3(a), Total Sweeteners objects and moves

25  to strike the following portions of the DeLuca Declaration, on the following grounds:

26  / / /

27  / / /

28  / / /

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT          2013-cv-01929 EMC

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    *1.    Paragraphs 1 Through 7, Inclusive, and Exhibits A through E, Inclusive,*
2    *of the Declaration, and Each of Them, Should be Stricken for Lack of*
     *Personal Knowledge (Fed. R. Evid. 602)*

3    Total Sweeteners objects and moves to strike the entirety of the DeLuca Declaration,

4    paragraphs 1 to 7 inclusive, and Exhibits A through E, and each of them, on the grounds that it

5    fails to establish that the witness has personal knowledge of the facts averred. "A witness may

6    not testify to a matter unless evidence is introduced sufficient to support a finding that the

7    witness has personal knowledge of the matter." Fed. R. Evid. 602.  "Evidence to prove personal

8    knowledge may, but need not, consist of the witness' own testimony." *Id.*

9    Here, DeLuca does not state even in conclusory fashion that he possesses personal

10   knowledge of the facts in his declaration. *See, e.g.*, DeLuca Decl. at ¶ 1.  He also does not

11   provide facts sufficient to allow an inference of personal knowledge. Although he states his

12   current position is Vice President of Specialty Ingredients, he does not state when he held this

13   position, nor does he state that he held this position at the times reference in his declaration. *Id.*

14   He does not state what his duties were, or whether he was personally involved in the facts

15   alleged in his declaration, nor does he otherwise facts establishing that he has personal

16   knowledge of the facts in his declaration. *See id.*  He does not state, for example, whether or

17   why he has personal knowledge of Total Sweeteners's [aka Batory's] practices regarding

18   purchase orders, nor whether he was personally involved with or otherwise has personal

19   knowledge of his customer service department practices.  Moreover, his statement that the

20   Continuing Guaranty and Indemnification agreements attached as Exhibits A, B, and C to his

21   Declaration are the only ones Domino provided to Total Sweeteners is incorrect, as there are

22   others dating 2010 and 2011.  Kessler Decl., Exhs. 2, 3, 4.  DeLuca's error on this point is an

23   affirmative indication he lacks personal knowledge of the statements in his declaration. *See id.* ¶

24   5.

25   Similarly, paragraph 6 is lacking in a showing of personal knowledge.  DeLuca testifies

26   about Batory's practices when ordering molasses, Domino's customer service department's

27   practices, and the allegedly unchanged "form of Domino's contract confirmations," all without

28   establishing any basis in personal knowledge for these alleged facts. *See id.* ¶ 6.  Paragraph 7 is

-14-

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    similarly vacuous; it makes statements regarding the supposed availability of Domino's Standard

2    Terms and Conditions "for several years," that the terms "are updated periodically," and that the

3    applicable version of the terms were in effect until December 9, 2012 (this date does not appear

4    on Exhibit E, and the witness does not explain whether or how he knows this).

5        This declaration is unlike others the Ninth Circuit has upheld under Rule 602, because it

6    does not state even in conclusory fashion that the witness possesses personal knowledge of the

7    facts in it, and because it does not state when the witness has been employed by the company or

8    when he became its Vice President of Specialty Ingredients, or what his duties are.  In *Stuart v.*

9    *UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1155 (9th Cir. 2000), for example, which is unlike

10   this case, a declaration of a corporate officer was upheld, but there the witness did what DeLuca

11   did not do—the *Stuart* witness averred that he had personal knowledge, that he was the actual

12   signer of the policy application discussed in his declaration, and he explained the basis of his

13   testimony, and also stated that he had previously served as his company's Director of Human

14   Services.  *Id.*  Here, unlike the Stuart case, the witness provided no such facts—he did not even

15   state he was testifying based on his personal knowledge, what his basis for knowledge was, what

16   his connection with the facts averred or documents attached as exhibits may be, or what his

17   history with the company is.  *United States v. Thompson*, 559 F.2d 552 (9th Cir. 1977), is

18   similarly distinguishable.  For one thing, does not involve a declaration.  *Id.* at 553-54.  For

19   another, the witness provided far more factual background than DeLuca did here.  The

20   Thompson witness testified that he had been a restaurant manager since June 1975, he described

21   his training as a manager, and he testified he was the custodian of the restaurant's records.  *Id.*

22   This sufficiently indicated his personal knowledge.  *Id.* at 554.  Here, unlike Thompson, there is

23   not even a bare assertion that the witness possesses personal knowledge, a basic element of any

24   declaration in support of a motion.  There are no preliminary facts from which to infer such

25   personal knowledge, unlike the declaration in *Stuart* and the live witness in *Thompson*, since the

26   witness provides nothing other than his current title.  A mere claim of corporate title surely does

27   not allow a witness to escape the requirement for establishing personal knowledge of the facts he

28   asserts—including the basic need to advise the Court that he is testifying from his personal

-15-

1  knowledge.  Thus, this declaration is far more lacking than the testimony considered in *Stuart*

2  and *Thompson*, and it should be stricken.

3  Exhibits A through E, and each of them, rely for their admissibility on the DeLuca

4  declaration.  Since DeLuca's Declaration fails to establish it is based on personal knowledge

5  under Federal Rule of Evidence 602, the exhibits are likewise inadmissible.

6  As such, the declaration in its entirety, including exhibits, fails to establish the witness'

7  personal knowledge of the facts therein, and it must be stricken in its entirety under Federal Rule

8  of Evidence 602.  Alternatively, Total Sweeteners requests that the Court strike those paragraphs

9  and exhibits of the DeLuca Declaration that the Court deems are not shown to be based on the

10  witness' personal knowledge.

11          2.   *Paragraphs 1 Through 7 of the Declaration and Exhibits A through E, and*
            *Each of Them, Should be Stricken for Failure to Comply with Federal*
12          *Rule of Evidence 603 (Oath or Affirmation)*

13  The first sentence of DeLuca's declaration states:  "I, Michael A. DeLuca, declare under

14  penalty of perjury that the *foregoing* is true and correct[.]"  DeLuca Decl., p. 1, lines 1-2.  This

15  sentence appears before, not after, his substantive testimony.  As such, the portions of the

16  declaration that *follow* that sentence—since they are not the "foregoing"—are not sworn

17  testimony as required by Federal Rule of Evidence 603.  *See* 28 U.S.C. § 1746 (writing must be

18  *subscribed* (that is, signed underneath) with statement it was executed under penalty of perjury).

19  The minimal standard imposed by 28 U.S.C. § 1746 —a statement confirming the

20  contents of the declaration is made under penalty of perjury – is missing here.  This is not a

21  matter merely of the location of the affirming sentence; it is the fact that the sentence refers to

22  the foregoing portions of the declaration, not the statements underneath, such that the contents of

23  the declaration have not been affirmed.  While this may be a technical flaw, the Rules of

24  Evidence are technical in nature, and language matters.  Domino is not a pro se plaintiff.  Failure

25  to satisfy even the relaxed oath requirements of 28 U.S.C. § 1746 is not an oversight that should

26  be without effect.  The declaration in its entirety, including the attached exhibits, should be

27  stricken under Federal Rule of Evidence 603 because its contents were not properly affirmed.

28  / / /

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

        **B.**    **Total Sweeteners' Claims Are Based on the Continuing Guaranty and Indemnification Agreement, an Independent, Binding, and Enforceable Contract Which Does Not Have a Forum Selection Clause**

2

3          Domino's argument must fail, first, because the agreement that governs Total

4  Sweeteners' third-party claims against it is the Continuing Guaranty and Indemnification

5  agreement referenced in the Third-Party Complaint, not the "Contract Confirmation" and

6  allegedly incorporated Terms and Conditions cited by Domino.  (*See* Domino's Mot. at pp. 4-6.)

7  Pertinent here, the Continuing Guaranty and Indemnification agreements do not limit the forum

8  in which third-party claims may be brought by Total Sweeteners.

9          Successive Continuing Guaranty and Indemnification agreements running from Domino

10  to Total Sweeteners were signed by Domino on June 18, 2010; June 17, 2011; June 18, 2012;

11  July 2, 2013; and July 31, 2013, and sent to Total Sweeteners.  Each of these agreements is a

12  binding contract.  "It is a settled rule that the receipt and acceptance by one party of a paper

13  signed by the other only, and purporting to embody all the terms of a contract between the two,

14  binds the acceptor, as well as the signer, to the terms of the paper."  *Dallman Supply Co. v.*

15  *Smith-Blair, Inc.*, 103 Cal. App. 2d 129, 132 (1951), followed by *White v. Autozone, Inc.*, 213

16  Fed. Appx. 628, 630, 2006 U.S. App. LEXIS 32168 (9th Cir. 2006).  Here, the Continuing

17  Guaranty and Indemnification agreements "purport[] to embody all the terms of a contract."  By

18  their own terms, they "shall cover all Products and shall survive the termination of any

19  arrangement between Vendor and Purchaser," such that they "purport[] to embody all the terms"

20  of the guarantee and indemnification agreement.  *Id.*  They were accepted by Total Sweeteners

21  and signed by Domino.  Kessler Decl. ¶¶ 1-22, Exhs. 2, 3, 4.  Therefore, under *Dallman Supply*

22  *Co.*, they are binding contracts.[4]

23          Moreover, by their own terms, the Continuing Guaranty and Indemnification agreements

24  are broader than, and indicate an intent to supersede, any contradictory terms, warranties, or

25  agreements in any other agreement.  First, they each provide that the "Products shipped to

26  Purchaser will at the time of shipment be in compliance with all applicable federal, state, or local

27

28      [4]  Indeed, Domino does not assert that the Continuing Guaranty and Indemnification agreements are in any way not binding

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT        2013-cv-01929 EMC

laws." *See* DeLuca Decl. Exhs. A, B, C.  The website Terms and Conditions relied on by

Domino contains no such warranty.  *See* DeLuca Decl. Exh. E.  Moreover, the Continuing

Guaranty and Indemnification agreements are broadly worded, stating they "shall cover all

Products and shall survive the termination of any arrangement between Vendor and Purchaser."

This expansive language expresses an intent to apply to every purchase of a product,

notwithstanding any other "arrangement" or agreement between the parties.  "Where contract

language is clear and explicit and does not lead to absurd results, we ascertain intent from the

written terms and go no further."  *Ticor Title Ins. Co. v. Employers Ins. Of Wasau*, 40 Cal. App.

4th 1699, 1707 (1995).  Therefore, even if the Court found that the sales confirmations relied on

by Domino also potentially applied here, the Continuing Guaranty and Indemnification

agreements should be found to supersede such extraneous agreements.

Here, Total Sweeteners' claims for express indemnity and breach of express warranty are

based on the Continuing Guaranty and Indemnification agreements, which are binding contracts.

They do not contain a forum selection clause.  Therefore, there is no basis for a finding that

venue is improper, and Domino's motion should be dismissed.

**C.**     **Domino's Evidence, Even if it Were Admissible (and It Is Not), Fails to
          Establish that the Forum Selection Clause Was Part of a Binding Contract**

Even if the DeLuca Declaration and all its attached exhibits were wholly admissible,

Domino's motion still must fail, because the declaration fails to provide sufficient evidence to

allow the Court to find that the sales confirmation and allegedly related website "Terms and

Conditions" were terms of a binding contract between the parties under the Uniform Commercial

Code (UCC).  *See Laxmi Invs., L.L.C. v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999) (forum

selection clause unenforceable for lack of evidence of a "meeting of the minds).  The DeLuca

Declaration provides insufficient evidence to indicate that an enforceable agreement containing

the forum selection clause was formed.

Under UCC § 2-204(1), "[a] contract for sale of goods may be made in any manner

sufficient to show agreement, including conduct by both parties which recognizes the existence

of such a contract."  Cal. Comm. Code § 2204(1).  Here, Domino provides no evidence at all

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  regarding the conduct of the parties, such as whether it performed under the contract by

2  delivering molasses to Total Sweeteners pursuant to any sales confirmation, or whether Total

3  Sweeteners exhibited any conduct recognizing the existence of the contract that Domino relies

4  on in support of its motion to dismiss.  *See* DeLuca Decl.

5        **D.**      <u>**The Forum Selection Clause Fails Under UCC 2-207 Because It Was a**</u>
<u>**Material Modification**</u>

6

7        Under U.C.C. § 2-207, the forum selection clause in the Terms and Conditions on

8  Domino's website did not become part of any contract with Total Sweeteners, as the clause was

9  an additional term that materially altered the terms in Total Sweeteners' purchase order.  U.C.C.

10  § 2-207 provides:

11      Additional Terms in Acceptance or Confirmation.

12      (1) A definite and seasonable expression of acceptance or a written confirmation
    which is sent within a reasonable time operates as an acceptance even though it

13      states terms additional to or different from those offered or agreed upon, unless
    acceptance is expressly made conditional on assent to the additional or different

14      terms.

15      (2) The additional terms are to be construed as proposals for addition to the
    contract. Between merchants such terms become part of the contract unless:

16
    (a) the offer expressly limits acceptance to the terms of the offer;

17
    (b) *they materially alter it*; or

18
    (c) notification of objection to them has already been given or is given within a

19      reasonable time after notice of them is received.

20  U.C.C. § 2-207; Cal. Comm. Code § 2207 (emphasis added).  A forum selection clause in an

21  acceptance or order confirmation is a material alteration of a contract within the meaning of

22  UCC § 2-207(2)(b).  *Product Components, Inc. v. Regency Door and Hardware, Inc.*, 568 F.

23  Supp. 651 (S.D. Ind. 1983) (declining to enforce forum selection clause as an invalid material

24  alteration of a contract); *M.K.C. Equipment Co., Inc. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679 (D.

25  Kan. 1994); *Cinetic Dyag Corp. v. Forte Automation Systems, Inc.*, 2008 U.S. Dist. LEXIS

26  90968, *14 (E.D. Mich. 2008).

27        Here, Total Sweeteners sent purchase orders to Domino that included the terms of its

28  offer, including product, quantity, price, and delivery location.  *See* Kessler Decl. Exh. 1.  These

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

-19-

are sufficient terms to create a contract under the U.C.C. *See* U.C.C. § 2-204(3) (open terms);

*Steiner v. Mobil Oil Corp.* 20 Cal. 3d 90 (1977). The forum selection clause on the Domino

website that was purportedly incorporated into Domino's Contract Confirmation was an

"additional term" added in a confirmation; under U.C.C. § 2-207, it materially altered the terms

of Total Sweeteners' offer, and did not become part of the contract.

> **E.**   **Even if Domino's Evidence Regarding the Alleged Forum Selection Clause**
> **Sufficed (and It Does Not), the Continuing Guaranty and Indemnification**
> **Agreement Materially Alters It Under UCC 2-209**

Even if the Contract Confirmation formed a binding contract, it was validly modified by

the Continuing Guaranty and Indemnification agreements. First, the Continuing Guaranty and

Indemnification agreements resulted in a valid modification under U.C.C. § 2-209, which states:

> Modification, Rescission and Waiver.
> (1) An agreement modifying a contract within this Article needs no consideration
> to be binding.
>
> (2) A signed agreement which excludes modification or rescission except by a
> signed writing cannot be otherwise modified or rescinded, but except as between
> merchants such a requirement on a form supplied by the merchant must be
> separately signed by the other party.
>
> (3) The requirements of the statute of frauds section of this Article (Section 2-
> 201) must be satisfied if the contract as modified is within its provisions.

U.C.C. § 2-209; Cal. Comm. Code § 2209. Here, the Contract Confirmation relied on by

Domino is within the statute of frauds, because it describes a sale of goods for the price of five

hundred dollars or more. *See* U.C.C. § 2-201(1); Cal. Comm. Code § 2201. The Contract

Confirmation is not a "signed agreement," so U.C.C. § 2-209(2) does not apply. The statute of

frauds is satisfied, because Domino, as the party to be charged, signed the Continuing Guaranty

and Indemnification agreements. U.C.C. § 2-201(1); Cal. Comm. Code § 2201. Therefore, all of

the requirements under U.C.C. § 2-209 for a valid modification of the Contract Confirmation are

met.

The Continuing Guaranty and Indemnification Agreements contain their own,

independent guarantees that are broader than the warranty provision in the Domino website

Terms and Conditions. *Compare* DeLuca Exhs. A and B *with* Exh. E. They apply to "each

article of food… being part of any shipment or delivery now or hereafter made…." Unlike the

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

-20-

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Domino website Terms and Conditions, the Continuing Guaranty and Indemnification

2    agreements warrant that all products "shipped to Purchaser will at the time of shipment be in

3    compliance with all applicable federal, state or local laws." DeLuca Exhs. A, B.  They include a

4    promise to indemnify Total Sweeteners against "any and all third party claims."  *Id.*

5    Significantly, they do <u>not</u> limit the forum in which any warranty or indemnification suits arising

6    from them may be brought.  *See id.*  The lack of any such limitation makes sense, because claims

7    for indemnification or breach of warranty arising out of third-party suits are most appropriately

8    and efficiently brought in the same jurisdiction as the underlying complaint.  *See, e.g.*, *Gundle*

9    *Lining*, *supra*, 85 F.3d at 209-210.

10          The Continuing Guaranty and Indemnification agreements also validly modify the

11   Contract Confirmations under the provisions of the Terms and Conditions themselves.  First, the

12   Contract Confirmation states that "If Seller has signed a written contract with Buyer for the

13   supply of the above products, the terms of that contract shall govern…."  DeLuca Decl. Exh. D,

14   p. 1.  Here, the seller, Domino, did sign such a written contract with terms covering the supply of

15   the referenced products; so under the Contract Confirmation, it governs.  Second, the website

16   Terms and Conditions state that "Unless specifically agreed upon in writing by Seller, no

17   different or additional terms or conditions, including those contained in any acceptance by

18   Buyer, shall in any way become binding on Seller … and are hereby specifically rejected."

19   DeLuca Decl. Exh. E at ¶ 15.  Here, Domino "specifically agreed … in writing" to the terms in

20   the Continuing Guaranty and Indemnification agreements.  Therefore, under the language of its

21   own website Terms and Conditions, the Continuing Guaranty and Indemnification agreements

22   became binding on Domino.

23          F.    <u>**Alternatively, the Forum Selection Clause is Unenforceable Because There**</u>

24   <u>**Was No Meeting of the Minds Regarding the Forum for Claims Under the**</u>
     <u>**Continuing Guaranty and Indemnification Agreements**</u>

25          A forum selection clause is unenforceable where there was no meeting of the minds

26   regarding the forum selection provision.  *Laxmi Invs., L.L.C. v. Golf USA*, 193 F.3d 1095, 1097

27   (9th Cir. 1999) (reversing dismissal of claims on basis of forum selection clause).  *Laxmi*

28   involved a forum selection clause in a franchise agreement.  *Id.* at 1096.  There, an unsigned

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                    2013-cv-01929 EMC

**Gordon & Rees LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  offering circular contained forum selection language that conflicted with the written franchise

2  contract, which restricted litigation under the contract to Oklahoma County, Oklahoma.  *Id.*  The

3  trial court dismissed, finding the matter could proceed only in Oklahoma.  *Id.* at 1097.

4        The Ninth Circuit reversed, holding the forum selection clause was unenforceable.  *Id.*

5  "parties never agreed to a forum outside California" because "there was no meeting of the minds

6  on the forum-selection provision."  *Id.*  The plaintiff therefore "had no reasonable expectation

7  that it had agreed to a forum other than California," and the clause could not be enforced.  *Id.*

8        The Court should find *Laxmi* controlling here.  Similar to *Laxmi*, this case involves two

9  allegedly controlling, but competing documents—signed contracts relied on by Total Sweeteners

10  (the Continuing Guaranty and Indemnification agreement), which do not include a forum

11  selection clause, and which are the basis of its claims; and the website Terms and Conditions

12  relied on by Domino, which does contain a forum selection clause.  Like the plaintiff in *Laxmi*,

13  Total Sweeteners relied on the Continuing Guaranty and Indemnification agreements it received

14  from Domino.  Kessler Decl. ¶ 9-11.  As in *Laxmi*, by issuing the Continuing Guaranty and

15  Indemnification agreements containing no forum selection clause (nor any reference to its

16  website terms and conditions), Domino failed to communicate any intent to insist on

17  enforcement of the forum selection clause in its website terms and conditions.  Therefore, there

18  was no meeting of the minds with regard to the forum in which actions to enforce the Continuing

19  Guaranty and Indemnification agreements might be brought, and the forum selection clause

20  relied on by Domino is unenforceable here.

21    **G.**    **The Website Terms and Conditions Containing the Forum Selection Clause
               Were Not Reasonably Communicated to Total Sweeteners**

22

23        To be enforceable, a forum selection clause must have been "reasonably communicated"

24  to the party to be bound by it. Domino contends its forum selection clause was reasonably

25  communicated to Total Sweeteners because at the bottom of the Domino Contract Confirmation,

26  in fine print, it stated that any sale was "strictly subject to the terms and conditions located at

27  www.dominosugar.com …."  Domino's Mot. at 6, lines 8-15.  Contrary to Domino's argument,

28  this does not constitute reasonable communication of a forum selection clause.

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT          2013-cv-01929 EMC

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   First, the cases on which Domino relies are inapposite.  Domino cites *Fteja v. Facebook,*

2   *Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) and *Ticketmaster L.L.C. v. RMG Technologies,*

3   *Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007).  Domino's Mot. at 6, lines 11-15.

4   *Ticketmaster L.L.C.* did not involve a forum selection clause nor the issue of "reasonable

5   communication" in the context of a motion to dismiss under Rule 12(b)(3).  Moreover, both of

6   these cases involved internet transactions in which the user actually or constructively viewed the

7   referenced webpage, not sales confirmations purporting to incorporate an extraneous website

8   where the transaction did not otherwise involve use of, or access to, that website.  As such, they

9   are neither controlling nor persuasive authority here.

10   Second, the Contract Confirmation does not direct Total Sweeteners to the correct

11   internet address where the terms and conditions can be found.  It only references Domino's

12   generic website, www.dominosugar.com.  The correct web address where sales terms and

13   conditions can actually be found, according to Domino's own evidence, is

14   "www.dominosugar.com/sales-terms-and-conditions".  *See* DeLuca Decl. ¶ 7.  Yet the Contract

15   Confirmation does not reference or direct Total Sweeteners to this internet address.  This

16   reference to the incorrect web address cannot constitute reasonable communication.  *See Fteja v.*

17   *Facebook, Inc.*, *supra*, 841 F. Supp. 2d at 836 (noting that in the case of hyperlinked terms, cases

18   addressing validity of website terms and conditions turn on constructive knowledge of

19   hyperlinked terms).  Because this was not an internet purchase, and the written Contract

20   Confirmation does not reasonably direct Total Sweeteners to the allegedly incorporated Terms

21   and Conditions, Domino has failed to show that Total Sweeteners was on constructive notice of

22   the forum selection clause or that it was "reasonably communicated" by Domino.[5]

23   **H.    In the Event the Court Does Not Deny Domino's Motion, It Should Defer
         Resolution of the Issues it Raises Until Trial**

24

25   In the event the Court finds Domino's motion to dismiss under Rule 12(b)(3) has merit, it

26

27   [5]  Moreover, the terms and conditions allegedly in place in 2012 cannot be accessed on the web address cited by
     DeLuca.  Accessing www.dominosugar.com/sales-terms-and-conditions as of October 25, 2013, leads the user to a
28   different set of terms and conditions, with a different venue provision, than the one Domino relies on.  *See* Persson
     Decl. Exh. 5.

-23-

1   still raises too many factual issues intertwined with the merits of Total Sweeteners' claims to be

2   resolved at this early stage of litigation.  When the facts addressing proper venue are inextricably

3   intertwined with the merits of the action, resolution of the venue issue is usually deferred until

4   trial.  *See Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.

5   1977) (discussing personal jurisdiction motions).  Alternatively, the Court may deny the motion

6   until the record can be further developed.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d at 1139.

7   Therefore, even if the Court finds that Domino has raised issues regarding the possible

8   applicability of a forum selection clause, the Court should defer resolution of such issues.

9   **V.    CONCLUSION**

10          For the foregoing reasons, Total Sweeteners respectfully requests that the Court deny

11   Domino's motion to dismiss.

12   Dated:  October 25, 2013                     GORDON & REES LLP

13

14                                               By:   */s/ Kara Persson*
                                                        MORDECAI D. BOONE
15                                                      KARA PERSSON
                                                        Attorneys for Defendant
16                                                      TOTAL SWEETENERS, INC. dba
                                                        BATORY FOODS

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1083731/17233027v.1

OPPOSITION TO MOTION TO DISMISS THIRD-PARTY COMPLAINT                2013-cv-01929 EMC