**United States District Court**
For the Northern District of California

1

2

3

4

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8    AMERICAN LICORICE COMPANY,              No. C-13-1929 EMC

9                    Plaintiff,

10         v.                                **ORDER GRANTING IN PART AND
                                             DENYING IN PART THIRD-PARTY
11   TOTAL SWEETENERS, INC.,** *individually*   **DEFENDANTS' MOTIONS TO DISMISS**
     *and doing business as* BATORY FOODS,
12   INC.,                                   **(Docket Nos. 51, 56)**

13                    Defendant.
     _____/
14

15              **I.    INTRODUCTION**

16         Plaintiff, American Licorice Company ("American Licorice"), filed a complaint against

17   Total Sweeteners, Inc. ("Total Sweeteners"), doing business as Batory Foods, Inc. ("Batory"),

18   alleging that the molasses it purchased from Total Sweeteners contained excessive amounts of lead.

19   Total Sweeteners then filed a third-party complaint ("TPC") against Imperial Sugar Company,

20   Imperial Distributing, Inc., and a subsidiary of Imperial Sugar Company, Savannah Sugar Refinery

21   (collectively, "Imperial"), Domino Foods, Inc. ("Domino"), and Does 1 - 10 (collectively, "Third-

22   Party Defendants").  It alleges five causes of action against each Third-Party Defendant: Breach of

23   Express Warranty, Express Indemnity, Implied Indemnity, Contribution, and Declaratory Relief.

24         Currently pending before the Court is Imperial's motion to dismiss the TPC pursuant to

25   Federal Rules of Civil Procedure 12(b)(6) and Domino's motion to dismiss the TPC pursuant to

26   Federal Rules of Civil Procedure 12(b)(3) for improper venue and 12(b)(6).

27

28

**United States District Court**
For the Northern District of California

## II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

American Licorice manufactures and distributes candy, including Red Vines® black licorice. American Licorice's First Amended Complaint ("FAC") (Docket No. 19) ¶ 2.  A major ingredient of Red Vines® black licorice is molasses, a sugar product.  FAC ¶ 21; TPC ¶ 8.  From February 2012 to August 2012, American Licorice purchased its molasses exclusively from Total Sweeteners.  FAC ¶ 21.

Around August 21, 2012, the California Department of Public Health ("CDPH") informed American Licorice that it had tested at least one lot of Red Vines® black licorice and found that the candy contained more than 0.1 parts per million ("ppm") of lead.  FAC ¶ 22.  The CDPH and the United States Food and Drug Administration ("FDA") allegedly consider "candy with lead content above 0.1 ppm as "adulterated."  *Id*.  American Licorice conducted its own investigation and found that Red Vines® black licorice manufactured with the molasses Total Sweeteners supplied on and after April 30, 2012 contained lead exceeding the 0.1 ppm limit.  FAC ¶ 27.  The black licorice produced in May 2012 contained lead levels between 0.27 and 0.33 ppm.  *Id*.  The black licorice produced in July and early August 2012 had lower levels, but were still above the 0.1 ppm limit.  *Id*. Testing of all the ingredients showed that the elevated level of lead was due to the molasses.  FAC ¶ 28.  Consequently, American Licorice recalled and halted production of its black licorice.  FAC ¶ 29.  It seeks damages in excess of $2 million.  FAC ¶¶  41, 48, 58, 67.

Total Sweeteners alleges "[o]n information and belief" that "some of the molasses that Total Sweeteners shipped to American Licorice in 2012 and which is the basis for American Licorice's claims against Total Sweeteners" was purchased from Imperial, Domino, and DOES 1 - 10.  TPC ¶¶ 16, 38, 49.  It did not alter the lead content of the molasses it purchased.  TPC ¶¶ 16, 32, 52.

Total Sweeteners had express warranties from Imperial and Domino that no food items Imperial and Domino sold to Total Sweeteners would be "adulterated or misbranded within the meaning of Section 402 or 403 of the Federal Food, Drug, and Cosmetic Act (the 'Act')" or within the meaning of state or local law "in which the definitions of 'adulteration' or 'misbranding' are substantially the same as those under the Act." TPC ¶¶ 23, 31.

1  Imperial and Domino also agreed in writing to defend, hold harmless, and indemnify Total

2  Sweeteners against third-party claims for liability, damages and expenses, including attorneys' fees.

3  TPC ¶¶ 31, 39.  Yet, when Total Sweeteners tendered demands that Imperial and Domino defend,

4  hold harmless, and indemnify it against American Licorice, they refused to accept tender.  TPC ¶¶

5  45-46, 56-57.

6  Total Sweeteners alleges against each Third-Party Defendant Breach of Express Warranty,

7  Express Indemnity, Implied Indemnity, Contribution, and Declaratory Relief.  Imperial filed a

8  motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  Domino filed a motion to

9  dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and pursuant to 12(b)(3), for improper

10 venue, based on a forum selection clause contained in its Terms and Conditions.  Docket No. 53

11 Exh. E.

12 After Domino filed its motion, the Supreme Court held, contrary to Ninth Circuit precedent,

13 that a forum selection clause cannot be enforced in a 12(b)(3) motion.  *See Atlantic Marine Constr.*

14 *Co. v. United States Dist. Court for Western Dist. Of Tex.*, 134 S.Ct. 568 (2013).  It held that a forum

15 selection clause may be enforced under a motion to transfer pursuant to 28 U.S.C. § 1404.  The

16 Court requested Domino and Total Sweeteners to submit supplemental briefing on the impact of the

17 Supreme Court's decision on Domino's 12(b)(3) motion.  Docket No. 70.  Domino retracted

18 12(b)(3) as a ground for its motion to dismiss, but at the same time, requests the Court should to

19 transfer the third-party action sua sponte to New York, the forum designated in its Terms and

20 Conditions.  In case the Court declines, Domino requests permission to file a motion to transfer

21 pursuant to § 1404.

22                    **III.    DISCUSSION**

23 A.    Legal Standard for Rule 12(b)(6) Motion

24 Under Federal Rules of Civil Procedure 12(b)(6), a party may move to dismiss based on the

25 failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

26 dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

27 *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

28 must take all allegations of material fact as true and construe them in the light most favorable to the

United States District Court

For the Northern District of California

nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B.    Imperial's 12(b)(6) Motion to Dismiss for Failure to State a Claim

1.    Imperial's General Assertion as to All Causes of Action Against It

Imperial asserted that all of Total Sweeteners' causes of action failed to meet the plausibly standard of *Twombly* and *Iqbal* because "crucial" allegations were alleged "on information and belief." Imperial's Motion at 10-11. It pointed in particular to the following allegation: "On information and belief, some of the molasses that Total Sweeteners shipped to American Licorice in 2012 was molasses that Total Sweeteners had previously purchased and received from Imperial." TPC ¶ 28. It is not disputed that Total Sweeteners purchased molasses from Imperial and sold molasses to American Licorice, but the connection between the two was alleged on information and belief. The allegation is sufficient for purposes of 12(b)(6). *Twombly* and *Iqbal* do not prohibit allegations based on information and belief under the circumstances of this case.

2.    Breach of Express Warranty (Count I)

Total Sweetener alleges that, if the lead content in the molasses it sold to American Licorice renders the molasses "adulterated" and/or "misbranded" within the meaning of the Federal Food, Drug, and Cosmetic Act ("FDCA"), then Imperial has breached an express warranty. The warranty was contained in an alleged Continuing Guarantee Statement which Imperial provided Total Sweeteners prior to the sales of the molasses. TPC ¶ 23. Without attaching a copy of the Guarantee, Total Sweeteners provides the following quote that the product be:

Not adulterated or misbranded within the meaning of Section 402 or 403 of the Federal Food, Drug, and Cosmetic Act, and not an article which may not, under the provisions of that Act, be introduced or delivered for introduction into interstate commerce; not adulterated or misbranded within the meaning of any state or municipal ordinance win [sic] which the definition of adulteration or misbranding is substantially the same as that used in said Act to the extent said Act or any such law or ordinance is then effective and applicable, and not an article which cannot be legally transported or sold under the provisions of any applicable state or local law.

*Id.*

Imperial asserts that the Breach of Express Warranty claim is not plausibly alleged because Total Sweeteners fails to identify the alleged agreement – a copy of the warranty has not been attached, nor the date of the document or signatory identified.  Imperial moves to dismiss the cause of action for Breach of Express Indemnity, discussed below, on the same grounds.

During the hearing, counsel for Total Sweeteners agreed to provide Imperial with a copy of the Indemnification Agreement, which is the basis for the cause of action for Breach of Express Indemnity.  The Court presumes that counsel will provide Imperial also with a copy of the Continuing Guaranty Agreement.  Thus, the Court denies this grounds for dismissal, conditioned upon Total Sweetener promptly providing Imperial with the Continuing Guaranty Agreement.

Imperial asserts that the Breach of Express Warranty is not plausibly alleged also because Total Sweetener fails to allege that the molasses was adulterated within the meaning of the FDCA. Section 402 of the FDCA, 21 U.S.C. § 342, provides in part:

A food shall be deemed adulterated –

(a)     Poisonous, insanitary, etc., ingredients

(1)     If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health; [or][1]

(2)(A)  if it bears or contains any added poisonous or added deleterious

---

[1] The statute has a footnote stating that "or" is probably missing.  (Every subsequent clause is connected with an "or.")

United States District Court
For the Northern District of California

> substance (other than a substance that is
> a pesticide chemical residue in or on a
> raw agricultural commodity or processed
> food, a food additive, a color additive, or
> a new animal drug) that is unsafe within
> the meaning of section 346 of
> this title . . .

21 U.S.C. § 342.

Section 346 defines "unsafe" as follows:

> Any poisonous or deleterious substance added to any food, except
> where such substance is required in the production thereof or cannot
> be avoided by good manufacturing practice shall be deemed to be
> unsafe for purposes of the application of clause (2)(A) of section
> 342(a) of this title . . .

21 U.S.C. § 346.

Total Sweetener's allegation that Imperial's molasses was "adulterated" is based on American Licorice's same allegation against Total Sweetener.  TPC ¶¶ 25-26.  In essence, American Licorice alleged that the molasses was "adulterated" within the meaning of the FDCA and California law because the black licorice produced with the molasses was "adulterated."  The black licorice was allegedly "adulterated" due to the FDA's recommendation that "lead levels in candy products likely to be consumed frequently by small children not exceed 0.1 ppm because such levels are achievable under good manufacturing practices and would not pose a significant risk to small children for adverse effects." http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ChemicalContaminantsMetalsNaturalToxinsPesticides/ucm077904.htm.

Imperial does not challenge that the levels of lead in the black licorice may have rendered it "adulterated," but argues that Total Sweeteners has not been plausibly alleged that this renders the molasses "adulterated."  In other words, the 0.1 ppm standard applies to "candy likely to be consumed frequently by small children," but not necessarily to molasses.  The argument is meritless. The black licorice here allegedly contained levels of lead that exceeded 0.1 ppm.  Since the alleged source of the elevated lead was the molasses and not any other ingredient with which the molasses was mixed, the molasses had to have contained lead exceeding 0.1 ppm.

1    To be sure, as Imperial points out, the FDA states that its guidance of a recommended

2 maximum lead level of 0.1 ppm in candy "do[es] not establish legally enforceable responsibilities . .

3 . and should be viewed only as recommendations."

4 http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Chemica

5 lContaminantsMetalsNaturalToxinsPesticides/ucm077904.htm

6 On the other hand, in establishing the 0.1 ppm recommendation, the FDA states that it was

7 rescinding its previous guidance that the FDA "would consider taking regulatory action against

8 candy with lead levels that exceed 0.5 ppm" and "is now prepared FDA is now prepared to take

9 enforcement action against any candy product containing lead at levels that may pose a health risk."

10 The FDA explains, "0.5 ppm guideline was, at that time, equivalent to the Food Chemicals Codex

11 (FCC) specification for lead in sucrose (sugar), the main ingredient in many candy products," but

12 that "the FCC specification for lead in sucrose has been reduced from 0.5 ppm to 0.1 ppm."

13 http://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/ucm172050.htm#ftn1.  This makes

14 it plausible that molasses – a sugar product that is the main ingredient for black licorice – which

15 contains more lead than the limit set for candy is "injurious to human health," and thus,

16 "adulterated" within the meaning of the FDCA.

17    Thus, the Court denies Imperial's  motion to dismiss the Breach of Express Warranty claim.

18    3.    Breach of Express Indemnity (Count III)

19    Total Sweeteners alleges that, prior to its purchase of molasses, it entered into a written

20 Indemnification Agreement with Imperial.  TPC ¶ 39.  Without attaching the Indemnification

21 Agreement, it provides the following quote:

22    The undersigned Seller [Imperial] shall, to the fullest extent permitted
     by law, indemnify, hold harmless and affirmatively defend Total
23    Sweeteners, Inc. (DBA Chicago Sweeteners, Sugar Incentives, Quality
     Ingredients, LSI, Ingredients International) and its subsidiaries,
24    affiliates, assigns and customers, hereinafter "Purchaser", from and
     against any and all liability, damages, loss, cost, expense, or attorneys
25    fees arising out of claims, demands or suits for damages resulting
     directly or indirectly from the handling, selling or distributing of
26    products manufactured and/or distributed by Seller.  The terms and
     conditions of this Indemnification shall govern in the event of conflict
27    with the terms and conditions of any sales or purchase agreement or
     other document.  Notwithstanding anything to the contrary, purchase

28

7

1    of the Seller's products shall not be deemed a waiver of the provisions
2    of this indemnification.

3    TPC ¶ 39.

4    As with the Breach of Express Warranty claim, Imperial moves to dismiss this claim on the

5    grounds that Total Sweeteners has failed to identify the alleged agreement.  As above, based on

6    counsel's representation during the hearing, the Court denies this ground for dismissal, conditioned

7    upon Total Sweeteners promptly providing Imperial with the Indemnification Agreement.

8    Imperial also moves to dismiss this claim on the grounds that "DBA Batory is not covered by

9    the alleged indemnification agreement."  Imperial's Motion at 13.  Presumably, Imperial did

10   business with Total Sweeteners doing business as Batory Foods.  The Court rejects this argument.

11   As the Court stated during the hearing, it is plausible that the ensuing clause, "subsidiaries, affiliates,

12   assigns and customers," is illustrative and not exhaustive, and that it is broad enough to cover Total

13   Sweeteners doing business as Batory Foods.  Thus, the Court denies Imperial's motion to dismiss

14   the Breach of Express Indemnity claim.

15       4.       Equitable/Implied Indemnity (Count V)

16   Imperial asserts that Total Sweeteners has not plausibly alleged Equitable/Implied

17   Indemnity, but gives no reason why.  "The elements of a cause of action for indemnity are (1) a

18   showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which

19   the indemnitor is contractually or equitably responsible." *Expressions at Rancho Niguel Ass'n v.*

20   *Ahmanson Developments, Inc.*, 86 Cal. App. 4th 1135, 1139 (2001) (citing *Gouvis Engineering v.*

21   *Superior Court*, 37 Cal. App. 4th 642, 646 (1995)).  Distinct from an "express contractual indemnity

22   claim," the obligation of equitable indemnity arises from "equitable considerations, brought into

23   play either by contractual language not specifically dealing with indemnification or by the equities

24   of the particular case." *Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1029 (1990).

25   "Implied contractual indemnity is applied to contract parties and is designed to apportion loss among

26   contract parties based on the concept that one who enters a contract agrees to perform the work

27   carefully and to discharge foreseeable damages resulting from that breach." *Sehulster*

28   *Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp.*, 111 Cal. App. 4th 1328, 1350-51 (2003)

**United States District Court**
For the Northern District of California

1    (quoting *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co.*, 234 Cal. App. 3d 1724,

2    1736 (1991)).

3         Total Sweeteners has plausibly alleged the elements of equitable indemnity.  It has alleged

4    that (1) Imperial (the indemnitor) sold it leaden molasses and (2) as a result, Total Sweeteners

5    suffered damages, as American Licorice has filed suit for contract damages against Total

6    Sweeteners.  Thus, the Court denies Imperial's motion to dismiss the claim for Equitable/Implied

7    Indemnity.

8         5.      Contribution (Count VI)

9         Imperial asserts that Total Sweeteners has failed to plausibly allege a claim for Contribution.

10   "A party to a joint, or joint and several obligation, who satisfies more than his share of the claim

11   against all, may require a proportionate contribution form all the parties joined with him."  Code

12   Civ. Pro. § 1432.  "The purpose of this rule of equity is to accomplish substantial justice by

13   equalizing the common burden shared by co-obligors, and to prevent one obligor from profiting at

14   the expense of others."  *Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675, 684 (2007).

15   "The principle of equity on which the right of contribution is founded applies only where the parties

16   are under a common burden of liability."  *Id.* (quoting *Weinberg Co. v. Heller*, 73 Cal. App. 769,

17   779 (1925)).

18        The Court grants Imperial's motion to dismiss the Contribution claim because Total

19   Sweeteners has not alleged that it is "party to a joint, or joint and several obligation" with Imperial.

20   Here the alleged obligations owed by Total Sweeteners to American Licorice is distinct from the

21   alleged obligation owed by Imperial to Total Sweeteners.

22        6.      Declaratory Relief

23        Total Sweeteners seeks a judicial determination of the following: the respective

24   proportionate liability of Total Sweeteners, Imperial, and Domino; the amount of indemnification it

25   is entitled to for damages it may be compelled to pay to American Licorice; and the amount of

26   reimbursement it is entitled to for costs and expenses incurred in defending itself against American

27   Licorice.  These shadow the terms of the alleged Indemnification Agreement between Total

28   Sweeteners and Imperial.  *See* TPC ¶ 39.

9

1    Imperial asserts that Total Sweeteners has failed to state a claim for Declaratory Relief

2   because Total Sweeteners has failed to state a claim for indemnification or contribution.  However,

3   as discussed above, the Court finds that Total Sweeteners has stated a claim for both Breach of

4   Express Indemnity and Equitable/Implied Indemnity.  Thus, the Court denies Imperial's motion to

5   dismiss the claim for Declaratory Relief.

6   C.    Conclusion

7         The Court grants without leave to amend Imperial's motion to dismiss the claim for

8   contribution.  The Court denies Imperial's motion on all other grounds.

9   D.    Domino's 12(b)(3) Motion to Dismiss for Improper Venue

10        Domino seeks to dismiss all causes of action based on the forum selection clause contained

11  in its Terms and Conditions.  Domino initially sought dismissal pursuant to Federal Rules of Civil

12  Procedure 12(b)(3) for improper venue.  After Domino filed its motion, the Supreme Court held,

13  contrary to Ninth Circuit precedent, that a forum selection clause cannot be enforced in a 12(b)(3)

14  motion.  *See Atlantic Marine Constr. Co. v. United States Dist. Court for Western Dist. Of Tex.*, 134

15  S.Ct. 568 (2013).  It must be brought under a motion to transfer pursuant to 28 U.S.C. § 1404.  The

16  Court requested Domino and Total Sweeteners to submit supplemental briefing on the impact of the

17  Supreme Court's decision on Domino's 12(b)(3) motion.  Domino retracted 12(b)(3) as a ground for

18  its motion to dismiss, yet at the same time, requests the Court to transfer the third-party action sua

19  sponte to New York.  In case the Court declines, it requests permission to file a Motion to Transfer

20  pursuant to § 1404.

21        The parties fiercely dispute whether the forum selection clause was incorporated into their

22  contracts.  The Court need not decide this, however, since even assuming it had, Rule 14 overrides

23  venue considerations.  Rule 14 provides in relevant part: "A defending party may, as third-party

24  plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of

25  the claim against it."  Fed. R. Civ. P. 14(a).  "The purpose of this rule is to promote judicial

26  efficiency by eliminating the necessity for the defendant to bring a separate action against a third

27  individual who may be secondarily or derivatively liable to the defendant for all or part of the

28

**United States District Court**
For the Northern District of California

1  plaintiff's original claim." *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777

2  (9th Cir. 1986).

3        The parties do not cite, nor could the Court find, legal authority that decides the priority

4  between a forum selection clause and a Rule 14 impleader claim.  However, carving out this third-

5  party action and transferring it to New York makes little sense.  Domino's potential liability will

6  likely depend integrally on the other two actions before this Court.  Transfer would be antithetical to

7  the policy of judicial efficiency underlying Rule 14.

8        This conclusion is consistent with the exemption of third-party actions from the statutory

9  venue provisions (28 U.S.C. § 1391) and the Court's ancillary jurisdiction over related third-party

10  actions, all of which indicate Rule 14 takes precedence.  *See United States v. United Pacific Ins. Co.*,

11  472 F.2d 792, 794 (9th Cir. 1973) (holding "regardless of the absence of diversity of citizenship or

12  of a federal question in the ancillary suit," a court has ancillary jurisdiction over "third-party claims .

13  . . if the claims arise out of the subject matter of the original action and involve the same persons and

14  issues, or if they arose out of the same 'transaction or occurrence'" (citations omitted)); *United*

15  *States v. Acord*, 209 F.2d 709, 714 (10th Cir. 1954) ("the reasons which give the court jurisdiction

16  over an ancillary proceeding by virtue of its jurisdiction over the principal action, likewise support

17  the conclusion that venue in the ancillary proceeding may depend or rest upon the venue in the main

18  proceeding").  Thus, even if the forum selection clause required the third-party action to be heard in

19  New York if it had been brought as an independent action, it has little effect on Total Sweeteners'

20  Rule 14 claim.

21        The Court denies Domino's request to transfer under 28 U.S.C. § 1404.  The public interest

22  factors would outweigh the private interest factors, since maintaining the action here would "prevent

23  the relitigation in other courts of the issues heard and adjudged in the original suit" and "promote the

24  economical and expeditious administration of justice by avoiding a multiplicity of suits through

25  permitting issues and claims arising out of the same operative facts to be embraced in a single

26  action." *United States v. United Pacific Ins. Co.*, 472 F.2d at 794.  Note that, unlike in *Atlantic*

27  *Marine*, the private interest factors are not deemed to weigh in favor of the "selected" forum,

28  because this is not a case where "a party bound by a forum selection clause flouts its contractual

United States District Court

For the Northern District of California

1    obligation and files suit in a different forum." *Atlantic Marine*, 134 S.Ct. at 582.  Indeed, the parties

2    dispute whether the forum selection clause was ever incorporated into their contract.

3         Thus, the Court denies Domino's request to transfer the third-party action based on the

4    purported forum selection clause.

5    E.    Domino's  12(b)(6) Motion to Dismiss for Failure to State a Claim

6         As with Imperial, Total Sweeteners asserts five causes of action against Domino:  (1) Breach

7    of Express Warranty;  (2) Express Indemnity; (3) Equitable/Implied Indemnity; (4) Contribution;

8    and (5) Declaratory Relief.

9         Like Imperial, Domino asserts that all the claims should be dismissed because an allegation

10   on information and belief that Total Sweeteners sold Domino's molasses to American Licorice does

11   not meet the plausibility standard.  As discussed above, the Court denies this motion.

12        The first two causes of action are based on the Continuing Guaranty and Indemnification

13   agreement between Total Sweeteners and Domino.  Docket No. 59 Exhs. 3, 4.  The terms of the

14   agreement are almost identical to the quoted portions of the alleged agreements between Total

15   Sweeteners and Imperial.  As with Imperial, the Court denies Domino's motion to dismiss the claim

16   for Breach of Express Warranty, for failure to allege that the molasses Domino sold Total

17   Sweeteners was "adulterated" within the meaning of the FDCA.  The Court also denies Domino's

18   motion to dismiss the claim for Express Indemnity, for the same reasons as with Imperial.  Similarly,

19   the Court also grants without leave to amend Domino's motion to dismiss the claim for

20   Contribution, for failure to allege a joint obligation.  The Court denies Domino's 12(b)(6) motion on

21   all other grounds.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1    In conclusion, the Court denies Domino's request to transfer the third-party action to New
2  York.  The Court dismisses without leave to amend the claim for Contribution.  The Court denies
3  Domino's motion on all other grounds.
4    This order disposes of Docket Nos. 51 and 56.
5
6    IT IS SO ORDERED.
7
8  Dated:  March 4, 2014
9                                                            _____
10                                                           EDWARD M. CHEN
                                                             United States District Judge

**United States District Court**
For the Northern District of California