MORDECAI D. BOONE (SBN 196811)
mboone@gordonrees.com
KRISTINE M. FUTORAN (SBN 245246)
kfutoran@gordonrees.com
GORDON & REES LLP
1111 Broadway, Suite 1700
Oakland, CA  94607
Telephone:  (510) 463-8600
Facsimile:  (510) 984-1721

Attorneys for Defendant
TOTAL SWEETENERS, INC.; individually
and doing business as BATORY FOODS

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN LICORICE COMPANY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>TOTAL SWEETENERS, INC.; BATORY FOODS, INC. and DOES 1 through 10, Inclusive,<br><br>                    Defendant.<br><hr><br>TOTAL SWEETENERS, INC.; BATORY FOODS, INC. and DOES 1 through 10, Inclusive,<br><br>                    Third-Party Plaintiff,<br><br>        vs.<br><br>SAVANNAH SUGAR REFINERY, a subsidiary of IMPERIAL SUGAR COMPANY; IMPERIAL SUGAR COMPANY; IMPERIAL DISTRIBUTING, INC., DOMINO FOODS, INC.; and DOES 1 through 10, Inclusive,<br><br>                    Third-Party Defendants. | CASE NO. 3:13-cv-01929 EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date    October 9, 2014<br>Time:  1:30 p.m.<br>Place:  Courtroom 5, 17th Floor<br>Judge: Hon. Chen<br><br>Accompanying Papers:<br>Declaration of Mordecai D. Boone; [Proposed] Order |

1083731/20273896v.2

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF ISSUES ................................................................1

II.  STATEMENT OF FACTS ...............................................................3

   A.   Plaintiff's Original Complaint Alleges Breach Of Contract Claims Based Only On The Parties' December 2011 Sales Contract....................3

   B.   Plaintiff Filed Its First Amended Complaint Alleging For The First Time That Its Purchase Order Created New Terms Materially Different From The December 2011 Sales Contract............................................4

   C.   Relevant Terms Of The Parties' December 2011 Sales Contract............5

   D.   Relevant Terms Of Plaintiff's Purchase Order Sent After The Parties Executed The December 2011 Sales Contract...................................6

   E.   Defendant's Employee Who Was Responsible For Negotiating Contractual Terms With Plaintiff Never Read, Saw, Nor Discussed Any Of Plaintiff's Purchase Orders And Negotiated Only The Sales Contract Terms With Plaintiff. .......................................................7

   F.   The Only Employee Of Defendant Who Received Plaintiff's Purchase Order Did Not Read The Terms And Conditions, And Furthermore, Never Negotiated Any Contractual Terms With Customers, Including Plaintiff.............8

   G.   Craig Jarrard, Defendant's Corporate Representative, Understood The Shipments Under December 2011 Sales Contract To Be Consistent With The Parties' Usual Course Of Business Practice, Including The Use Of Purchase Orders, Confirmations And Delivery Tickets. ..................10

   H.   Plaintiff Testified That Defendant Never Discussed Or Negotiated The Terms And Conditions In Plaintiff's Purchase Order With Any Of Defendant's Employees, And Moreover, Plaintiff Did Not Believe That Its Interactions With Defendant's Employee Who Received The Purchase Orders Created Any Contractual Obligations. .............................10

III. LEGAL STANDARD.....................................................................12

IV.  ARGUMENT................................................................................12

   A.   The December 2011 Sales Contract Was A Fully Formed Agreement, And Therefore, UCC § 2-209 Governs The Effect Of The Purchase Order's Conflicting Terms And Conditions, Which Was Not A Valid Modification.................................................................12

        1.   The Purchase Order Does Not Satisfy The Statute Of Frauds..................13

        2.   The Purchase Order Does Not Reflect Or Confirm A Prior, Valid Contract Modification...........................................16

        3.   The Purported Modification Lacks Mutual Assent...................16

        4.   The Undisputed Facts Lead Only To One Conclusion:  The Parties Never Read, Discussed Or Negotiated The Purchase Order Terms,

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

i

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

And Thus, Mutual Assent To Change Any Terms Or Conditions In The December 2011 Sales Contract Cannot Possibly Exist. .....................17

    a.    The Sales Contract Negotiation Shows That The Parties Were Concerned Only With The Product, Price, Duration, Volume And Delivery Specifications. ...........................................18

    b.    Plaintiff Required No Acknowledgement From Defendant After Receiving Its Purchase Orders, And Furthermore, They Were Intended As The Communication By Which Incremental Shipments Under The December 2011 Sales Contract Were Procured. ................................................................18

    c.    Plaintiff's Purchase Order Terms & Conditions Were Never Read By Plaintiff And The Only Employee of Defendant Who Received It Did Not Read The Terms And Conditions, Nor Did Plaintiff Believe That His Interactions With Her Created Any Contractual Obligations. ........................19

  B.    All Of Plaintiff's Claims Are Barred By The Contract's Notice Provision, Entitling Defendant To Summary Judgment. ......................................20

  C.    Defendant Is Entitled To Partial Summary Judgment Of Plaintiff's Claims Of Express Or Implied Warranties, As Well As Consequential Damages, Under the December 2011 Sales Contract. ...........................................22

V.    CONCLUSION...................................................................................................22

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)..................................................................................... 12

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003) ........................................................ 13, 14, 15, 16

*Essen Nutrition v. Electronic Liquid Fillers, Inc.*,
   1996 U.S. Dist. LEXIS 13746 (N.D. Ill. 1996) ........................................... 13

*Ipec Inc. v. Int'l Lithographing Corp.*,
   869 F.2d 1080 (7th Cir. 1989) ..................................................................... 13

*Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*,
   686 F. Supp. 1319 (N.D. Ill 1988) ............................................................... 13

*Ray Dancer, Inc. v. DMC Corp.*,
   175 Ill. App. 3d 997 (1988) ......................................................................... 16

*Starr v. Dow Agrosciences LLC*
   339 F. Supp. 2d 1097 (D. Or. 2004............................................................. 22

*Step-Saver Data Systems, Inc. v. Wyse Tech.*,
   939 F.2d 91 (3d Cir. 1991) ..................................................................... 16, 17

*TRA Indus. v. Valspar Corp.*,
   72 U.C.C. Rep. Serv. 2d 808 (E.D. Wash. 2010) ....................................... 17

*United States Surgical Corp. v. Orris, Inc.*,
   5 F.Supp. 2d 1201 (D. Kan. 1998)................................................... 13, 16, 17

*Wynne v. Tufts University School of Medicine*
   976 F. 2d 791 (1st Cir. 1999)....................................................................... 12

**Statutes**

810 Illinois Compiled Statutes 5/2-201 ................................................... 14, 15

810 Illinois Compiled Statutes 5/2-209 ......................................................... 13

810 Illinois Compiled Statutes 5/2-606 ......................................................... 14

California Commercial Code
   section 2201 ................................................................................................. 14

California Commercial Code
   section 2209 ................................................................................................. 13

Oregon Revised Statute
   section 72.2090 ........................................................................................... 13

Uniform Commercial Code
   section 2-201 ................................................................................... 14, 15, 17

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

Uniform Commercial Code
    section 2-209...................................................................................... 2, 12, 13, 16, 22

Uniform Commercial Code
    section 2-316...................................................................................... 22

**Rules**

Federal Rules of Civil Procedure
    rule 12 ...................................................................................................... 4

Federal Rules of Civil Procedure
    rule 56 ...................................................................................................... 12

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS,
INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** on October 9, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5, 17th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Total Sweeteners, Inc. will and hereby does move this Court for an order granting its Motion for Summary Judgment, or in the alternative, Partial Summary Judgment under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff's breach of contract claims are waived under the parties' contract, which provides that failure to timely comply with its 45-day notice provision waives all claims or defenses based on the quality of the product.  Furthermore, and even if the Court denied granting summary judgment for failure to provide timely notice, Defendant Total Sweeteners, Inc. is entitled to partial summary judgment of Plaintiff's claims for express and implied warranties and consequential damages because the parties' operative agreement disclaimed them. Moreover, Plaintiff's allegation that the parties modified this agreement fails because it does not satisfy the Uniform Commercial Code's requirements, including the statute of frauds and mutual assent.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Mordecai D. Boone, the [Proposed] Order, any oppositions or replies, any oral argument as many be heard by the Court at the hearing on this Motion, and all pleadings, files and other documentary or factual matter on file, or of which the Court may take judicial notice of at the time this Motion is heard.

## I. STATEMENT OF ISSUES

Defendant Total Sweeteners, Inc. (hereinafter "Total Sweeteners" or "Defendant") is entitled to summary judgment of all of Plaintiff's contract claims against it because Plaintiff failed to timely comply with the 45-day notice provision in the parties' contract, the failure of which waives all claims or defenses based on the quality of the product.  That is precisely the nature of Plaintiff's claims.  Plaintiff alleges that Defendant's molasses, which it used to make Red Vines© licorice, was the source of excessive lead levels found in its finished product.  The problem is that Plaintiff alleges damages concerning an August 2012 product recall, and that recall involved licorice manufactured in May 2012.  As explained below, Plaintiff's September

1

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

1    6, 2012 notice of its claims is untimely, and therefore, its breach of contract claims are waived.

2         However, there is a second issue regarding what constitutes the parties' operative

3    agreement.  Plaintiff and Defendant entered into a "December 2011 Sales Contract" under which

4    Defendant supplied Plaintiff with molasses for the year 2012.  Even if the Court denied summary

5    judgment of Plaintiff's contract claims for failure to comply with the  45-day notice provision,

6    Defendant is entitled to partial summary judgment of Plaintiff's claims for express and implied

7    warranties, as well as consequential damages, because the contract expressly disclaimed them.

8    The December 2011 Sales Contract formed the basis of Plaintiff's allegations in its original

9    complaint.  After Defendant filed a Motion to Dismiss that complaint, however, Plaintiff filed an

10   amended complaint alleging for the first time that its Purchase Order, sent under the exact terms

11   of the December 2011 Sales Contract, constituted a modification of the original contract, thereby

12   creating new terms supporting its claims for express and implied warranties and consequential

13   damages.

14        Plaintiff's Purchase Order was not a valid modification of the December 2011 Sales

15   Contract, and the facts provide only one possible inference to that end – that there was no mutual

16   assent to modify the parties' original terms and conditions.  Not only does the Purchase Order

17   fail to satisfy the statute of frauds, even if it did comply, the purported modification fails in two

18   other ways: (1) it fails to reflect a mutual intent to modify the December 2011 Sales Contract,

19   and (2) there is no mutual assent to the materially different terms, as required under UCC § 2-

20   209.  Mutual assent must be express and cannot be inferred merely from a party continuing its

21   conduct under the original agreement, which is exactly what occurred in this case.

22        Defendant and Plaintiff were merely continuing to operate under their usual course of

23   business practice, and per the terms and conditions of the December 2011 Sales Contract—terms

24   and conditions of which Plaintiff was aware when it signed the contract.  There was no written,

25   verbal or conduct otherwise that would specifically indicate that Defendant intended to modify

26   its warranty and damages disclaimers.  In fact, Defendant's employee in charge of negotiating

27   contract terms never saw any of Plaintiff's Purchase Orders, and accordingly never read its terms

28   and conditions, nor did she ever discuss those terms with Plaintiff.  The only employee of

Gordon & Rees LLP
111 Broadway, Suite 1700
Oakland, CA  94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS,
INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1  Defendant that received Plaintiff's Purchase Order never read the terms and conditions, never

2  discussed them with Plaintiff, and moreover, Plaintiff's Person Most Knowledgeable on this

3  issue testified that he was under no belief that his interactions with her even created any

4  contractual obligations.

5       Accordingly, because there is no mutual assent to modify any terms of the parties'

6  original agreement, the December 2011 Sales Contract constitutes the controlling agreement.

7  Under that contract, at a minimum, Plaintiff's express and implied warranty claims, as well as its

8  claim for consequential damages, should be dismissed and Defendant's partial summary

9  judgment granted.

10                    **II.  STATEMENT OF FACTS**

11  **A.      Plaintiff's Original Complaint Alleges Breach Of Contract Claims Based
            Only On The Parties' December 2011 Sales Contract.**

12

13       Plaintiff's original complaint asserts claims against Total Sweeteners for breach of

14  contract, breach of express warranty, breach of the implied warranty of merchantability, and

15  breach of the implied warranty of fitness.  Plaintiff also seeks consequential damages.  These

16  claims are based on the contention that excessive lead levels in Plaintiff's licorice product were

17  caused by molasses sold by Total Sweeteners, which Plaintiff alleges contained excessive lead

18  levels.  Compl. ¶¶ 26-57, Dkt. No. 1.

19       Only one exhibit is attached to the original complaint—a copy of the December 14, 2011

20  sales contract ("Sales Contract" or "December 2011 Sales Contract") between the parties for the

21  sale of molasses.  *See* Compl., Exh. A.  Plaintiff identified Exhibit A as the pertinent "Contract"

22  setting forth the parties' terms for Plaintiff's purchase of molasses, referred to generically as bulk

23  refiner's syrup.  *See* Compl., ¶¶ 27, 33, 40, 50.  For example, Plaintiff alleged that Defendant's

24  shipments of molasses, which began in February 2012, were all "pursuant to [the] Contract."

25  Compl., ¶¶ 34, 40, 51.  Plaintiff incorporated the Sales Contract into the allegations supporting

26  all four claims (*see* Complaint, ¶¶ 27, 33, 40, 50), and furthermore, based each of its claims on

27  Defendant's alleged breach of duties it owed under the Contract.  Compl., ¶¶ 29- 30, 33-35, 40-

28  41, 50-54.  The Sales Contract that Defendant prepared, and Plaintiff signed, included the terms

1   of conditions that are the subject of this Motion, i.e., an express disclaimer of all implied and

2   express warranties, as well as a disclaimer for consequential damages. *See*, *supra*, II., E, at 9:6-

3   13.

4          Defendant responded to this complaint with a motion to dismiss for failure to state a

5   claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 11, 15.

6   **B.      Plaintiff Filed Its First Amended Complaint Alleging For The First Time**
            **That Its Purchase Order Created New Terms Materially Different From The**
7           **December 2011 Sales Contract.**

8          Rather than oppose the motion, Plaintiff responded to Defendant's motion to dismiss by

9   voluntarily filing its First Amended Complaint ("FAC") on May 31, 2013. Dkt. No. 19. The

10  FAC makes several material changes to the original complaint, the most significant of which

11  forms the basis of Defendant's instant Motion for Summary Judgment. That is, the FAC alleges

12  the existence of a *new* agreement not mentioned in the original complaint—Plaintiff's February

13  27, 2012 "Purchase Order." *See* FAC, Exh. B. The Sales Contract alleged in Plaintiff's original

14  complaint was also attached and supports Plaintiff's allegations as well. *See* FAC, Exh. A.[1] The

15  claims for breach of contract, breach of express warranty, breach of the implied warranty of

16  fitness, and claims for consequential damages remain.

17         However, the FAC changes Plaintiff's allegations in a material way. The Purchase Order

18  contains numerous terms and conditions that conflict with the terms and conditions of the Sales

19  Contract. Compare FAC, Exh. A, p. 2, with Exh. B, p. 2. The Purchase Order was not signed by

20  Defendant. (*See* FAC, Exh. B.) Plaintiff never explains in the FAC whether, how or why the

21  Purchase Order formed a valid contract between the parties. *See* FAC ¶¶ 12-20. Plaintiff never

22  addresses the effect of the Purchase Order on the original December 2011 Contract—whether it

23  was a novation, a modification, or something else. *See, e.g., id.* Moreover, Plaintiff never

24  alleges the parties had any mutual intent to modify any of the terms of the original Contract.

25  Plaintiff merely alleges the existence of the Contract and the Purchase Order, and relies (without

26  explanation) on terms of the Purchase Order to support its claims. FAC ¶¶ 40, 44, 51, 62.

27

28  ---
[1]  Exhibit A being the Contract that was the original basis for suit and the agreement that Defendant contends is the only valid and controlling contract between the parties, Defendant will continue to refer to it herein as the "Sales Contract" or "Exhibit A."

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS,
INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT

**C.    Relevant Terms Of The Parties' December 2011 Sales Contract**

The title of the December 2011 Contract is "Sales Contract," and sets forth a term of January 1, 2012 through December 31, 2012. FAC, Exh. A. It provides that Defendant, the "Seller," "AGREES TO SELL TO BUYER and BUYER to buy from SELLER the following products on the terms and conditions and subject to the agreements stated below and/or on the TERMS AND CONDITIONS statement." *Id.* The "Buyer" is identified as American Licorice, 2477 Liston Way, Union City, Ca 94587. *Id.* The Contract provides for the sale of 1,500,00 [sic—1,500,000] pounds of Bulk Refiners syrup at $.3575 per pound, "Two truckloads per order please." *Id.* The total contract value is $536,250.00 (150,000 times $.3575 per pound). *Id.* The Contract was executed by Dennie Carff for American Licorice on December 14, 2011. *Id.*

The Terms and Conditions in the Sales Contract, which the FAC ignores, are the same provisions on which Defendant bases the instant Motion:

> WARRANTY:  SELLER expressly warrants that any goods contracted herein will be representative of the brand or grade specified herein to be sold, and will comply with all applicable provisions of the Federal Food, Drug and Cosmetic Act and of any applicable State Pure Food and Drug Act. Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless (1) within ten (1) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) after receipt of notice of arrival of said commodities at destination, BUYER sends SELLER at SELLER'S main office a letter by registered mail specifying the nature of the complaint; and (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER's said office a five (5) pound sample of the goods alleged to be defective or inferior, provided that compliance by BUYER with the above enumerated steps shall not constitute an admission by SELLER of the merits or amount of BUYER's said claim or defense.
>
> Except as expressly set forth herein, SELLER states that no warranties, express or implied, contained in the uniform commercial code or otherwise (including, without limitation, the implied warranty of fitness for a particular purpose) shall apply to the products sold hereunder and BUYER acknowledges that except as expressly set forth in the first sentence of this section, it is purchasing the goods, "as is" and "where is". SELLER is not responsible for any misuse, reconfiguration or alteration of the goods by purchaser or others. SELLER shall in no event be liable for consequential, special or punitive damages hereunder.
>
> ***
>
> GOVERNING  LAW:  This contract shall be construed in accordance with and governed by the laws of the State of Illinois....

FAC, Exh. A, p. 2, "Terms and Conditions."

Gordon & Rees LLP
111 Broadway, Suite 1700
Oakland, CA  94607

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

The Contract provides that it will remain in full force and effect for the duration of the Contract Period notwithstanding fluctuations in the product's prevailing market price.  FAC, Exh. A, p. 1.  It allows Plaintiff to receive shipment of the Bulk Refiners syrup by *installments*, in which case "this contract shall be construed to be severable as to each installment."  FAC, Exh. A, p. 2 "SHIPMENT."

**D.      Relevant Terms Of Plaintiff's Purchase Order Sent After The Parties Executed The December 2011 Sales Contract**

The February 27, 2012 Purchase Order requests two quantities of Refiners syrup, 48,000 pounds each, at $.3575 per pound.  FAC, Exh. B.  Unlike the Sales Contract, the Purchase Order identifies no shipment method.  *See id.*  The Purchase Order includes a signature by the "Purchasing Agent" but was not executed by Defendant's agent.  *See id.*

The second page of the Purchase Order contains the following provisions relevant to this Motion:

3. INSPECTION.  Payment for Goods and Services delivered shall not constitute acceptance.  Purchaser shall have the right to inspect such Goods and Services and to reject any or all Goods and Services which are, in Purchaser's sole reasonable discretion, defective or nonconforming to the agreed quantity, quality or specifications.  Rejected Goods may be returned to Supplier at Supplier's expense.  Failure to give notice of defects to Supplier shall not constitute a waiver of breach of warranty or any other condition.

***

5. WARRANTY. Supplier warrants that:  […] (c) if any Goods are foods, or ingredients for use in food products, Supplier guarantees that such articles or materials are produced, manufactured, processed, labeled, marked and shipped in accordance with all applicable federal, state and local laws and are not adulterated, contaminated by foreign materials, misbranded, mislabeled or falsely invoiced within the meaning of the Federal Food, Drug and Commerce Act ….

***

7. REMEDIES, LIMITATION OF LIABILITY AND INDEMNITY […]
If Supplier breaches this Purchase Order, Purchaser shall have all remedies available at law and equity.  Supplier agrees to indemnify and hold Purchaser, its parent, subsidiaries, officers, directors, employees and agents harmless from and against all claims, liabilities, expenses, losses or damages arise out of or are based upon (a) Services ordered or Goods purchased from Supplier […] (b) a breach by Supplier of any of the warranties contained herein; or (c) negligent acts or omissions of Supplier's officers, directors, employees or agents.

FAC, Exh. B, p. 2.  The terms "Goods" and "Services" are not defined by the Purchase Order.

6

*See* FAC, Exh. B.  There are no terms or writings in the Purchase Order indicating that the parties intending to modify any warranty or damages provisions of the Sales Contract.

> **E.**     **Defendant's Employee Who Was Responsible For Negotiating Contractual Terms With Plaintiff Never Read, Saw, Nor Discussed Any Of Plaintiff's Purchase Orders And Negotiated Only The Sales Contract Terms With Plaintiff.**

Marion Saroni began working for Total Sweeteners in 2007 as a sales representative. Deposition of Marion Saroni ("Saroni Depo."), at 23:8-25:25; 26:8-12, attached to the Declaration of Mordecai D. Boone ("Boone Decl."), ¶ 3, Exh. A.  Her current title is Senior Sales Representative.  *Id.*, at 26:13-14.  Her principle job responsibilities in both roles includes bringing in new business and expanding the company's current business in the sweetener category, targeted towards customers in the bakery, brewery, candy manufacturing, meatpacking, bottling and ice cream manufacturing industries.  *Id.*, at 26:15-27:20; 29:22-30:13.

In December of 2011, ALC and Total Sweeteners decided to work together as ALC's exclusive supplier of molasses for the year 2012.  *Id.*, at 83:20-84:22.  Prior to 2011, ALC ordered molasses and other products from Total Sweeteners approximately two to three times per year.  *Id.*, at 52:4-11; 53:7-14.  The process for ALC's single orders involved Total Sweeteners confirming bulk pricing for the year and establishing delivery specifications, after which ALC would place their orders when ALC needed the product by submitting an ALC Purchase Order to Amanda Moser of Total Sweeteners, who works in Customer Service for Total Sweeteners and assisted Ms. Saroni with administrative tasks.  *Id.*, at 15:13-16:8; 31:2-8; 52:12-54:23.

After Ms. Moser entered the Purchase Order information into Total Sweetener's system, an internal Purchase Verification, confirming the parties' terms—product, volume, price, and delivery specifications—was generated.  *Id.*, at 15:24-17:5; 38:18-40:18; 110:23-111:3.  Ms. Saroni would review the Purchase Verification, and then Ms. Moser would send Mr. Carff a separate order confirmation after which the product was then shipped.  *Id.*, at 98:9-24; 101:11-102:9.

Shortly after the decision to be ALC's sole supplier for 2012, Ms. Saroni prepared Total Sweeteners standard Sales Contract specifying the product, volume, and shipment details

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

covering the year 2012. *Id.*, at 88:25-89:25. The purpose of the Sales Contract, which is not prepared for every customer, is to secure pricing and volume over a certain period of time for commodity products that are subject to market fluctuations. *Id.*, at 90:11-25.

Ms. Saroni prepared the December 14, 2011 Sales Contract for the supply of "bulk refiner's syrup" (molasses) from January, 2012 to December, 2012. *Id.*, at 91:6-92:17, Exh. 4 to Saroni Depo. Dennie Carff signed the Sales Contract on behalf of ALC. *Id.*, at 92:8-94:5. Pursuant to Total Sweetener's standard business practice, Ms. Saroni did not sign on behalf of Total Sweeteners. *Id.*, at 92:21-25. The second page of the December 14, 2011 Sales Contract included a page of "Terms & Conditions," which is generated after Ms. Saroni creates the form Sales Contract and sends it to another employee at Total Sweeteners who manages the company's contracts. *Id.*, at 93:16-94:1; 94:9-19.

After the Sales Contract was signed, the process for initiating shipments of the molasses under the contract was the same practice as before. Dennie Carff would send ALC's Purchase Order to Amanda Moser of Total Sweeteners, specifying the amount desired in that particular shipment, reflecting the contracted price, and confirming delivery specifications. *Id.*, at 52:8-53:23; 95:2-16; 97:13-98:24; 100:5-15; 110:15-111:3. Ms. Moser would then input into Total Sweetener's system the Purchase Order, which Ms. Saroni never saw, and generate an internal Purchase Verification that Ms. Saroni reviewed for approval. *Id.*, at 15:24-17:5; 38:18-40:18; 98:9-24; 110:15-111:3. Ms. Saroni would review the Purchase Verification, and then Ms. Moser would send Mr. Carff an order confirmation after which the product was then shipped. *Id.*, at 101:11-102:9.

Ms. Saroni never saw any of ALC's Purchase Orders, including ALC's February 27, 2012 Purchase Order for molasses. *Id.*, at 97:13-19; 98:1-8; 110:15-25.

**F.    The Only Employee Of Defendant Who Received Plaintiff's Purchase Order Did Not Read The Terms And Conditions, And Furthermore, Never Negotiated Any Contractual Terms With Customers, Including Plaintiff.**

Amanda Moser started working for Total Sweeteners in customer service when the company was acquired sometime around 2009. Deposition of Amanda Moser ("Moser Depo."), at 5:21-6:14, Boone Decl., ¶ 4, Exh. B. Her principle job responsibilities include receiving and

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

8

processing customer orders, communicating orders to the company's warehouse for fulfillment, and sending customers order confirmations. *Id.*, at 9:7-21. She receives customers' faxed, emailed or phone orders, either by way of a customer's own purchase order or some kind of written document; not every customer submits purchase orders. *Id.*, at 13:3-14. Ms. Moser received ALC purchase orders that were more than one page, however, she did not read the pages of the purchase order entitled "terms and conditions" because doing so was not a part of her job. *Id.*, at 16:18-17:15. When reviewing a purchase order, she was trained to look only for the order information, including customer identity, their purchase order number, product requested, when the customer wants the product, and quantity. *Id.*, at 17:16-21; 18:19-25.

When a customer orders pursuant to a contract, Ms. Moser inputs the purchase order information into Total Sweetener's internal system, which automatically denotes the contracted price for that product; when there is no such contract, the price must be confirmed with the sales representative. *Id.*, at 20:12-22:20. The Total Sweeteners system includes a special note screen, but it was never Ms. Moser's practice to indicate whether Total Sweeteners and ALC had accompanying terms and conditions to their Purchase Order. *Id.*, at 22:24-25:9. After entering the purchase order information, she generates a Purchase Verification, which is reviewed by the sales representative to confirm the order and approve pricing. *Id.*, at 23:10-22.

Ms. Moser also follows up with the customer with an electronic order confirmation. *Id.*, at 29:23-30:15. The sales representative is copied on the confirmation only if requested; Ms. Saroni never requested to receive copies. *Id.*, at 30:16-25.

Ms. Moser was aware that Total Sweeteners and ALC entered into a sales contract for molasses for the year 2012. *Id.*, at 39:13-16. She never discussed the terms of that contract with anyone at ALC, nor did she ever see the contract. *Id.*, at 39:17-20; 40:18-20. She is familiar with the sales contract between Total Sweeteners and ALC as the same form document used with other customers. *Id.*, at 40:24-41:12. Ms. Moser has never read or negotiated with any customer the terms and conditions section of the Total Sweeteners contract. *Id.*, at 41:13-23. It was Ms. Saroni's job to negotiate the terms and conditions. *Id.*, at 41:21-25.

This order process, *infra*, including receiving and processing purchase orders, and

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

9

1   sending customer confirmations, was the way in which all ALC orders under the 2012 contract

2   were handled by Ms. Moser.  *Id.*, at 47:15:21.

3       **G.**    **Craig Jarrard, Defendant's Corporate Representative, Understood The**
        **Shipments Under December 2011 Sales Contract To Be Consistent With The**

4       **Parties' Usual Course Of Business Practice, Including The Use Of Purchase**
        **Orders, Confirmations And Delivery Tickets.**

5

6       Craig Jarrard is Defendant's Senior Product Manager.  Deposition of Craig Jarrard

7   ("Jarrard Depo."), at 13: 8-11, Boone Decl., ¶ 5, Exh. C  His job responsibilities include the

8   development of Total Sweeteners' molasses business, as well as approving any sales contracts

9   between Total Sweeteners and its customers.  *Id.*, at 16:7-11; 17:8-12.  He was not involved in

10  the drafting of any purchase orders, sales contracts, or documentation of sales between Total

11  Sweeteners and its customers, other than giving his approval to sales contracts between Total

12  Sweeteners and its customers.  *Id.*, at 17:10-23.

13      After meeting with ALC in 2011 to discuss providing a molasses product, Mr. Jarrard

14  was not involved in finalizing the sales contract between Total Sweeteners and ALC.  *Id.*, at

15  34:23-35:24; 35:25-36:3.  However, Mr. Jarrard was familiar with the December 2011 sales

16  contract between Total Sweeteners and ALC.  *Id.*, at 36:4-19.  He understood it to be a contract

17  for Total Sweeteners to sell ALC a quantity of molasses matching the sample of molasses that

18  ALC had previously approved.  *Id.*

19      ALC's purchases of molasses under the December 2011 Sales Contract were to be

20  documented pursuant to the parties' normal practices, involving the generation of purchase

21  orders, confirmations, and delivery tickets.  *Id.*, at 40:11-17.

22      **H.**    **Plaintiff Testified That Defendant Never Discussed Or Negotiated The Terms**
        **And Conditions In Plaintiff's Purchase Order With Any Of Defendant's**

23      **Employees, And Moreover, Plaintiff Did Not Believe That Its Interactions**
        **With Defendant's Employee Who Received The Purchase Orders Created**

24      **Any Contractual Obligations.**

25      Dennie Carff started working at ALC in approximately 1993 when he was hired as the

26  logistics administrator.  Deposition of Dennie Carff ("Carff Depo."), at 17:15-18; 26:3-13,

27  Boone Decl., ¶ 6, Exh. D  His current title is Corporate Materials Manager, which involves

28  issuing purchase orders for materials, supervising employees that deal with purchasing at ALC's

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1  La Porte, Indiana facility, as well as supervising ALC's warehouse managers located in Union

2  City, California. *Id.*, at 26:15-27:20. It was Mr. Carff's decision to enter into the December 14,

3  2011 Sales Contract with Total Sweeteners, and no other person's approval was required to do

4  so. *Id.*, at 53:21-54:21; 69:21-25. Mr. Carff and Marion Saroni of Total Sweeteners negotiated

5  the Sales Contract. *Id.*, at 54:15-24; 87:23-88:3. Mr. Carff sent ALC's Purchase Orders to

6  Amanda Moser at Total Sweeteners. *Id.*, at 54:25-55:19. Mr. Carff and Ms. Moser never

7  negotiated any contract terms. *Id.*, at 55:21-56:2.

8       Mr. Carff signed the December 14, 2011 Sales Contract on behalf of ALC. *Id.*, at 68:11-

9  16. In doing so, he was most concerned with only the quantity of molasses, price and duration.

10  *Id.*, at 68:21-69:9. It was Mr. Carff's understanding that the contract for 1.5 million pounds of

11  molasses were to be delivered in no more than two truckloads, and that Purchase Orders to

12  initiate those shipments were to be forthcoming. *Id.*, at 70:8-17.

13       The first Purchase Order under the December 14, 2011 Sales Contract was sent in

14  February of 2012. *Id.*, at 88:9-19. The process by which ALC would procure delivery of the

15  contracted amount of molasses was by submitting ALC's Purchase Order to Amanda Moser at

16  Total Sweeteners. *Id.*, at 94:22-95:7; 103:2-11. After Mr. Carff sent ALC's Purchase Orders,

17  ALC never required any acknowledgement from anyone at Total Sweeteners before completing

18  the order. *Id.*, at 104:11-23. Mr. Carff recalls receiving an order confirmation from Total

19  Sweeteners, which he understood was meant to clarify one of his Purchase Orders that

20  mistakenly requested one truck of molasses and which he later corrected to reflect the same

21  terms of the contract – two trucks of molasses. *Id.*, at 108:10-110:1.

22       ALC's Purchase Orders contained a front page, followed by two pages of Terms &

23  Conditions. *Id.*, at 95:10-18. These Terms & Conditions were ALC's standard practice

24  established sometime in 2007 or 2008. *Id.*, at 110:15-21. Mr. Carff was directed by his boss to

25  include them, but Mr. Carff does not know the impetus for doing so. *Id.*, at 110:19-111:2.

26       Mr. Carff never discussed the Terms & Conditions contained in ALC's Purchase Orders

27  with Ms. Saroni, or Ms. Moser. *Id.*, at 95:19-96:1. He also never discussed the Terms &

28  Conditions of Purchase Orders *prior* to the December 14, 2011 Sales Contract. *Id.*, at 102:14-

11

1   103:1.  Further, Mr. Carff had no belief that his interactions with Ms. Moser created any

2   contractual obligations.  *Id.*, at 96:2-6.

### III.  LEGAL STANDARD

4          Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered

5   forthwith" upon a showing that "there is no genuine issue as to any material fact and […] the

6   moving party is entitled to a judgment as a matter of law."  An issue is "genuine" for summary

7   judgment purposes only where there is a sufficient evidentiary basis upon which a reasonable

8   fact finder could find for the nonmoving party, and a fact is "material" for this purpose only it if

9   could affect the outcome of the action under governing law.  *Anderson v. Liberty Lobby, Inc.*,

10  477 U.S. 242, 248-49 (1986).  "This requirement has sharp teeth; the plaintiff 'must present

11  definite, competent evidence to rebut the motion.'"  *Wynne v. Tufts University School of*

12  *Medicine*, 976 F. 2d 791, 794 (1st Cir. 1999).  Evidence that is "merely colorable or is not

13  significantly probative" cannot deter summary judgment.  *Anderson*, 477 U.S. at 250.

14         The Court ruled in its Order Denying Defendant's Motion to Dismiss that there are no

15  material differences between California, Illinoi or Oregon law, and therefore, determined that

16  California law applies.[2]  Dkt. No. 31, at 7:23-8:19.

### IV.  ARGUMENT

18  **A.      The December 2011 Sales Contract Was A Fully Formed Agreement, And**
        **Therefore, UCC § 2-209 Governs The Effect Of The Purchase Order's**
19      **Conflicting Terms And Conditions, Which Was Not A Valid Modification.**

20         Since the Sales Contract is a binding contract formed before Plaintiff issued the first

21  February 2012 Purchase Order,[3] UCC § 2-209 (contract modifications, rescission and waivers)

22  governs the validity of the conflicting terms in the February 2012 Purchase Order.   It provides

23  that:

24         (1) An agreement modifying a contract within this Article needs no consideration
            to be binding.

---

[2] The Court provided California and Illinois parallel citations in its Order, Dkt. No. 31, at n. 3, on the issues relevant to this Motion, and therefore, Defendant provides the same in this Motion as the relevant code sections do not materially differ.

[3] The Court previously analyzes and ruled that "the December 2011 Sales Contract constituted a binding contract between the parties, [and therefore], the effect of the Purchase Order must be analyzed under the UCC provision that governs the modification of existing contracts, § 2-209." Dkt. No. 31, at 12:13-15.  Accordingly, Defendant does not reiterate the analysis supporting the Court's finding in this Motion.

12

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this Article (Section 2-201) must be satisfied if the contract as modified is within its provisions.

UCC § 2-209; 810 Illinois Compiled Statutes ("ILCS") 5/2-209; Cal. Com. Code. § 2209.[4]

The Purchase Order fails as a valid modification of the Sales Contract because it lacks four necessary requirements. First, the UCC requires that "[…] the statute of frauds section of this Article (Section 2-201) must be satisfied if the contract as modified is within its provisions." UCC § 2-209 (3); Cal. Com. Code. § 2209(3); 810 ILCS 5/2-209(3). Second, even if the statutory requirements are met, "the purported modification must still be based on an agreement to modify…" *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003).[5]

Third, there is no mutual assent supporting a purported contract modification. UCC Section 2-209 requires mutual assent to proposed modifications and such assent must be express and cannot be inferred merely from a party's conduct in continuing with an original agreement. *United States Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201 (D. Kan. 1998).

Finally, a purported modification is invalid if not negotiated in good faith. 810 ILCS 5/2-209, Comment (2); *Ipec Inc. v. Int'l Lithographing Corp.*, 869 F.2d 1080, 1084 (7th Cir. 1989) (failure to negotiate a modification in good faith invalidates the purported agreement under California and Illinois law); *Essen Nutrition v. Electronic Liquid Fillers, Inc.*, 1996 U.S. Dist. LEXIS 13746, *8 (N.D. Ill. 1996) (addressing good faith requirement under Illinois UCC in context of motion to dismiss).

### 1.    The Purchase Order Does Not Satisfy The Statute Of Frauds.

The UCC statute of frauds applies because the Purchase Order involves a sale of goods

---

[4] Oregon also follows the UCC. *See, e.g.*, Oregon Revised Statute § 72.2090 (modification, rescission, waiver) (identical to UCC § 2-209). Defendant is unaware of any differences in the pertinent provisions of Oregon's UCC that would lead to a different result than the one Defendant advocates here.

[5] Courts (including Illinois courts) analyzing contract disputes under the UCC frequently "cite[] freely to a variety of jurisdictions, and this Court has generally done the same in search of useful or persuasive authority" such that reliance on out-of-jurisdiction opinions is common, particularly where, as here, another court has dealt with a factually similar circumstance. *See Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 686 F. Supp. 1319, 1326 (N.D. Ill 1988) (discussing appropriateness of relying on opinions from other jurisdictions in cases under the UCC).

13

Gordon & Rees LLP
111 Broadway, Suite 1700
Oakland, CA   94607

for $500 or more.[6]  *See* 810 ILCS 5/2-201.  UCC § 2-201 provides in pertinent part that:

> (1) Except as otherwise provided in this Section a contract for the sale of goods for the price of $ 500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
>
> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
>
> (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
>
> [...]
>
>   (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606 [810 ILCS 5/2-606]).

810 ILCS 5/2-201; Cal. Com. Code. § 2201.

The Purchase Order fails to meet these requirements.[7]  UCC § 2-201(3)(c) is not met because any payment tendered was entirely consistent with Defendant's rights and obligations under the Sales Contract.  *See Dallas Aerospace*, 352 F.3d 775, 783.  In *Dallas Aerospace*, CIS Air Corporation (CIS), the seller, contracted with Dallas Aerospace, Inc. (Dallas) for the purchase of a jet engine.  *Id.*, at 779.  CIS' contract with Dallas specified that the engine was sold "as-is, where-is."  *Id.*  Like the Sales Contract, the contract between CIS and Dallas contained a warranty clause that specified that "no warranties, representations or undertakings have been made by either party except as expressly set forth herein."  *Id.*  Further, the Sales Contract and the CIS-Dallas contracts were both signed by the purchaser.  *Id.*  At the time Dallas paid for the engine, it also delivered to CIS a purchase order that "purported to modify the contract by requiring CIS to deliver a serviceable and airworthy engine that had 'not been subjected to

---

[6] The Court previously held that the Purchase Order falls within the Statute of Frauds because it orders $34,320.00 worth of molasses and the Statute of Frauds applies to contracts for the sale of goods worth $500 or more.  (Dkt. No. 31, at 12:19-13:1.)

[7] The Court already found that UCC § 2-201(1) and (2) are inapplicable, and accordingly, Defendant analyzes only UCC § 2-201(3)(c).  (Dkt No. 31, at 13:1-22.)

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1    extreme stress or heat as in a major engine failure….'" *Id.*, at 780.

2            The trial court granted summary judgment, finding the purchase order did not constitute

3    an enforceable modification of the original sales contract. *Id.* The Court of Appeals affirmed.

4    On appeal, Dallas argued that its purchase order was a valid modification that satisfied the statute

5    of frauds, UCC § 2-201, despite the fact that the purchase order was not signed by CIS. *See id.*

6    at 782. In particular, Dallas argued that UCC § 201(3)(c) was satisfied because CIS had

7    accepted payment after receiving the purchase order. *Id.*

8            The Second Circuit rejected that argument: "The rationale underlying the [partial

9    performance] exception is that 'receipt and acceptance either of goods or of the price constitutes

10   an unambiguous overt admission by both parties that a contract actually exists.'" *Id.*, citing N.Y.

11   UCC § 2-201, Comment (2); *compare* 810 ILCS 5/2-201, Comment (2) (identical to the rationale

12   underlying New York's UCC). "Accordingly, partial performance of contractual obligations

13   validates a contract, but only to the extent of such partial performance." *Id.* However, "because

14   [CIS's] acceptance of payment for the engine was entirely consistent with CIS's pre-existing

15   rights and obligations under the unmodified Agreement, it cannot be said that CIS's performance

16   'constituted an unambiguous overt admission' that the contract had been modified." *Id.* at 782-

17   783.

18           The same logic applies here. As in *Dallas Aerospace*, the key terms, including the sales

19   price, goods, quantity, and shipping information, were all set forth in the original Sales Contract

20   and were unchanged by the Purchase Order.  The Sales Contract provided for delivery of "two

21   truckload[s] per order please," and it allowed delivery by installments and as directed by

22   Plaintiff, so the shipment of two quantities of molasses in response to Defendant's order is also

23   consistent with the terms of the original Contract. *See* FAC, Exh. A at pp. 1- 2, "SHIPMENT."

24   The only terms of the Purchase Order that differ from the original Contract are the terms and

25   conditions on its reverse side, which include, just as in *Dallas Aerospace*, a new warranty

26   provision that Plaintiff now seeks to enforce. As in *Dallas Aerospace*, Defendant's delivery of

27   molasses and acceptance of payment was entirely consistent with its initial Contract obligations.

28           Thus, in order for the partial performance exception to the Statue of Frauds to apply,

15

1   there must be some conduct by the parties confirming that Plaintiff intended to change the Sales

2   Contract warranty and damages terms, and that Defendant in some way intended to assent to the

3   new Purchase Order terms.  There is no such evidence.  As explained in further detail below,

4   there simply is no evidence that the parties acted on or otherwise confirmed the purported,

5   materially different terms of the Purchase Order.  In fact, neither Plaintiff nor Defendant ever

6   read, discussed or acknowledged the Sales Contract or Purchase Order's respective Terms &

7   Conditions, *infra*.

8         **2.      The Purchase Order Does Not Reflect Or Confirm A Prior, Valid
                     Contract Modification.**

9

10        Even if the Purchase Order did satisfy the statute of frauds—and it does not—that does

11  not mean that the Purchase Order represents an enforceable agreement to modify the December

12  2011 Contract.  To constitute a contract "modification," a purported agreement must reflect a

13  mutual intent to modify the existing contract.  *Dallas Aerospace, Inc.*, 352 F.3d at 783.  A

14  purchase order that is pursuant to the original agreement, and which does not reflect an intent to

15  modify the original sales agreement, does not constitute a valid contract modification.  *Ray*

16  *Dancer, Inc. v. DMC Corp.*, 175 Ill. App. 3d 997, 1003-1004 (1988).

17        **3.      The Purported Modification Lacks Mutual Assent.**

18        Similarly, the purported modification lacks the necessary mutual assent under UCC § 2-

19  209 to the materially different terms.  "[UCC] Section 2-209 requires assent to proposed

20  modifications and this court, like the court in *Step-Saver* [*Data Systems, Inc. v. Wyse Tech.*, 939

21  F.2d 91 (3d Cir. 1991)], concludes that the assent must be express and cannot be inferred merely

22  from a party's conduct in continuing with the agreement."  *United States Surgical Corp. v. Orris,*

23  *Inc.*, 5 F. Supp. 2d 1201 (D. Kan. 1998).  Where, as here, Defendant's conduct was equally

24  consistent with its performance of duties under the original Contract, that conduct cannot be

25  found sufficient to manifest consent to the proposed modifications.  "For a party's course of

26  performance to indicate assent to a modification, the performance must be related in some

27  affirmative manner to the proposed modification and differ from the performance already

28  required of the party by the existing contract."  *TRA Indus. v. Valspar Corp.*, 72 U.C.C. Rep.

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS,
INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT

Gordon & Rees LLP
111 Broadway, Suite 1700
Oakland, CA 94607

1    Serv. 2d 808 (E.D. Wash. 2010).  "[M]erely continuing with a contract does not constitute

2    assent…"  *United States Surgical Corp.*, 5 F. Supp. 2d. at 764, citing *Step-Saver Data Sys., Inc.*,

3    939 F.2d at 98-99.

4         The Sales Contract provided for a contract term of January 2012 through December 2012,

5    pursuant to which molasses would be delivered "[t]wo truckload[s] per order please" during the

6    contract period at the agreed-upon price.  *See* FAC, Exh. A, p. 1.  The delivery of two truckloads

7    of molasses subsequent to the February 2012 purchase order is consistent with Defendant's

8    duties under the original Sales Contract, and cannot manifest express assent to the new,

9    conflicting terms in the purchase order.  *See Step-Saver Data Systems, Inc.,* 939 F.2d at 104

10   ("[W]e hold that the repeated sending of a writing which contains certain standard terms, without

11   any action with respect to the issues addressed by those terms, cannot constitute a course of

12   dealing which would incorporate a term of the writing otherwise excluded under § 2-207.");

13   *United States Surgical Corp.*, 5 F. Supp. 2d at 764 ("The express assent analysis is the same

14   under §§ 2-207 and 2-209").

15        **4.     The Undisputed Facts Lead Only To One Conclusion:  The Parties
              Never Read, Discussed Or Negotiated The Purchase Order Terms,**
16            **And Thus, Mutual Assent To Change Any Terms Or Conditions In
              The December 2011 Sales Contract Cannot Possibly Exist.**
17

18        The testimony of Plaintiff and Defendant's representatives demonstrates a complete lack

19   of evidence: (1) that Defendant's delivery, as specified in the Sales Contract and acceptance of

20   payment for those installments was anything *other than* conduct pursuant to the parties' original

21   agreement, (2) that the Purchase Order itself reflected a mutual intent to modify the existing

22   contract, and (3) that there was any mutual assent to the modifications in the Purchase Order.  As

23   the Court noted in its previous Order Denying Defendant's Motion to Dismiss, "even if it were to

24   conclude that § 2-201(c)(3) were applicable, the fact that the statute of frauds was not a bar to

25   finding modification does not necessarily resolve the question of the Purchase Order's effect."

26   Dkt. No. 31, at 15:24-26.  Even if the statute of frauds were met, which it is not, it would not

27   establish the final, as-modified terms.  Here, the lack of assent in any manner, to any different,

28   revised or new terms in the Purchase Order resolves all three of these issues.

17

<div align="left" style="writing-mode: vertical-rl">Gordon & Rees LLP<br>1111 Broadway, Suite 1700<br>Oakland, CA  94607</div>

1          **a.**     **The Sales Contract Negotiation Shows That The Parties Were**

2                   **Concerned Only With The Product, Price, Duration, Volume And Delivery Specifications.**

3    When Mr. Carff signed the December 14, 2011 Sales Contract on behalf of ALC, he was

4    concerned primarily with, and therefore verified, the quantity of molasses, price and duration.

5    Carff Depo., at 68:11-16; 68:21-69:9, Boone Decl, ¶ 6, Exh. D.  It was Mr. Carff's understanding

6    that the contract for 1.5 million pounds of molasses were to be delivered in no more than two

7    truckloads, and that Purchase Orders to initiate those shipments were to be forthcoming.  *Id.*, at

8    70:8-17.

9        The December 14, 2011 Sales Contract that Ms. Saroni prepared for the supply of "bulk

10    refiner's syrup" (molasses) from January, 2012 to December, 2012 reflected the discussions

11    between Ms. Saroni and Mr. Carff, which involved only the quantity of molasses ALC ordered,

12    pricing and the period of time covered under the contract; they never discussed any other terms

13    and conditions.  Saroni Depo., at 94:22-95:12, , Boone Decl, ¶ 3, Exh. A.

14          **b.**     **Plaintiff Required No Acknowledgement From Defendant**

15                   **After Receiving Its Purchase Orders, And Furthermore, They Were Intended As The Communication By Which Incremental**

16                   **Shipments Under The December 2011 Sales Contract Were Procured.**

17    The first Purchase Order under the December 14, 2011 Sales Contract was sent in

18    February of 2012.  Carff Depo., at 88:9-19, Boone Decl., ¶ 6, Exh. D.  The process by which

19    ALC would obtain the  deliveries of the contracted amount of molasses was by submitting

20    ALC's Purchase Order to Amanda Moser at Total Sweeteners.  *Id.*, at 94:22-95:7; 103:2-11.

21    After Mr. Carff sent ALC's Purchase Orders, ALC never required any acknowledgement from

22    anyone at Total Sweeteners before completing the order.  *Id.*, at 104:11-23.  Mr. Carff recalls

23    once receiving an order confirmation from Total Sweeteners, which he understood was meant to

24    clarify one of his Purchase Orders that mistakenly requested one truck of molasses and which he

25    later corrected to reflect the same terms of the contract – two trucks of molasses.  *Id.*, at 108:10-

26    110:1.

27    After the Sales Contract was signed, Dennie Carff would send ALC's Purchase Order to

28    Amanda Moser of Total Sweeteners, specifying the amount desired in that particular shipment,

<div align="center">18</div>

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

reflecting the contracted price, and confirming delivery specifications.  Saroni Depo., at 52:8-53:23; 95:2-16; 97:13-98:24; 100:5-15; 110:15-111:3, Boone Decl., ¶ 3, Exh. A.  Craig Jarrad, Defendant's Senior Product Manager understood that the use of Purchase Orders under the Sales Contract was nothing more than continuing with the parties' usual course of business practice to obtain deliveries.  Jarrad Depo., at 40:11-17, Boone Decl., ¶ 5, Exh. C.

In fact, the only employee of Defendant who ever <u>saw</u> Plaintiff's Purchase Orders was Ms. Moser, who works in customer service for Total Sweeteners.  Moser Depo., at 5:21-6:14, Boone Decl., ¶ 4, Exh. B.  Her principle job responsibilities include receiving and processing customer orders, communicating orders to the company's warehouse for fulfillment, and sending customers order confirmations.  *Id.*, at 9:7-21.  When a customer orders pursuant to a contract, Ms. Moser inputs the purchase order information into Total Sweetener's internal system, which automatically denotes the contracted price for that product; when there is no such contract, the price must be confirmed with the sales representative.  *Id.*, at 20:12-22:20.  The Total Sweeteners system includes a special note screen, but it was never Ms. Moser's practice to indicate whether Total Sweeteners and ALC had accompanying terms and conditions to their Purchase Order.  *Id.*, at 22:24-25:9.  This order process, including receiving and processing purchase orders, and sending customer confirmations, was the way in which all ALC orders under the 2012 contract were handled by Ms. Moser.  *Id.*, at 47:15:21.

      **c.**     **Plaintiff's Purchase Order Terms & Conditions Were Never Read By Plaintiff And The Only Employee of Defendant Who Received It Did Not Read The Terms And Conditions, Nor Did Plaintiff Believe That His Interactions With Her Created Any Contractual Obligations.**

Whereas the Sales Contract was executed solely between Mr. Carff and Ms. Saroni, Mr. Carff sent ALC's Purchase Orders only to Amanda Moser at Total Sweeteners.  Carff Depo., at 54:25-55:19, Boone Decl., ¶ 6, Exh. D.  ALC's Purchase Orders contained a front page, followed by two pages of Terms & Conditions.  *Id.*, at 95:10-18.  These Terms & Conditions were ALC's standard practice established sometime in 2007 or 2008.  *Id.*, at 110:15-21.  Mr. Carff was directed by his boss to include them, but Mr. Carff does not know the impetus for doing so.  *Id.*, at  110:19-111:2.

19

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

1   Mr. Carff never discussed the Terms & Conditions contained in ALC's Purchase Orders

2   with Ms. Saroni, or Ms. Moser.  *Id.*, at 95:19-96:1.  He also never discussed the Terms &

3   Conditions of Purchase Orders *prior* to the December 14, 2011 Sales Contract.  *Id.*, at 102:14-

4   103:1.)  In fact, Ms. Saroni <u>never saw</u> any of ALC's Purchase Orders, including ALC's February

5   27, 2012 Purchase Order for molasses.  Saroni Depo., at 97:13-19; 98:1-8; 110:15-25, Boone

6   Decl., ¶ 3, Exh. A.

7   Ms. Moser was the only employee of Defendant that received the Purchase Orders, and it

8   was neither her role nor responsibility to negotiate contract terms.  *Id.*, at 16:18-17:15.  She was

9   aware that Total Sweeteners and ALC entered into a Sales Contract for molasses for the year

10   2012.  *Id.*, at 39:13-16.  However, she never discussed the terms of that contract with anyone at

11   ALC, nor did she ever see the Sales Contract.  *Id.*, at 39:17-20; 40:18-20.  Ms. Moser has never

12   read or negotiated with any customer the terms and conditions section of the Total Sweeteners

13   contract.  *Id.*, at 41:13-23.

14   She received ALC purchase orders that were more than one page, however, she never

15   read the pages of the Purchase Order entitled "terms and conditions" because doing so was not a

16   part of her job.  *Id.*, at 16:18-17:15.  Instead, when reviewing a purchase order, she was trained to

17   look only for the order information, including customer identity, their purchase order number,

18   product requested, when the customer wants the product, and quantity.  *Id.*,  at 17:16-21; 18:19-

19   25.

20   Furthermore, Mr. Carff testified that he never negotiated *any* contract terms with Ms.

21   Moser.  Carff Depo., at 55:21-56:2, Boone Decl., ¶ 6, Exh. D.  Not only was it outside Ms.

22   Moser's authority and role to negotiate contract terms, Mr. Carff testified that he no belief that

23   his interactions with Ms. Moser created any contractual obligations.  *Id.*, at 96:2-6.

24   **B.      All Of Plaintiff's Claims Are Barred By The Contract's Notice Provision,
         Entitling Defendant To Summary Judgment.**

25

26   Since there is no possible inference that the Terms and Conditions of its February 2012

27   Purchase Order control, Plaintiff's claims must be analyzed under the December 2011 Sales

28   Contract.  The Terms and Conditions of the December 2011 Sales Contract included a warranty,

which provide in relevant part:

> Buyer hereby waives any claim or defense based on the quality of the commodities specified herein, unless
>
> (1) within ten (10) days after BUYER learns by use or otherwise of the defect complained of but in any event within forty-five (45) after receipt of notice of arrival of said commodities at destination, BUYER send SELLER at SELLE's main office a letter by registered mail specifying the nature of the complaint; and
>
> (2) within said forty-five (45) days sends by parcel post or express prepaid to SELLER's said office a five (5) pound sample of the goods alleged to be defective or inferior, provided that compliance by BUYER with the above enumerated steps shall not constitute an admission by SELLER of the merits or amount of BUYER's said claim or defense. FAC, Exh. A, p. 2.

Plaintiff received fourteen shipments of molasses from Defendant in 2012. Boone Decl., ¶ 7 Exh. E. In order to avoid waiving its claims, Plaintiff had to notify Defendant by registered mail, as well as provide five-pound samples of the goods at issue, no later than 45 days after receiving the molasses. FAC, Exh. A, p. 2. The last two deliveries (of two truckloads each) occurred on June 12 and July 27, 2012. Boone Decl., ¶ 8, Exh. E, at pages AmLic00008194-96 and AmLic00008183. Thus, Plaintiff's notice deadline for substantive product claims expired on July 27, 2012 and September 10, 2012, respectively.

Plaintiff gave Defendant notice of its claims on September 6, 2012, when its counsel sent Defendant a letter by registered mail, stating that "the Bulk Refiners Syrup provided by [Total Sweeteners] to American Licorice, beginning in January 2012," was defective because it contained high levels of lead. Boone Decl., ¶ 8, Exh. F. Accordingly, all claims related to shipments received on June 12, 2012 or earlier are unquestionably waived. Moreover, while the remaining two truckloads delivered on July 27, 2012 might appear to fall within the notice period, those installments are waived as well. Plaintiff's claims are based solely on a product recall that occurred in August 2012, involving candy manufactured in May 2012 allegedly using Defendant's molasses delivered on or about April 30, 2012. FAC, ¶¶ 22-27. The July delivery is thus irrelevant to Plaintiff's claims. Because Plaintiff's pre-July 27, 2012 delivery-based claims are barred, it follows that *none* of Plaintiff's claims survive the waiver provision in the December 2011 Sales Contract because they all necessarily relate to shipments received before July 27, 2012.

Gordon & Rees LLP
111 Broadway, Suite 1700
Oakland, CA 94607

21

1

**C.** **Defendant Is Entitled To Partial Summary Judgment Of Plaintiff's Claims Of Express Or Implied Warranties, As Well As Consequential Damages, Under the December 2011 Sales Contract.**

2

3      If the Court permits any of Plaintiffs' claims to continue, the Sales Contract disclaimed

4   relevant warranties and liability for consequential damages entitling Defendant to summary

5   judgment on those claims.  The December 2011 Sales Contract expressly disclaimed express and

6   implied warranties, as well as consequential damages:

7           Except as expressly set forth herein, SELLER states that no warranties, express or implied, contained in the uniform commercial code or otherwise

8   (including, without limitation, the implied warranty of fitness for a particular purpose) shall apply to the products sold hereunder and BUYER acknowledges

9   that except as expressly set forth in the first sentence of this section, it is purchasing the goods, "as is" and "where is".  SELLER is not responsible for any

10   misuse, reconfiguration or alteration of the goods by purchaser or others. SELLER shall in no event be liable for consequential, special or punitive damages

11   hereunder.  FAC, Exh. A, p. 2, "Terms and Conditions."

12      Accordingly, Plaintiff's claims for breach of express and implied warranty fail and partial

13   summary judgment should be granted as to those allegations.  UCC § 2-316.  For the same

14   reason, consequential damages should be unrecoverable.  *See Starr v. Dow Agrosciences LLC*,

15   339 F. Supp. 2d 1097, 1102 (D. Or. 2004) (barring consequential damages under contractual

16   damages limitation).

17                        **V.  CONCLUSION**

18      For the foregoing reasons, Defendant respectfully request that this Court grant

19   Defendant's summary judgment dismissing Plaintiff's breach of contract claims for failure to

20   provide timely 45-day notice under the parties' original agreement for the relevant shipment.

21   Plaintiff's purchase order did not supersede or modify the December 2011 Sales Contract under

22   UCC §2-209.  Even if the Court denies summary judgment based on the notice provision, it

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA  94607

22

1    should grant partial summary judgment of Plaintiff's claims for express and implied warranties,

2    as well as its prayer for consequential damages, because the December 2011 Sales Contract

3    disclaimed them.

4    Dated:  August 14, 2014                          GORDON & REES LLP

5

6                                                     By:    /s/ Mordecai D. Boone

7                                                          MORDECAI D. BOONE
                                                          KRISTINE M. FUTORAN
8                                                        *Attorneys for Defendant*
                                                        *TOTAL SWEETENERS, INC. dba*
9                                                        *BATORY FOODS*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon & Rees LLP**
1111 Broadway, Suite 1700
Oakland, CA  94607

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOTAL SWEETENERS,
INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT